**EXHIBIT JJ**

**To Declaration of Micah West in Support of
Motion for Preliminary Injunction
& Motion for Class Certification**

**BRIAN E. FROSH**
*Attorney General*



**ELIZABETH F. HARRIS**
*Chief Deputy Attorney General*

**DONNA HILL STATON**
*Deputy Attorney General*

**CAROLYN QUATTROCKI**
*Deputy Attorney General*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**

FACSIMILE NO.
410-576-7036

WRITER'S DIRECT DIAL NO.
410-576-6311

October 25, 2016

The Honorable Alan M. Wilner
Chair, Standing Committee on Rules
of Practice and Procedure
2011- D Commerce Park Drive
Annapolis, Maryland 21401

Dear Judge Wilner:

    I write to request that the Rules Committee consider changes to Maryland Rule 4-216 to ensure that defendants are not held in pretrial detention solely because they lack the financial resources to post a monetary bail. State law and constitutional principles demand that, in cases where it is not necessary to detain a defendant to ensure appearance at trial or to protect public safety, conditions of release from pretrial detention should be the least onerous necessary to serve those important public interests. Unfortunately, the number of people detained pretrial in Maryland continues to rise. In many instances, Maryland criminal defendants—people who have not been convicted of a crime—are held in jail in our State only because they are too poor to post bail.

    Numerous studies have documented that Maryland's pretrial system currently operates, though not by design or intent, in a manner that is often inconsistent with State and federal law, ineffective at addressing public safety concerns, disproportionately burdensome to communities of color, and inefficient in its use of State and local resources. Our current system also harms defendants and their families by unnecessarily depriving them of employment and income and by unnecessarily separating defendants from children and other dependents.

    I urge the Committee to recommend amendments to the Rules to reflect that while pretrial detention may be necessary to ensure a defendant's appearance or to protect the safety of the community, bail may not be set solely to prevent release. In particular, the amendments should

The Honorable Alan M. Wilner
Page 2

expressly clarify that where the judicial officer determines, based on all applicable criteria, that bail is the least onerous condition necessary to ensure the defendant's appearance or to protect public safety, that officer must conduct an individualized inquiry into the defendant's financial circumstances and may not set bail that exceeds the defendant's means for the purpose of detaining the defendant.

### I.  CURRENT LAW REQUIRES JUDICIAL OFFICERS TO CONDUCT AN INDIVIDUALIZED INQUIRY INTO A DEFENDANT'S FINANCIAL CIRCUMSTANCES AND THE IMPOSITION OF BAIL THAT A DEFENDANT CANNOT AFFORD RAISES SIGNIFICANT CONSTITUTIONAL CONCERNS.

On October 11, 2016, in a letter responding to questions from members of the General Assembly, the Office of the Attorney General advised:

> the Court of Appeals would [likely] conclude that the State's statutory law and court rules should be applied to require a judicial officer to conduct an individualized inquiry into a criminal defendant's ability to pay a financial condition of pretrial release. Although it is less clear that defendants have a constitutional right to an individualized inquiry, constitutional considerations provide further support to the requirement of an individualized inquiry. [Moreover], while imposing a financial condition is allowed under current State law and is not unconstitutional in and of itself, the Court of Appeals would likely hold that, in the event a judicial officer determines that pretrial detention is not justified to meet the State's regulatory goals, a judicial officer may not impose a financial condition set solely to detain the defendant. Conditions of pretrial release must instead be the least onerous to reasonably ensure the appearance of the defendant as required, protect the safety of the victim, or ensure that the defendant will not pose a danger to another person or the community. As a result, setting the bail in an amount not affordable to the defendant, thus effectively denying release, raises a significant risk that the Court of Appeals would find it violates due process. If pretrial detention is not justified yet bail is set out of reach financially for the defendant, it is also likely the Court would declare that the bail is excessive under the Eighth Amendment of the U.S. Constitution and Article 25 of the Maryland Declaration of Rights.[1]

---

[1] *See* letter from Sandra Benson Brantley, Counsel to the General Assembly, Office of the Attorney General, to the Honorable Erek L. Barron, the Honorable Kathleen M. Dumais, the Honorable Shelly Hettleman, the Honorable Marc Korman, and the Honorable Brooke E. Lierman (October 11, 2016). The OAG advice letter is attached in support of our request.

The Honorable Alan M. Wilner
Page 3

## II. CURRENT PRETRIAL RELEASE RULES ARE NOT CONSISTENTLY FOLLOWED ACROSS THE STATE.

Maryland Rule 4-216(e) lists the factors a judicial officer must consider when making pretrial release determinations, including the defendant's "employment status and history" and "financial resources." Despite this directive, bail is set for many defendants in amounts greater than they can afford. Several studies of Maryland's pretrial detention system have found that bail is often set without consideration of the defendant's financial means.[2] As noted in the attached OAG advice letter, Rule 4-216(e) directs the judicial officer to consider the specified information "to the extent available," and it is possible that some judicial officers have interpreted this language as allowing them to consider only the information presented to them. Amending the Rule to clarify that a judicial officer must make an individualized inquiry as to the defendant's ability to pay the bail amount set will ensure compliance with the Rule and address the serious constitutional concerns associated with wealth-based disparities in pretrial detention.

## III. MARYLAND'S PRETRIAL SYSTEM DOES NOT EFFECTIVELY ADVANCE THE STATE'S COMPELLING INTERESTS IN THE PROTECTION OF PUBLIC SAFETY AND IN ENSURING THE APPEARANCE OF CRIMINAL DEFENDANTS AT TRIAL.

Although Maryland law permits unconditional pretrial detention only where no conditions of release will reasonably protect the public or ensure the defendant's appearance at trial, nearly every evaluation of Maryland's pretrial system has found no relationship between a pretrial detainee's perceived risk and the bond amount set.[3] The 2014 Commission Report actually documented an inverse relationship between bail amounts and the risk to public safety, finding that bail was set higher for low risk defendants than for their moderate and high risk counterparts.[4] Lower risk defendants are detained because they cannot afford the bail, while higher risk defendants who have access to financial resources are able to make bail and are often permitted to do so without imposition of other conditions to protect the public.[5] Additionally, research shows

---

[2] The Abell Foundation, The Pretrial Release Project: A Study of Maryland's Pretrial Release and Bail System (2001) (hereinafter "2001 Abell Report"); Maryland Task Force to Study the Laws Polices Relating to Representation of Indigent Criminal Defendants (2012); James Austin and Johnette Peyton, the JFA Institute, Maryland Pretrial Risk Assessment Data Collection Study (2013); Commission to Reform Maryland's Pretrial System, Final Report (2014) (hereinafter "2014 Commission Report"); John Clark, Pretrial Justice Institute, "Finishing the Job: Modernizing Maryland's Bail System," The Abell Report, Vol. 29, No. 2 (June 2016) (hereinafter "2016 Abell Report").

[3] *See id.*

[4] 2014 Commission Report at 19.

[5] In some jurisdictions using a wealth-based pretrial system, nearly half of the most dangerous defendants are able to post bail and reenter the community without monitoring or supervision by courts. *See* Laura and John Arnold Foundation, Developing a National Model for Pretrial Risk Assessment (November 2013) at 1.

The Honorable Alan M. Wilner
Page 4

no direct correlation between monetary bail and the defendant's appearance at trial.[6] In short, Maryland's pretrial release practices also fail to advance the State's criminal justice goals.

### IV. INCREASING RELIANCE ON PRETRIAL SERVICES, AS OPPOSED TO PRETRIAL DETENTION, WILL LEAD TO BETTER OUTCOMES.

Across the board, states and cities that rely upon evidence-based pretrial risk assessments experience a reduction in their pretrial detention populations and an increase in defendants' appearance at trial without incurring a greater risk to public safety. In the District of Columbia, where courts rely heavily on supervised pretrial release rather than bail, 90% of defendants appear for trial and are not rearrested before their cases are resolved.[7] Similarly, after Kentucky shifted to a nonfinancial pretrial release program and adopted an evidence-based risk assessment tool, its pretrial release rate increased from 68% to 70%, its court appearance rate rose from 89% to 91%, and arrests for new criminal activity while on pretrial release dropped by 15%.[8] A Colorado risk-assessment tool documented a 95% court appearance and 91% public safety rate for its lowest risk defendants.[9] Each of these jurisdictions developed a pretrial services program and employed a risk-evaluation tool that resulted in increased court appearances and in some instances, reduced recidivism.[10] These systems also experienced a reduction in the costs of housing defendants pretrial and prevented the injustice and collateral consequences attached to wealth-based pretrial detention. In Maryland, where the majority of defendants unable to secure pretrial release are low to moderate risk individuals, the opportunity for improved outcomes is substantial.

### V. MARYLAND'S PRETRIAL SYSTEM DISPROPORTIONATELY AFFECTS RACIAL MINORITIES.

Reliance on a wealth-based pretrial detention system disproportionately affects people of color, whose median household incomes are the lowest in the country. The Pretrial Justice Institute found that, nationally, there is a significant correlation between race and levels of bail. African American men receive bail that is 35% higher than bail given to white men; Hispanic men receive

---

[6] *See e.g.*, 2001 Abell Report which found that defendants in Montgomery County who were released on surety or cash bonds had higher failure to appear rates than those released on their own personal recognizance.

[7] 2014 Commission Report at 24; Ann E. Marimow, "When it comes to pretrial release, few other jurisdictions do it D.C.'s way," Washington Post (July 4, 2016).

[8] 2016 Abell Report at 10.

[9] 2016 Abell Report at 11.

[10] Examples of effective pretrial supervision strategies for lower risk defendants include "court notifications through telephone calls, emails, or text messages, early and meaningful response to defendant misconduct, regular reporting, drug testing, GPS electronic monitoring, and treatment referrals." 2014 Commission Report at 14.

The Honorable Alan M. Wilner
Page 5

bail that is 19% higher than white men.[11] These racial inequities also exist in Maryland. According to the 2016 Abell Report,

> The economic disparities unleashed by the wealth-based bail system fall most heavily on racial minorities. Studies have consistently shown that African-American defendants have higher bond amounts and are detained on bonds at higher rates than white defendants, a factor contributing to the disproportionate confinement of persons of color. In Maryland, African-Americans comprise roughly 30 percent of the general population but make up 70 percent of prisoners. In Baltimore, African-Americans comprise about 60 percent of the city's residents, but 90 percent of Baltimore jail inmates.[12]

Similarly, corrections records from Baltimore City, Prince George's County and Baltimore County reveal that African American males make up most of the pretrial detainee population, with many held on small bail amounts.

### VI. PRETRIAL DETENTION UNNECESSARILY HARMS DEFENDANTS AND THEIR FAMILIES.

For those unable to pay bail, pretrial detention—even for short periods of time—can cost defendants their jobs, housing and even custody of their children. Moreover, defendants who are detained because they cannot afford bail are up to 30% more likely to be convicted.[13] Those who are able to post bail often do so at their financial peril, sometimes taking on crushing debt.[14] These collateral consequences, which harm not just the defendant but also the defendants' children and other people who may be dependent on them for care and support, have been widely documented.[15] With these and similar hardships often resulting from pretrial detention, such detention should be imposed only when necessary to prevent flight or protect the public. Indigence or the inability to post bail should not trigger the often life-altering and devastating effects of pretrial detention. The

---

[11] The Pretrial Justice Institute, http://www.pretrial.org.

[12] 2016 Abell Report at 4.

[13] 2016 Abell Report at 2 (citing Megan Stevenson, "Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes" (2016)).

[14] Lorelei Laird, "Court systems rethink the use of financial bail, which some say penalizes the poor," ABA Journal (April 1, 2016); Annalies Winny, "Demorrea Tarver's charges were dropped, but the 10 percent fee he promised a bail bondsmen on his $275,000 bail has him drowning in debt," The City Paper (July 20, 2016).

[15] *See id; see also, Robinson, et al. v. Martin, et al.*, No. 2016CH13587 (Cir. Court of Cook County, Illinois filed Oct. 14, 2016); Open Society Institute, "Unconvicted" (2016), a photographic exhibit available at http://www.pretrial.org/endcashbail/; 2001 Abell Report; Cherise Fanno Burdeen, "The Dangerous Domino Effect of Not Making Bail," The Atlantic (April 12, 2016).

The Honorable Alan M. Wilner
Page 6

people made to suffer these consequences have not been convicted of any crime: in many cases they are ultimately found not guilty or the charges against them are dismissed.

### VII. Maryland's Pretrial System is Costly to Taxpayers.

Lastly, Maryland's current pretrial system significantly burdens Maryland taxpayers. According to the 2014 Commission Report, pretrial detention costs the state somewhere between $83 and $153 a day for each of the 7,000 plus defendants who are detained in jail awaiting trial at any given time in Maryland.[16] Using these numbers, state and local correctional agencies are spending $500,000 to $1,000,000 a day on pretrial detention. In comparison, "[t]he United States Courts determined that it is roughly 10 times cheaper to put a defendant on pretrial supervision than to detain them in jail."[17] Indeed, the District of Columbia, Colorado, and Kentucky have all seen the fiscal benefits of developing strong pretrial supervision programs. Reducing the reliance on money bail and increasing the use of other pretrial supervision tools result in taxpayer savings, and allow for the most cost-effective use of tax dollars.

### VIII. Conclusion

The inadequacies of Maryland's pretrial system have been thoroughly documented: it is expensive and discriminatory, and it fails to advance the State's compelling interests in protecting the public or ensuring the defendant's appearance at trial. Jailing people who should otherwise be released because they are unable to pay bail is out of step with state and federal law and with basic concepts of liberty and justice.

Sincerely,

Brian E. Frosh
Attorney General

Encl.

---

[16] 2014 Commission Report at 12.

[17] *Id.* at 20.



Brian E. Frosh
ATTORNEY GENERAL

Elizabeth F. Harris
CHIEF DEPUTY ATTORNEY GENERAL

Thiruvendran Vignarajah
DEPUTY ATTORNEY GENERAL

Sandra Benson Brantley
COUNSEL TO THE GENERAL ASSEMBLY

Kathryn M. Rowe
DEPUTY COUNSEL

Jeremy M. McCoy
ASSISTANT ATTORNEY GENERAL

David W. Stamper
ASSISTANT ATTORNEY GENERAL

THE ATTORNEY GENERAL OF MARYLAND

OFFICE OF COUNSEL TO THE GENERAL ASSEMBLY

October 11, 2016

The Honorable Erek L. Barron
Maryland General Assembly
216 House Office Building
Annapolis, Maryland 21401

The Honorable Kathleen M. Dumais
Maryland General Assembly
Vice Chair, House Judiciary Committee
101 House Office Building
Annapolis, Maryland 21401

The Honorable Shelly Hettleman
Maryland General Assembly
311 House Office Building
Annapolis, Maryland 21401

The Honorable Marc Korman
Maryland General Assembly
210 House Office Building
Baltimore, Maryland 21207

The Honorable Brooke E. Lierman
Maryland General Assembly
311 House Office Building
Annapolis, Maryland 21401

Dear Delegates:

You have asked for advice about Maryland's system of pretrial detention. Specifically, you asked:

I. Whether the United States Constitution, the Maryland Declaration of Rights, and/or other applicable federal and state law and regulations require that a judicial officer conduct an individualized inquiry regarding a criminal defendant's financial resources prior to ordering money bail or other financial condition of pretrial release.

II. Whether the United States Constitution, the Maryland Declaration of Rights, and/or other applicable federal and state law and regulations require that a judicial officer avoid ordering money bail, or other financial condition of pretrial release, clearly exceeding a criminal defendant's ability to pay.

*Short answer*

It is my view that the Court of Appeals would conclude that the State's statutory law and court rules should be applied to require a judicial officer to conduct an individualized inquiry into a criminal defendant's ability to pay a financial condition of pretrial release. Although it is less clear that defendants have a constitutional right to an individualized inquiry, constitutional considerations provide further support to the requirement of an individualized inquiry. It is also my view that, while imposing a financial condition is allowed under current State law and is not unconstitutional in and of itself, the Court of Appeals would likely hold that, in the event a judicial officer determines that pretrial detention is not justified to meet the State's regulatory goals, a

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 2

judicial officer may not impose a financial condition set solely to detain the defendant. Conditions of pretrial release must instead be the least onerous to reasonably ensure the appearance of the defendant as required, protect the safety of the victim, or ensure that the defendant will not pose a danger to another person or the community. As a result, setting the bail in an amount not affordable to the defendant, thus effectively denying release, raises a significant risk that the Court of Appeals would find it violates due process. If pretrial detention is not justified yet bail is set out of reach financially for the defendant, it is also likely the Court would declare that the bail is excessive under the Eighth Amendment of the U.S. Constitution and Article 25 of the Maryland Declaration of Rights.

*The Pretrial Process*

The pretrial process is outlined in the Maryland Rules. At the defendant's initial appearance the judicial officer must "first follow the procedure set forth in the Rule 4-213.1 to assure that the defendant either is represented by an attorney or has knowingly and voluntarily waived the right to an attorney." Md. Rule 4-213(a)(1). In addition, the judicial officer must also advise the defendant of the charges. Md. Rule 4-213(a)(2).

Rule 4-216 sets out the details of the pretrial proceeding itself. First, for defendants arrested without a warrant, the judicial officer must determine whether there was probable cause for each charge and arrest. Md. Rule 4-216(a). If the judicial officer finds no probable cause, the defendant should be released at that time. If the judicial officer finds probable cause, the judicial officer should proceed to make a determination whether the defendant is eligible for release.[1] If so, according to Rule 4-216(c),

> a defendant is entitled to be released before verdict on personal recognizance or on bail, in either case with or without conditions imposed, unless the judicial officer determines that no condition of release will reasonably ensure (1) the appearance of the defendant as required and (2) the safety of the alleged victim, another person, and the community.

Rule 4-216(e)(1) requires the judicial officer to consider several specified factors, "to the extent available," to determine "whether a defendant should be released" and what "the conditions of release" should be:

> (A) the nature and circumstances of the offense charged, the nature of the evidence against the defendant, and the potential sentence upon conviction;
> (B) the defendant's prior record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings;
> (C) the defendant's family ties, employment status and history, financial resources, reputation, character and mental condition, length of residence in the community, and length of residence in this State;
> (D) any recommendation of an agency that conducts pretrial release investigations;
> (E) any recommendation of the State's Attorney;
> (F) any information presented by the defendant or defendant's attorney;

---

[1] By statute, defendants charged with certain crimes are not eligible for release or are eligible only under limited circumstances when authorized by a District Court judge. *See* Criminal Procedure Article ("CP"), §§ 5-101(c) and 5-202. *See also* Md. Rule 4-216(d).

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 3

> (G) the danger of the defendant to the alleged victim, another person, or the community;
> (H) the danger of the defendant to himself or herself; and
> (I) any other factor bearing on the risk of a wilful failure to appear and the safety of the alleged victim, another person, or the community, including all prior convictions and any prior adjudications of delinquency that occurred within three years of the date the defendant is charged as an adult.

Md. Rule 4-216(e)(1). Further, if the judicial officer imposes conditions on release,

> the judicial officer shall impose on the defendant the least onerous condition or combination of conditions of release... that will reasonably:
>
> (A) ensure the appearance of the defendant as required,
> (B) protect the safety of the alleged victim by ordering the defendant to have no contact with the alleged victim or the alleged victim's premises or place of employment or by other appropriate order, and
> (C) ensure that the defendant will not pose a danger to another person or to the community.

Md. Rule 4-216(e)(3).

Further, by statute, the State law provides that "if, from all the circumstances, the court believes that a minor or adult defendant in a criminal case will appear as required for trial before verdict or pending trial, the defendant may be released on personal recognizance." CP § 5-101(b)(1). Moreover, State law directs that these provisions "shall be liberally construed to carry out the purpose of relying on criminal sanctions instead of financial loss to ensure the appearance of a defendant in a criminal case before verdict or pending a new trial." CP § 5-101(a).

*Analysis*

*Right to individualized inquiry before determination of pretrial release*

In answer to your first question, there is little doubt that federal and State law require a judicial officer to conduct an individualized inquiry to determine conditions of pretrial release for criminal defendants who are eligible for release. Rule 4-216(e) appears to require as much and the case law interpreting the applicable constitutional and statutory provisions implicitly confirm that the judicial officer must conduct an inquiry before setting conditions of release, including money bail.

The Court of Appeals has not explicitly held that arrestees are entitled to an individualized inquiry to determine pretrial conditions of release but, in two cases addressing a defendant's right to counsel at the initial appearance, has acknowledged that the bail determination depends on the facts of each particular defendant's circumstances. In *DeWolfe v. Richmond*, 434 Md. 403, 429 (2012) (*Richmond I*), the Court observed that the determination of whether to allow pretrial release involves a "fact-laden" inquiry into considerations listed in Rule 4-216 and that, as a result, "the presence of counsel for that determination surely can be of assistance to the defendant in that process." *Id.* at 430. In a subsequent opinion in the same case analyzing whether defendants have a constitutional right to counsel, the Court again

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 4

emphasized that the Rule 4-216 bail determination process involves a factual inquiry into the defendant's circumstances:

> Rule 4-216(f) details the numerous factors a Commissioner must take into consideration when imposing "on the defendant the least onerous condition or combination of conditions of release" that serves the purposes of "ensur[ing] the appearance of the defendant," "protect[ing] the safety of the alleged victim," and "ensur[ing] that the defendant will not pose a danger to another person or to the community."

*DeWolfe v. Richmond*, 434 Md. 444, 450 (2013) (*Richmond II*) (quoting Rule 4-216). The Court noted that "the failure of a Commissioner to consider all the facts relevant to a bail determination can have devastating effects on the arrested individuals." *Id.* at 452. The Court ultimately announced that an indigent defendant had a procedural due process right to be provided counsel at an initial appearance under Article 24 of the Maryland Declaration of Rights.[2]

By highlighting the specified factors listed in Rule 4-216 that a judicial officer "must" consider during a pretrial release proceeding, the Court of Appeals seems to have acknowledged in both *Richmond I* and *Richmond II* that the defendant was entitled to an individualized consideration. And given that Rule 4-216 specifically includes within that list of factors the defendant's "employment status and history" and "financial resources," Md. Rule 4-216(e)(1)(C), it is my view that the judicial officer must consider the defendant's particular finances and employment status when setting the terms of pretrial release.[3] My conclusion on that point finds further support in the provisions of CP § 5-101(a), which direct that criminal sanctions and not financial loss should be used to ensure the appearance of a defendant in a criminal case.

In addition to Rule 4-216 and the applicable statutory provisions, there is an argument under both the federal and Maryland Constitutions that a criminal defendant has a due process right to an individualized consideration of his or her financial resources before a financial condition of release can be imposed. As the Attorney General previously advised in a somewhat different context,

> [T]he Constitution places both procedural and substantive limitations on a court's power to incarcerate a criminal defendant in lieu of payment of a fine. First, the court must inquire into the reason why the defendant has failed to pay the fine. If the failure to pay is attributable to indigency the court must also consider alternate methods of punishment.

86 *Opinions of the Attorney General* 183, 186 (2001). That Opinion relied in part on several previous cases that overturned or reduced prison sentences for failure to pay certain costs. *See, e.g., Reddick v. State*, 327 Md. 270 (1992); *Smith v. State*, 306 Md. 1 (1986); *Turner v. State*, 307 Md. 618 (1986). *See also Thrower v. State*, 358 Md. 146, 160-61 (2000) (observing in the

---

[2] Article 24 states: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

[3] Rule 4-216(e)(1) directs the judicial officer to consider the specified information "to the extent available." It is possible that some judicial officers have interpreted this language to allow them to consider only the information presented to them. Nevertheless, an inquiry into the defendant's financial resources and employment status presumably is always available to the judicial officer.

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 5

civil context that incarceration for failure to pay child support "obviously impinges upon the liberty interest that parents have under the Fourteenth Amendment to the U.S. Constitution, under the Maryland Constitution, and under Maryland common law, and thus must comport with both procedural due process and with the non-Constitutional procedures ordained by this Court"). Although neither the Opinion nor the cases it relied on address the bail determination process, they all suggest that a defendant is constitutionally entitled to an individualized inquiry before a monetary obligation impacting that individual's liberty may be imposed.

The position taken by the federal Department of Justice ("DOJ") provides further support for the conclusion that due process principles require an individualized consideration of a defendant's financial resources when imposing a financial condition of pretrial release. In an *amicus curiae* brief submitted in the United States Court of Appeals for the Eleventh Circuit, the DOJ argued that fixed bail schedules violate the Fourteenth Amendment because they fail to provide indigent individuals a "meaningful consideration of their ability to pay and alternative methods of assuring their appearance at trial," and as such, violate the Fourteenth Amendment. *See* Brief of the United States, *Walker v. City of Calhoun*, No. 16-10521-HH.[4] The DOJ relied on Supreme Court precedent holding that individuals cannot be imprisoned solely on the basis of their indigency. *E.g.*, *Griffin v. Illinois*, 351 U.S. 12 (1956); *Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971); and *Bearden v. Georgia*, 461 U.S. 660 (1983).

> Although [these cases] have arisen in the sentencing and post-conviction contexts, their holdings apply with equal, if not greater, force in the bail context. Indeed, defendants who have not been found guilty have an especially "strong interest in liberty." Because of that liberty interest, pretrial release should be the norm, and pretrial detention "the carefully limited exception." To be sure, in certain circumstances, such as when a court finds that a defendant poses a threat to others or presents a flight risk, this fundamentally important right may be circumscribed on a case-by-case basis.... But fixed bail schedules that allow for the pretrial release of only those who can pay, without accounting for ability to pay and alternative methods of assuring future appearance, do not provide for such individualized determinations, and therefore unlawfully discriminate based on indigence.

DOJ *Amicus* Brief at 17 (quoting *United States v. Salerno*, 481 U.S. 739, 750, 755 (1987)).[5] *See also Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) ("Utilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in meeting[ ]

---

[4] Available at https://www.justice.gov/crt/file/887436/download. The DOJ *amicus* brief was filed in an appeal from the district court's entry of a preliminary injunction concluding that the City of Calhoun's pre-set bail system violates the Equal Protection Clause. *See Walker v. Calhoun*, No. 4:15-CV-0170-HLM, 20016 WL 361612 (Jan. 28, 2016). The appeal is pending.

[5] The DOJ also submitted a "Statement of Interest" in *Varden v. City of Clanton*, M.D. Ala., Case No. 2:15-cv-34-MHT-WC, stating that "[i]ncarcerating individuals solely because of their inability to pay for their release, whether through the payment of fines, fees, or a cash bond, violates the Equal Protection Clause of the Fourteenth Amendment." Statement at 1, available at https://www.justice.gov/file/340461/download.

Shortly after the DOJ filed this statement, the city agreed to stop using a money bail system and the case settled. In the order approving settlement, the district court stated that "the use of a secured bail schedule to detain a person after arrest, without an individualized hearing regarding the person's indigence and the need for bail or alternatives to bail, violates the Due Process Clause of the Fourteenth Amendment." *Jones v. City of Clanton*, 2015 WL 5387219 (Sept. 14, 2015) (Plaintiff Jones appearing on behalf of the estate of Ms. Varden, who is now deceased).

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 6

its requirements. The incarceration of those who cannot, without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements."). Although Maryland's pretrial procedures do not impose a fixed bail schedule, failing to consider an individual defendant's circumstances would have much the same effect and thus risks a determination that the Fourteenth Amendment as well as the Maryland Constitution has been violated.[6]

Indeed, one state's highest court reached that conclusion in a case analyzing the constitutionality of a state bail reform statute. In *Aime v. Commonwealth*, the Supreme Court of Massachusetts found that the statute was unconstitutional because "[t]he procedural defects of the hearing contemplated by the amendments violate the requirements of procedural due process..." 611 N.E.2d 204, 214 (Mass. 1993). The court compared the Massachusetts bail statute to the federal Bail Reform Act and found that the Massachusetts statute did not contain the same procedural protections before detention could be imposed. "A State may not enact detention schemes without providing safeguards similar to those which Congress incorporated into the Bail Reform Act." *Id.* at 213 (relying on *U.S. v. Salerno*, 481 U.S. 739 (1987)). In the statute at issue, the court concluded:

> The amendments create a statutory scheme calculated to protect the public from an arrestee's claimed dangerousness. The amendments use the amount of bail as the means to secure this goal. The amendments thus create an incentive for a judicial officer to set bail in an amount so that an arrestee perceived to be dangerous will not be able to gain his or her liberty pending trial.

*Id.* at 210. "Even critics of preventive detention of dangerous individuals have thought that a scheme providing for detention without surety is more equitable than a scheme that uses surety as a device to accomplish preventive detention. Dangerousness, these critics reasoned, provides a more appropriate basis for detention than poverty." *Id.* at n.12 (citation omitted).

To summarize, Maryland law outlines the factors that a judicial officer must consider before imposing conditions of release and directs the judicial officer to impose only the least onerous condition or combination of conditions that will ensure the appearance of the defendant at subsequent proceedings and protect the safety of the victim, the community and others. Imposing a high bail amount on a person of limited means is unlikely to be the least onerous condition. More importantly for your question, this type of fact-specific determination presumably cannot be made without an individualized inquiry into the criminal defendant's financial resources. For these reasons, I think the Court of Appeals would declare that the Maryland Rules and relevant statutory provisions require an individualized inquiry into the criminal defendant's financial resources before the judicial officer can impose money bail as a condition of release. Although the Court of Appeals has not yet stated that a defendant has a constitutional right to an individualized hearing about his or her financial condition before bail is imposed, due process concerns are raised where a judicial officer fails to conduct an individualized hearing required by State law.

---

[6] The Court of Appeals has stated that Article 24 of the Maryland Declaration of Rights "is in harmony with the 5th and 14th Amendments to the Federal Constitution, and the term 'due process of law' as used in said amendments has been construed to be synonymous with the expression 'Law of the Land' as used in said article." *Oursler v. Tawes*, 178 Md. 471, 483 (1940). *See also Evans v. State*, 396 Md. 256, 327 (2006) (noting that the Court has "consistently construed [Articles 16, 24 and 25 of the Maryland Declaration of Rights] as being in *pari materia* with their Federal counterparts").

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 7

*Right to Affordable Bail*

Your second question asks whether a judicial officer is prohibited by law from imposing a money bail or other financial condition of pretrial release that exceeds the defendant's ability to pay. As discussed in more detail below, the Court of Appeals has not ruled on this issue directly. There are opinions from the Court of Special Appeals from more than 40 years ago stating that an indigent defendant's ability pay is not dispositive of the amount of bail set. Nevertheless, I believe that Maryland's appellate courts, if ruling on this issue today, would likely conclude that where the judicial officer has determined that pretrial detention is not warranted, the imposition of bail or other financial condition of release that a defendant cannot pay implicates substantive due process and equal protection considerations, and may be found to be excessive under the Eighth Amendment to the U.S. Constitution and Article 25 of the Maryland Declaration of Rights.

Federal law explicitly states that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). Accordingly, under federal law, the judicial officer may not use bail solely as a means to keep a defendant in pretrial detention. *See* DOJ Brief in *Walker* at 26. Although State law does not contain the same express prohibition, it effectively mandates the same result. Section 5-101 of the Criminal Procedure Article directs that the pretrial release provisions "shall be liberally construed to carry out the purpose of relying on criminal sanctions instead of financial loss to ensure the appearance of a defendant in a criminal case before verdict or pending a new trial." CP § 5-101(a). Further, Rule 4-216(c) states,

> a defendant is entitled to be released before verdict on personal recognizance or on bail, in either case with or without conditions imposed, unless the judicial officer determines that no condition of release will reasonably ensure (1) the appearance of the defendant as required and (2) the safety of the alleged victim, another person, and the community.

The foregoing provisions establish that when detention is not required to ensure a defendant's return or the safety of the community, a judicial officer may not impose on an indigent defendant a financial condition that the defendant is unable to satisfy, lest the bail transform from a condition based on risk of return to a penalty based on economic status.

No court has explicitly stated that there is a *constitutional* right to affordable bail. There is strong reason to believe, however, that criminal defendants have a liberty interest in not being detained solely on the basis of their poverty and that interest—protected by substantive due process under the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights—is impinged if bail is unreasonably out of reach. *See Allmond v. Dept. of Health and Mental Hygiene*, 448 Md. 592, 609-10 (2016) (explaining that "'[s]ubstantive due process' ... refers to the principle that there are certain liberties protected by the due process clauses from legislative restrictions, regardless of the procedures provided, unless those restrictions are narrowly tailored to satisfy an important government interest"); *U.S. v. Ailemen*, 165 F.R.D. 571, 577 (N.D. Cal. 1996) (noting that "[t]he constitutional ban on excessive pretrial detention can be understood as a right guaranteed by substantive due process").[7]

---

[7] In *Ailemen*, the federal magistrate conducted an extensive analysis of how courts across the country have analyzed the due process limits of pretrial detention. The case involved a more than two-year pretrial detention of an individual charged with serious drug crimes. In trying to determine at what point a prolonged pretrial detention violates due process, the magistrate noted that "indisputably fundamental rights—the right to a speedy trial, the protection against excessive bail, the presumption of

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 8

In a case upholding the facial constitutionality of the federal Bail Reform Act, which authorized pretrial detention for defendants identified as dangerous, the Supreme Court put forth the test for assessing whether the government violated the defendant's due process rights. *U.S. v. Salerno*, 481 U.S. 739 (1987). "We have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." *Id.* at 748. The government's interests, however, must be legitimate and compelling. *Id.* at 749. The Court went on to observe that "[o]n the other side of the scale ... is the individual's strong interest in liberty. We do not minimize the importance and fundamental nature of this right. But, as our cases hold, this right may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." *Id.* at 750-51.

Although the Court in *Salerno* ultimately concluded that the Bail Reform Act was not unconstitutional on its face, it reiterated that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," requiring "numerous procedural safeguards..." *Id.* at 755. *See also Wheeler v. State*, 160 Md. App. 566, 579 (2005) (noting that "[u]nless persuaded by clear and convincing evidence that the defendant is a danger to another person or to the community, a judicial officer does not have 'discretion' to conclude that the defendant is too dangerous to be released pending trial"); *Ailemen*, 165 F.R.D. at 580 (concluding that "[i]t is only by focusing on the actual conditions of release, and what those conditions would contribute to *reducing* the threat of harm to the government's regulatory interests, that courts can accurately assess how much continued imprisonment would contribute to achieving the government's regulatory goals") (emphasis in original); *State v. Blackmer*, 631 A.2d 1134, 1140 (Vt. 1993) (explaining that the three important considerations under due process are "(1) bail cannot be denied in order to inflict pretrial punishment; (2) pretrial detention cannot be excessive in relation to the regulatory goal; and (3) the interests served by the detention must be legitimate and compelling").

Imposing a bail amount that exceeds the defendant's ability to pay has much the same result as denying pretrial release. "[I]n the case of an indigent, whose appearance at trial could reasonably be assured by one of the alternate forms of release, pretrial confinement for inability to post money bail would constitute imposition of an excessive restraint." *Pugh*, 572 F.2d at 1057-58. It is possible, therefore, the Court of Appeals would hold that substantive due process considerations require that any condition of pretrial release must be the least onerous condition for that individual to meet the State's compelling interests as identified in CP § 5-101 and Rule 4-216(c). If so, the Court might also conclude that a bail amount that clearly exceeds the ability of the defendant to pay and that is imposed solely to detain a defendant violates due process.

Another possible constitutional concern with imposing bail exceeding the defendant's ability to pay arises from the Eighth Amendment to the United States Constitution, which provides in relevant part, "Excessive bail shall not be required." Although the Supreme Court has not clearly stated that the Fourteenth Amendment Due Process Clause incorporates the Eighth Amendment against the states, it has on more than one occasion stated that the Eighth Amendment "has been assumed to have application to the States." *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971); *see also Baker v. McCollan*, 443 U.S. 137, 145 (1979) (discussing *Schilb*); *McDonald v. City of Chicago*, 561 U.S. 742, 764 n.12 (2010) (including the Eighth Amendment among those Bill of Rights protections that have been incorporated in, and thus made applicable

---

innocence—all would be empty pronouncements, full of sound and fury but signifying nothing, for a defendant who could be imprisoned indefinitely while awaiting trial." 165 F.R.D. at 578.

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 9

to the States through, the Fourteenth Amendment); *id* at 765 n.13 (omitting the Eighth Amendment from the list of rights "not fully incorporated"). Many lower courts that have reached the issue have concluded that the Excessive Bail Clause applies to the states. *See, e.g., Campbell v. Johnson*, 586 F.3d 835, 842 (11th Cir. 2009); *U.S. v. Polouizzi*, 697 F. Supp.2d 381, 386 (E.D.N.Y. 2010); *United States ex rel. Siegal v. Follette*, 290 F.Supp. 632 (S.D.N.Y.1968) (noting that "the weight of authority and reason favors" the application of the clause to the states). Maryland courts too appear to have concluded that the Clause applies to the states. *Bigley v. Warden*, 16 Md. App. 1, 9 (1972) (quoting *Turco v. Maryland*, 324 F. Supp. 61 (D. Md. 1971) for the assertion that the Eighth Amendment is applicable to the states through the Fourteenth Amendment); *Aravanis v. Somerset Co.*, 339 Md. 644, 656 n.10 (1995) (discussing extent to which different clauses of the Eighth Amendment apply to the states).

Regardless of whether the Eighth Amendment is applicable to the states, Maryland's Constitution has its own excessive bail clause. The Maryland Declaration of Rights, Article 25 provides "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law." The Court of Appeals has explained:

> Article 25 is, textually and historically, substantially identical to the Eighth Amendment. Indeed, both of them were taken virtually verbatim from the English Bill of Rights of 1689. Thus, it is well settled in this State that Article 25 of the Maryland Declaration of Rights is *in para materia* with the Eighth Amendment. Indeed, the excessive fines provision of Article 25 was one of eight such provisions which served as a model for the Excessive Fines Clause of the Eighth Amendment. Thus, the excessive fines provision of Article 25 should be interpreted co-extensively with the excessive fines provision of the Eighth Amendment.

*Aravanis v. Somerset Co.*, 339 Md. 644, 656-57 (1995) (citations omitted). The Court of Appeals has not similarly determined that the excessive bail provision of Article 25 would be interpreted *in pari materia* with the Excessive Bail Clause of the Eighth Amendment, but I believe that the Court likely would reach that conclusion if presented with the opportunity.

The Supreme Court has expressly stated that the Eighth Amendment requires that a judicial officer consider "the financial ability of the defendant to give bail" when deciding the financial terms of release. *Stack v. Boyle*, 342 U.S. 1 (1951). The Court in that case confirmed that the purpose of bail is assuring the defendant's presence at trial, and, thus "[b]ail set at a figure higher than an amount reasonably calculated to fulfill this purpose is 'excessive' under the Eighth Amendment." *Id.* at 5. "[T]he fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant." *Id. See also U.S. v. Arzberger*, 592 F. Supp. 2d 590, 605 (S.D.N.Y. 2008) ("[I]f the Excessive Bail Clause has any meaning, it must preclude bail conditions that are (1) more onerous than necessary to satisfy legitimate governmental purposes and (2) result in deprivation of the defendant's liberty.")

Although bail must be set only for the purpose of assuring the defendant's presence at trial or where the defendant is a danger if released, courts have not concluded that simply imposing bail at an amount a defendant cannot pay because of the defendant's poverty is thereby "excessive" under the Eighth Amendment. *Hodgdon v. United States*, 365 F.2d 679, 687 (8th Cir.1966) (stating bail "is not excessive merely because the defendant is unable to pay it"); *United States v. McConnell*, 842 F.2d 105, 107 (5th Cir.1988) (stating that, although bail is

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 10

excessive under the Eighth Amendment when greater than necessary to assure presence at trial, "a bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement"); *Donohue v. Jenne*, 765 So. 2d 969 (Fla. App. 2000) (rejecting defendant's claim bond unreasonable "since the state did not establish that he can pay for a bond set at $250,000"). *See generally* Wayne R. LaFave, Jerold H. Israel, Nancy J. King, Orin S. Kerr, 4 *Crim. Proc.* § 12.2(b), "Poverty and pretrial release," (4th ed., 2015 update).

Consistent with these decisions, the Court of Special Appeals held more than 40 years ago that "[t]he question of excessive bail is not resolved on the basis of an individual's ability or inability to raise a certain sum...and since the applicant in this case claims indigence, it may also be that the applicant could not even post nominal bail." *Simmons v. Warden*, 16 Md. App. 449, 450 (1973). The version of the bail rules at that time left the bail decision to "the discretion of the court." *Id. See also Hunter v. Warden*, 17 Md. App. 86 (1973) (citing the *Simmons* case but also recognizing that "[e]ach case must be decided on its own particular circumstances"); *Bigley v. Warden*, 16 Md. App. 1 (1972) (noting that the court rule at the time left the bail consideration to the court's discretion with "no special governing statute or rule"). Today Rule 4-216 provides specific factors governing the conditions of pretrial release.

Further, the criminal justice system is much different now than in 1973 and the jurisprudence seems to be giving more weight toward the defendant's ability to pay bail. Although the Supreme Court has not spoken in detail about the core protections conferred by the Excessive Bail Clause, in 1987 it provided guidance within the context of the federal Bail Reform Act:

> The only arguable substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be "excessive" in light of the perceived evil. Of course, to determine whether the Government's response is excessive, we must compare that response against the interest the Government seeks to protect by means of that response.

*Salerno*, 481 U.S. at 754. Along similar lines, it is possible that the Court of Appeals would find bail to be excessive where the judicial officer, applying the considerations required by current State law, found release was appropriate, and yet set bail at an amount the defendant clearly cannot pay.

Finally, imposing a bail amount that keeps a defendant in pretrial detention because that individual is poor and cannot afford bail also raises equal protection concerns. The following passage from Justice Douglas' opinion in *Bandy v. United States*, sitting as a circuit judge, is frequently quoted on this point:

> Can an indigent be denied freedom, where a wealthy man would not, because he does not happen to have enough property to pledge for his freedom? It would be unconstitutional to fix excessive bail to assure that a defendant will not gain his freedom. Yet in the case of an indigent defendant, the fixing of bail in even a modest amount may have the practical effect of denying him release.

*Bandy v. U.S.*, 81 S. Ct. 197, 198 (1960) (Douglas, J., as Circuit Justice). "Rules under which personal liberty is to be deprived are limited by the constitutional guarantees of all, be they moneyed or indigent, befriended or friendless, employed or unemployed, resident or transient,

Delegates Barron, Dumais, Hettleman, Korman, Lierman
October 11, 2016
Page 11

of good reputation or bad." *Pugh*, 572 F.2d at 1057. *See also Hairston v. U.S.*, 343 F.2d 313, 316-17 (D.C. Cir. 1965) (Bazelon, C.J., dissenting) ("[s]etting high bail to deny release discriminate(s) between the dangerous rich and the dangerous poor").

Notwithstanding the forceful arguments in support of the equal protection argument, I have found no court that applied an equal protection analysis to find that bail is unconstitutional when set in an amount a particular indigent defendant cannot meet. At the same time, if it is determined in a particular case that money bail served no other governmental purpose than detaining that defendant without sufficient financial means, I believe that it is plausible that the Court of Appeals would find a violation of the Equal Protection Clause of the U.S. Constitution or Article 24 of the Maryland Declaration of Rights.[8]

*Conclusion*

Based on the foregoing, it is my view that the Court of Appeals would conclude that the State's statutory law and court rules should be applied to require a judicial officer to conduct an individualized inquiry into a criminal defendant's ability to pay a financial condition of pretrial release. Although it is less clear that defendants have a constitutional right to an individualized inquiry, constitutional considerations provide further support to the requirement of an individualized inquiry. It is also my view that, while imposing a financial condition is allowed under current State law and is not unconstitutional in and of itself, the Court of Appeals would likely hold that, in the event a judicial officer determines that pretrial detention is not justified to meet the State's regulatory goals, a judicial officer may not impose a financial condition set solely to detain the defendant. Conditions of pretrial release must instead be the least onerous to reasonably ensure the appearance of the defendant as required, protect the safety of the victim, or ensure that the defendant will not pose a danger to another person or the community. As a result, setting the bail in an amount not affordable to the defendant, thus effectively denying release, raises a significant risk that the Court of Appeals would find it violates due process. If pretrial detention is not justified yet bail is set out of reach financially for the defendant, it is also likely the Court would declare that the bail is excessive under the Eighth Amendment and Article 25 of the Maryland Declaration of Rights.

Sincerely,

Sandra Benson Brantley
Counsel to the General Assembly

---

[8] *See Neifert v. Dep't of the Env't*, 395 Md. 486, 504 (2006) (explaining that although Article 24 of the Maryland Declaration of Rights does not have an express equal protection clause, "the concept of equal protection is embodied within the Article").