# EXHIBIT MM

**To Declaration of Micah West in Support of
Motion for Preliminary Injunction
& Motion for Class Certification**

# RANSOM

A CRITIQUE OF THE AMERICAN BAIL SYSTEM



BY RONALD GOLDFARB

*Also by Ronald Goldfarb:*

THE CONTEMPT POWER

# RANSOM

*A Critique of the American Bail System*

by

Ronald Goldfarb

*Foreword by Justice Arthur J. Goldberg*

HARPER & ROW, PUBLISHERS, NEW YORK

For Joanne and Jody
With love and thanks

*Ransom:* A CRITIQUE OF THE AMERICAN BAIL SYSTEM. Copyright © 1965 by Ronald L. Goldfarb. Printed in the United States of America. All rights reserved. No part of this book may be used or reproduced in any manner whatsoever without written permission except in the case of brief quotations embodied in critical articles and reviews. For information address Harper & Row, Publishers, Incorporated, 49 East 33rd Street, New York, N.Y. 10016.

LIBRARY OF CONGRESS CATALOG CARD NUMBER: 65–14684

F-Q

# *Foreword*

by ARTHUR J. GOLDBERG
*Associate Justice*
*Supreme Court of the United States*

If it is true that "the quality of a nation's civilization can be largely measured by the methods it uses in the enforcement of its criminal law," then the American bail system as it now operates can no longer be tolerated. At best, it is a system of checkbook justice; at worst, a highly commercialized racket. These are strong words, but that they are accurate is confirmed by the overwhelming evidence detailed in Ronald Goldfarb's timely and valuable study. His book demonstrates the inadequacies and unfairness of the American bail system and also makes valuable suggestions for overdue and much needed reform.

A basic defect of the present bail system is that it operates to the prejudice of the poor. Yet it is the central aim of our entire judicial system that, "all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" The simple truth is that, despite this most basic concept that equal justice be afforded to the poor and to the rich alike, the bail system operates to discriminate on account of poverty. After arrest, the accused who is poor must often await the disposition of his case in jail because of his inability to raise bail,

while the accused who can afford bail is free to return to his family and job. Equally important, he is free during the critical period between arrest and trial to help his attorney with the investigation and preparation of his defense. In a recent case a defendant was imprisoned well over two years between the time he was arrested and the time he was ultimately acquitted on appeal, solely because he could not raise the small amount of money necessary for bail. This is an example, too often repeated, of justice denied or a man imprisoned for no other reason than his poverty.

Recent studies in the area of bail which are reviewed in this book establish that if carefully screened defendants are released pending trial on their own recognizance and treated with dignity they will appear at trial. Mr. Goldfarb properly reminds us of the appalling and needless waste—to the government, the family, and the community—every time a responsible person presumed by law to be innocent is kept in jail awaiting trial solely because he is unable to raise bail money. It is becoming more and more apparent that careful screening and release without bail should be made the rule rather than the exception throughout the country. This does not mean that release without bail should be allowed in every case. It does mean that it is feasible in a great many cases.

It is said, in defense of the present American bail system, that the government cannot be expected to equalize all economic disparities. Of course it cannot, but this does not mean that it should not try to minimize inequities in this critical area of administration of criminal justice. The real question, as put by the Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice is: "Has government done all that can be reasonably required of it . . . to render the poverty of the litigant an irrelevancy?" Mr. Goldfarb's book demonstrates that government in this coun-

try, both state and federal, has not done all that can reasonably be required of it to render the poverty of the litigant an irrelevancy in the operation of the bail system.

Another valuable contribution of this book is its discussion of the programs underway to eliminate these inequities. The Manhattan Bail Project, under the auspices of the Vera Foundation, has served to awaken the country to the archaic and unjust nature of the bail system. The first National Bail Conference in May, 1964, cosponsored by the United States Department of Justice and the Vera Foundation, was a milestone in stimulating interest and study, the first steps in reform. The Report of the Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice deservedly promises to have a constructive influence in this and related areas. The proposals by Senator Ervin for federal legislation, and the program under consideration or adopted in the various states, represent welcome recognition that we need not and cannot continue under the present system.

Mr. Goldfarb's book contributes to this re-evaluation of the bail system by offering important suggestions for fundamental reform. I am sure that the author would agree with me that it is not important whether his specific suggestions be followed; what is important is that the abuses of the present bail system be corrected, here and now.

In reading this scholarly book, with its appeal to our conscience on behalf of those charged with crime, we are again reminded of the words uttered by Sir Winston Churchill more than a half-century ago, speaking in the House of Commons as Home Secretary:

The mood and temper of the public in regard to the treatment of crime and criminals is one of the most unfailing tests of any country. A calm, dispassionate recognition of the rights of the

xii FOREWORD

accused, and even of the convicted criminal, against the State—a constant heart-searching by all charged with the duty of punishment—a desire and eagerness to rehabilitate in the world of industry those who have paid their due in the hard coinage of punishment: tireless efforts towards the discovery of curative and regenerative processes: unfailing faith that there is a treasure, if you can only find it, in the heart of every man. These are the symbols, which, in the treatment of crime and criminal, mark and measure the stored up strength of a nation, and are sign and proof of the living virtue within it.