**EXHIBIT PP**

**To Declaration of Micah West in Support of
Motion for Preliminary Injunction
& Motion for Class Certification**



NOVEMBER 2013

RESEARCH SUMMARY

Pretrial criminal justice research commissioned by the Laura and John Arnold Foundation (LJAF) has thrown new light on how critical the earliest decisions made in the criminal justice system may be for public safety, fairness, and cost effectiveness.

## PRETRIAL CRIMINAL JUSTICE RESEARCH

Together, federal, state, and local corrections costs in the United States today exceed $80 billion per year. Pretrial detainees account for more than 60 percent of the inmate population in our jails. The cost to incarcerate defendants pretrial has been estimated at over $9 billion per year. Many pretrial detainees are low-risk defendants, who, if released before trial, are highly unlikely to commit other crimes and very likely to return to court. Others present moderate risks that can often be managed in the community through supervision, monitoring, or other interventions. There is, of course, a small but important group of defendants who should most often be detained because they pose significant risks of committing acts of violence, committing additional crimes, or skipping court.

The key, then, is to make sure that we accurately distinguish among the low-, moderate-, and high-risk defendants – and identify those who are at an elevated risk for violence. Moreover, it is important that, when we determine how to deal with defendants during the pretrial period, we appropriately assess what risk individual defendants pose. By making decisions in this manner, we can reduce crime, make wise use of public resources, and make our system more just.

Although police, prosecutors, and judges share the same objectives – to detain those who pose a risk to public safety and to release those who do not – this is not how our criminal justice system currently operates. Criminal justice decisionmakers do their best to achieve these goals, but they typically do not have sufficient information about defendants, the risks they pose, or the best methods to reduce these risks. Instead, key decisions are often made in a subjective manner, based on experience and instinct, rather than on an objective, data-driven assessment of a defendant's risk level and the most effective approach to protecting public safety in each case.

For two years, LJAF has been working to improve how decisions are made during the earliest part of the criminal justice process, from the time a defendant is arrested until the case is resolved. Our strategy has been to use data, analytics, and technology to promote a transition from subjective to more objective decision-making. To that end, we are developing easy-to-use, data-driven risk assessments

for judges and prosecutors and are exploring tools to assist police in determining when to arrest an individual and when to issue a citation instead. In addition, we are pursuing research into key criminal justice issues, including the impacts of pretrial release and detention; and we are investigating the long-unanswered question of what approaches are successful at reducing future crime – and for whom they are most effective. The LJAF research released today – which was conducted in partnership with two of the nation's leading pretrial justice researchers, Dr. Marie VanNostrand and Dr. Christopher Lowenkamp – is a key part of this effort. The central findings of these three studies are summarized below:

### The Effect of Pretrial Detention on Sentencing:

A study, using data from state courts, found that defendants who were detained for the entire pretrial period were over four times more likely to be sentenced to jail and over three times more likely to be sentenced to prison than defendants who were released at some point pending trial. And their sentences were significantly longer – almost three times as long for defendants sentenced to jail, and more than twice as long for those sentenced to prison. A separate study found similar results in the federal system.

### The Hidden Costs of Pretrial Detention:

Using statewide data from Kentucky, this study uncovered strong correlations between the length of time low- and moderate-risk defendants were detained before trial, and the likelihood that they would reoffend in both the short- and long-term. Even for relatively short periods behind bars, low- and moderate-risk defendants who were detained for more days were more likely to commit additional crimes in the pretrial period – and were also more likely to do so during the two years after their cases ended.

### The Impact of Pretrial Supervision:

This study drew on data from two states, one eastern and one western, and found that moderate- and high-risk defendants who received pretrial supervision were significantly more likely to appear for their day in court than those who were unsupervised. In addition, long periods of supervision (more than 180 days) were related to a decrease in new criminal activity; however, no such effect was evident for supervision of 180 days or less.

These studies raise significant questions about the way our pretrial system currently works. They also demonstrate the tremendous need for additional research in this area. As part of our commitment to using data, analytics, and technology to transform the front end of the criminal justice system – what we call *Moneyballing* criminal justice – LJAF stands committed to pursuing a robust research agenda to answer these pressing questions and to make sure the system is as safe, fair, and cost-effective as possible.

> Key decisions are often made in a subjective manner, based on experience and instinct, rather than on an objective, data-driven assessment of a defendant's risk level and the most effective approach to protecting public safety in each case.

## I. THE EFFECT OF PRETRIAL DETENTION ON SENTENCING

Two recent studies funded by LJAF shed new light on the impact that a defendant's release or detention before trial can have on the eventual sentence in the case. These studies – one using data from federal courts and the other using data from state courts – demonstrate that pretrial detention is associated with an increase in the likelihood a defendant will be sentenced to jail or prison, as well as the length of incarceration.[1] The findings serve to underscore just how important judges' decisions regarding pretrial release and detention truly are.

The state study analyzed records of over 60,000 defendants arrested in Kentucky in 2009 and 2010. It found that defendants detained for the entire pretrial period were over four times more likely to be sentenced to jail and over three times more likely to be sentenced to prison than defendants who were released at some point pending trial. Sentences were also significantly longer – nearly three times as long for defendants sentenced to jail and more than twice as long for those sentenced to prison.

The analysis focused on the relationship between detention and sentencing. The study controlled for the other variables in the data set, meaning that defendants who were compared to one another were similar in terms of age, gender, race, marital status, risk level, offense type, incarceration history and other factors. In other words, defendants who were similar in every known way – except for their pretrial release status – had different outcomes at sentencing.

> Studies demonstrate that pretrial detention is associated with an increase in the likelihood a defendant will be sentenced to jail or prison, as well as the length of incarceration.

## Impact of Pretrial Detention on State Sentencing

Compared to defendants released at some point prior to trial, defendants held for the entire pretrial detention period had:



**4x** greater likelihood of being sentenced to jail

**3x** longer jail sentences



**3x** greater likelihood of being sentenced to prison

**2x** longer prison sentence

The second study examined similar questions in the context of federal courts. The study, which is currently under review by a peer-reviewed journal, was conducted by Dr. Lowenkamp, Dr. VanNostrand, Dr. James Oleson of the University of Auckland, Timothy Cadigan of the Administrative Office of the United States Courts (retired), and Dr. John Wooldredge of the University of Cincinnati. Drawing on 1,798 cases from two United States District Courts, the research found that pretrial release reduces sentence length for all defendants, even if release is ultimately revoked due to a defendant's failure to adhere to conditions of release. Indeed, detained defendants' sentences are, on average, nearly two times longer than those of released defendants. And while defendants who were released and later revoked received longer sentences than defendants who completed pretrial release without incident, their sentences were still shorter than defendants who were never released at all. These findings were obtained while controlling for known factors.

---

1   Jails are usually locally operated and are used to detain individuals prior to trial or can be used to incarcerated individuals who have been sentenced, typically for one year or less. Prisons are state or federally run and are used to incarcerate sentenced individuals typically for one year or more, and often for much longer.

The importance of these findings is clear when considering the state of our federal prison system. More than 110,000 defendants went through the federal court system in 2011, 86 percent of whom were sentenced to federal prison for an average sentence of almost 5½ years. Since 1980, the Bureau of Prison population has grown tenfold. The fiscal costs of this increase are staggering: Each prisoner in the system costs taxpayers between $21,006 (minimum security) and $33,930 (high security) annually.

## II. THE HIDDEN COSTS OF PRETRIAL DETENTION

The primary goal of the American criminal justice system is to protect the public. But what if, rather than protecting society, the pretrial phase of the system is actually helping to create new repeat offenders?

That is the question raised by an LJAF-funded study that analyzed data on over 153,000 defendants booked into jail in Kentucky in 2009 and 2010. The analysis showed that low-risk defendants who were detained pretrial for more than 24 hours were more likely to commit new crimes not only while their cases were pending, but also years later. In addition, they were more likely to miss their day in court. Conversely, for high-risk defendants, there was no relationship between pretrial incarceration and increased crime. This suggests that high-risk defendants can be detained before trial without compromising, and in fact enhancing, public safety and the fair administration of justice.

Judges, of course, do their best to sort violent, high-risk defendants from nonviolent, low-risk ones, but they have almost no reliable, data-driven risk assessment tools at their disposal to help them make these decisions. Fewer than 10 percent of U.S. jurisdictions use any sort of risk-assessment tools at the pretrial stage, and many of the tools that are in use are neither data-driven nor validated. Kentucky provided a unique research opportunity because it used a validated tool that provided us with an understanding of the level of risk that individual defendants posed. While risk assessments could not be completed on approximately 30 percent of defendants, we were able to study whether, for the remaining 70 percent, the impact of pretrial detention varied depending on their risk levels.

This study indicates that effectively distinguishing between low-, moderate-, and high-risk defendants at the pretrial stage could potentially enhance community safety.

The research findings are summarized below.

## A. PRETRIAL DETENTION AND PRETRIAL OUTCOMES

This study explored whether there is a link between time spent in pretrial detention and the commission of new criminal activity or failure to appear in court. The study looked at 66,014 cases in which the defendants were released at some point before trial, and found that even very small increases in detention time are correlated with worse pretrial outcomes. The research controlled for other known variables. The study found that, when held 2-3 days, low-risk defendants were almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours. The study indicates that the correlation generally escalates as the time behind bars increases: low-risk defendants who were detained for 31 days or more offended 74 percent more frequently than those who were released within 24 hours. A similar pattern held for moderate-risk defendants, though the percentage increase in rates of new criminal activity is smaller.

Interestingly, for high-risk defendants, the study found no relationship between pretrial detention and increased new criminal activity. In other words, there is no indication that detaining high-risk defendants for longer periods before trial will lead to a greater likelihood of pretrial criminal activity.



**Increase in New Criminal Arrest**
Low-Risk Defendants

- 2-3 days*: 39%
- 4-7 days*: 50%
- 8-14 days*: 56%
- 15-30 days*: 57%

*\* = statistically significant at the .01 level or lower*

This same pattern emerged for failure to appear. Low-risk defendants held for 2-3 days were 22 percent more likely to fail to appear than similar defendants (in terms of criminal history, charge, background, and demographics) held for less than 24 hours. The number jumped to 41 percent for defendants held 15-30 days. For low-risk defendants held for more than 30 days, the study found a 31 percent increase in failure to appear. Again, however, detention was found to have no impact on high-risk defendants' rates of missing court, and for moderate-risk defendants, the effect was minimal.

### B. PRETRIAL DETENTION AND LONG-TERM RECIDIVISM

Even for relatively short periods of detention, according to the study, the longer a low-risk defendant was detained before trial, the more likely he was to commit a new crime within two years of case disposition. Specifically, controlling for other known variables, the study found that pretrial detention is associated with long-term recidivism, particularly for low-risk defendants.

For detention periods of up to 14 days, according to the study, the longer a low-risk defendant was detained before trial, the more likely he was to commit a new crime within two years of case disposition. Compared to individuals released within 24 hours of arrest, low-risk defendants held 2-3 days were 17 percent more likely to commit another crime within two years. Detention periods of 4-7 days yielded a 35 percent increase in re-offense rates. And defendants held for 8-14 days were 51 percent more likely to recidivate than defendants who were detained less than 24 hours. Although the effects began to diminish slightly beyond 14 days, low-risk defendants remained significantly more likely to reoffend in the long run as compared to defendants released within 24 hours. Again, these effects were observed among defendants who were matched on all the other measurable variables. For high-risk defendants, however, more days spent in pretrial detention were not associated with an increase in recidivism.



**Increase in 2-Year Recidivism**
Low-Risk Defendants

- 2-3 days*: 17%
- 4-7 days*: 35%
- 8-14 days*: 51%
- 15-30 days*: 46%

*\* = statistically significant at the .01 level or lower*

### C. POLICY IMPLICATIONS

In our criminal justice system today, judges frequently do not have an objective, scientific, and data-driven risk assessment to assist them in understanding the amount of risk that an individual defendant poses. Moreover, length of detention is frequently determined by factors totally unrelated to a defendant's risk level – for instance, the administrative speed with which a

given court system can process defendants. In some jurisdictions, defendants may be held up to three days before their first opportunity to go before a judge who will determine whether they are detained or released. What we see from this research is that the costs of these delays may potentially result in increased crime. The study finding regarding high-risk defendants is equally important: There appears to be no tradeoff between protecting the public during the pretrial period and improving public safety years later.

Although these studies do not demonstrate causation, they show correlations between length of detention and negative outcomes for low- and moderate-risk defendants. Additional studies are needed to further research these and other questions.

### III. THE IMPACT OF PRETRIAL SUPERVISION

Although one of the most important decisions made before a criminal trial is whether to release or detain a defendant, the need for more data-driven tools does not end there. Judges frequently assign conditions to defendants they release, which may include pretrial supervision. There are many different models of pretrial supervision, some of which include periodic calls or meetings with a pretrial services officer, drug testing or treatment, or electronic monitoring. Currently, however, judges have very little data to help them determine who to assign to supervision, and what type of supervision works best for whom. With this in mind, LJAF is pursuing a number of studies of conditions of release including pretrial supervision.

In its initial study of pretrial supervision, LJAF researchers looked at 3,925 defendants from two states, one eastern and one western, and compared 2,437 defendants who were released without supervision with 1,488 who were released with supervision. In order to determine whether the effects of supervision varied based on defendants' risk levels, researchers used an existing validated risk assessment to assign defendants to risk categories.

The study found that moderate- and high-risk defendants who received pretrial supervision were significantly more likely to appear for their day in court. When controlling for state, gender, race, and risk, moderate-risk defendants who were supervised missed court dates 38 percent less frequently than unsupervised defendants. For high-risk defendants, the reduction was 33 percent. Analysis of various samples of the low-risk population generated inconsistent findings about the impacts of supervision on failure-to-appear rates – suggesting that the relationship between supervision for low-risk defendants and failure to appear is minimal or nonexistent.

In addition, pretrial supervision of more than 180 days was statistically related to a decrease in the likelihood of new criminal activity before case disposition. Defendants supervised pretrial for six months or more were 22 percent less likely to be arrested for new crimes before case disposition. While this finding is intriguing, the data set was not specific enough with regard to type of supervision to draw definite conclusions about the impact of supervision on new criminal activity pending case disposition.

This study is significant because it tells us that pretrial supervision may be effective in reducing failure to appear rates and, after a time, new criminal activity. However, while it appears that supervision generally helps prevent negative pretrial outcomes, details are scarce. For instance, in this study, no information was provided as to what type of supervision (minimal, moderate, or intensive) defendants received. And what types of supervision work for which defendants is something the field does not yet know. LJAF is committed to pursuing additional research in these important areas.

## IV. CONCLUSION

This research demonstrates how critical it is to focus on the pretrial phase of the criminal justice system. Pretrial decisions made by judges, police, and prosecutors determine, as Caleb Foote stated in 1956, "mostly everything." These studies demonstrate that pretrial decisions may impact whether or not a defendant gets sentenced to jail or prison, and for how long; that an increased length of pretrial detention for low- and moderate-risk defendants is associated with an increased likelihood that they will reoffend both during the pretrial period and two years after the conclusion of their case; and that supervision may reduce failure to appear rates and, when done for 180 days or more, new criminal activity.

As important as these findings are, however, there remains an acute need for more research in this area. Moreover, for ethical and practical reasons, it would be difficult in many instances to conduct randomized controlled trials where judges would be asked to make detention, release, and supervision decisions based on research objectives. As a result, studies such as these do not prove causation. Although the findings noted above are observational, and not causal, the correlations are so striking that they merit further research.

LJAF is committed to researching questions that have arisen in these studies, and many others. This reflects our commitment to leveraging research, data, and technology to help jurisdictions improve public safety, reduce crime, make the best use of limited resources, and ensure that the justice system is working as fairly and efficiently as possible.

The full research reports for the studies can be accessed at:
www.arnoldfoundation.org/research/criminaljustice.

## About Laura and John Arnold Foundation

Laura and John Arnold Foundation is a private foundation that currently focuses its strategic investments on criminal justice, education, public accountability, and research integrity.

LJAF has offices in Houston and New York City.