IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KANDACE KAY EDWARDS,            ) | |
| ) | |
| Plaintiff,            ) | |
| ) | |
| v.            ) | CASE NO. 3:17-CV-321-WKW |
| ) | |
| DAVID COFIELD, in his official            ) | |
| capacity as Randolph County Sheriff,   ) | |
| *et al.*,            ) | |
| ) | |
| Defendants.            ) | |

## **MEMORANDUM OPINION AND ORDER**

## **I.  INTRODUCTION**

Plaintiff brought this lawsuit against four state officials who each play a role in Randolph County's alleged unconstitutional pretrial detention scheme—"one in which indigent arrestees are jailed because of their inability to make bond, while well-to-do arrestees are able to quickly purchase their release." (Doc. # 9, at 2.) One of the four officials, Defendant Sheriff David Cofield, filed a Motion to Dismiss on the ground that he "has no authority over setting bond as a matter of law." (Doc. # 30, at 1.)  In other words, Defendant argues he is immune from suit because he had no discretion to change the policy—he was simply enforcing the law as charged to him by his superiors.  The other three officials—Circuit Clerk Christopher May, Magistrate Jill Puckett, and District Judge Clay Tinney—filed a Motion to Dismiss

(Doc. # 46) on the ground that this action is moot because Plaintiff is no longer jailed in Randolph County. For the reasons set forth below, both motions are due to be denied.

## II. DISCUSSION

**A.     Defendant Cofield**

Defendant's only argument ignores hornbook law that has been around for over 100 years. "The landmark case of *Ex parte Young*, 209 U.S. 123 (1908), created an exception to [state sovereign immunity] by asserting that a suit challenging the constitutionality of *a state official's action in enforcing state law* is not one against the State."[1] *Green v. Mansour*, 474 U.S. 64, 68 (1985) (emphasis added). "The theory of the case was that an unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) (quoting *Young*, 209 U.S. at 160). Because the State is unable to authorize an unconstitutional action, its actor is "stripped of his official or representative character and is subjected to the consequences of his official conduct." *Young*, 209 U.S. at 160. Thus, "the Eleventh Amendment does not

---

[1] Sheriff Cofield is a state actor, even though he works for Randolph County. *Turquitt v. Jefferson Cty.*, 137 F.3d 1285, 1289 (11th Cir. 1998) ("Alabama sheriffs act as state officers when supervising inmates and otherwise operating the county jails.").

2

prevent federal courts from granting prospective injunctive relief [against a state actor] to prevent a continuing violation of federal law." *Green*, 474 U.S. at 68.

This is exactly what Plaintiffs seek against Defendant (Doc. # 1, at 19–21), and Defendant does not enjoy immunity merely because he was following orders. Indeed, the holding of *Ex parte Young* assumes that the state actor has done nothing more than enforce the law as promulgated by the State. *See Pennhurst*, 465 U.S. at 102 ("[In *Young*], a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not prohibit issuance of this injunction.").

Defendant seems to think it matters that Plaintiffs fail to allege "any *independent* action . . . [taken by him in] setting the terms and conditions by which Plaintiff (or any other person) may be released on bond." (Doc. # 30, at 3 (emphasis added).) It does not. The cases Defendant offers to support his argument to the contrary are inapposite because they deal with the bounds of municipal liability under 42 U.S.C. § 1983. *See, e.g., Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329–30 (11th Cir. 2003) (applying the test introduced in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978), which is used to determine "whether a municipality is liable in damages for injuries that are the direct result of its official policies"). This claim is for prospective injunctive relief against Defendant in his official capacity

and thus *Ex Parte Young* controls. Accordingly, Cofield's motion to dismiss is due to be denied.

## B. Defendants May, Puckett, and Tinney

Defendants May, Pucket, and Tinney ("Defendants") argue that traditional standing rules require Plaintiff's claims be dismissed as moot. After all, Plaintiff has already been released from jail, and the claim she brings centers on her wrongful detention. *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (noting that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them"). Defendants point out that Plaintiff is no longer a member of the class of pretrial detainees kept in jail because of Randolph County's bail schedule and emphasize that "a plaintiff cannot represent a class of which he is not a member" (Doc. # 44, at 3). *See Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot.").

The question is whether an exception applies to the traditional standing rules. In *Sosna v. Iowa*, 419 U.S. 393 (1975), the Supreme Court held that a class action is not "always moot just because the named plaintiff's claim is moot." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 706 (11th Cir. 2014). It may be, for example,

4

that a claim brought via class action is "capable of repetition, yet evading review." *Sosna*, 419 U.S. at 399, 402. Even prior to certification, the action may be allowed to proceed if the named plaintiff's case becomes moot "before the district court can reasonably be expected to rule on a certification motion." *Id.* at 402 n.11.

Defendants recognize this exception. In fact, they even acknowledge that the exception has been used in previous cases involving "pretrial detention matters." (Doc. # 44, at 5.) For example, in *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Court reviewed a challenge to a Florida pretrial detention procedure even though the named plaintiffs were no longer detained. Explaining its holding, the court observed the unlikelihood that "any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." *Gerstein*, 420 U.S. at 110 n.11. The same difficulty, it would seem, arises in a case like this one.

But Defendants balk at the comparison. "[I]t would be improper to use this princip[le] in this matter," they say, because "there has never [been] an instance where a named plaintiff's claims became mooted within 24 hours of issuance of the case and even prior to the issuance of a TRO." (Doc. # 44, at 5.) The "short timeframe," by Defendants' estimation, calls into question whether Plaintiff "should be considered a member of the class," whether she "would diligently pursue the class claims, and whether [she] has stated a true case in controversy." (Doc. # 44, at 5.)

5

This distinction is immaterial. Defendants do not point to a single case holding that the length of a plaintiff's live controversy, prior to its becoming moot, should bear on whether a mootness exception will later apply. And if the length of the live controversy did bear on that question, it seems a shorter controversy would work in Plaintiff's favor, not the other way around. The more quickly a controversy is mooted, the more likely it is to evade review. Nevertheless, after highlighting the brevity of the controversy, Defendants go on to assert that "the issues likely will not evade review." The court can think of no reason why that would be true, and Defendants do not explain. All in all, the distinctions Defendants attempt to draw between this case and the ordinary pretrial detention case are irrelevant, and the arguments they make in support of those distinctions are vacuous. Courts routinely apply the *Sosna* exception in pretrial detention cases because pretrial detentions are the very sort of transitory subject matter for which the exception was created. *See Dunn v. Dunn*, 148 F. Supp. 3d 1329, 1340 (M.D. Ala. 2015) ("Claims that derive from potentially imminent release from custody are 'a classic example of a transitory claim.'"). Defendants have provided no convincing reason why this case is any different from all the other cases that involve challenges to various pretrial detention schemes. Because the controversy at the center of this case is transitory in nature, the *Sosna* exception applies, and the court will not dismiss it for mootness.

## III. CONCLUSION

Accordingly, it is ORDERED that Defendant Cofield's Motion to Dismiss (Doc. # 30) is DENIED, and that Defendant Cofield shall file an answer to the complaint on or before **July 28, 2017**. It is further ORDERED that the other Defendants' Motion to Dismiss (Doc. # 46) is also DENIED.

DONE this 14th day of July, 2017.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
