IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KANDACE KAY EDWARDS,            )
                                )
         Plaintiff.             )
                                )
    v.                          )        CASE NO. 3:17-CV-321-WKW
                                )             [WO]
DAVID COFIELD, *et al.*,        )
                                )
         Defendants.            )

## MEMORANDUM OPINION AND ORDER

This case is just one of many constitutional challenges to a bond system that

may require indigent arrestees to post secured money bond in an amount set in a

bond schedule to avoid pretrial detention.  *See, e.g.*, *ODonnell v. Harris County*

(*ODonnell I*), 251 F. Supp. 3d 1052 (S.D. Tex. 2017), *affirmed as modified*, 882 F.3d

528 (5th Cir. 2018); *Walker v. City of Calhoun*, No. 4:15-cv-0170-HLM, 2017 WL

2794064 (N.D. Ga. June 16, 2017), *appeal docketed*, No. 17-13139 (11th Cir. July

13, 2017); *Jones v. City of Clanton*, No. 2:15cv34-MHT, 2015 WL 5387219 (M.D.

Ala. Sept. 14, 2015).  The Eleventh Circuit does not appear to have addressed such

a challenge in recent years.  That may soon change, as a challenge to a Georgia city's

bond system, *Walker v. City of Calhoun*, No. 17-13139 (11th Cir. docketed July 13,

2017), is currently pending before the Eleventh Circuit.  The court will not stay this

action pending the Eleventh Circuit's resolution of *Walker*, as contemplated in the

December 5th, 2017 show cause order (Doc. # 82), although the court will continue to monitor *Walker*.

At issue here is the bond system in effect in Randolph County, Alabama. Plaintiff Kandace Kay Edwards, on her own behalf and on behalf of a putative class of similarly situated individuals (*see* Doc. # 5), brought this 42 U.S.C. § 1983 action against the district court judge (Judge Clay Tinney), the magistrate (Jill Puckett), the circuit court clerk (Christopher May), and the sheriff (David Cofield) responsible for promulgating and carrying out that bond system. (Doc. # 1.)

As a result of some legal maneuvering after this action was filed, Defendants revised Randolph County's bond procedures. (Doc. # 67-1.) The gist of the revisions is that every person arrested in Randolph County who cannot afford to pay the secured bond amount in the bond schedule established by the Alabama Supreme Court is entitled to a bond hearing within seventy-two hours of arrest. Defendants argue that those revisions moot this case and thus deprive the court of subject-matter jurisdiction. But Plaintiff contends that the new system is still constitutionally infirm — both because the procedural protections at that hearing are insufficient and because seventy-two hours is still too long to detain arrestees unable to post secured money bond before a bond hearing (Doc. # 75).

Before the court is Plaintiff's Motion for Preliminary Injunction (Doc. # 3) and Defendants' motion to dismiss for lack of subject-matter jurisdiction (Doc.

# 67).  Because the mid-litigation revision of Randolph County's bond procedures has not mooted this case, Defendants' motion to dismiss for lack of subject-matter jurisdiction (Doc. # 67) is due to be denied.  But because the new procedures arguably provide the same result as the injunction Plaintiff seeks, Plaintiff's Motion for Preliminary Injunction (Doc. # 3) is also due to be denied.

## I.  JURISDICTION

This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, although the question whether this action is moot will be addressed below. The parties do not contest personal jurisdiction or venue.

## II.  BACKGROUND

Plaintiff, who is indigent, brought this action after she was subjected to pretrial detention without a hearing due to her inability to post a secured money bond.  This court granted her motion for a temporary restraining order (Doc. # 9), and Plaintiff was released.  Plaintiff's release did not moot this case (Doc. # 49) because she brought it on behalf of a putative class "consisting of all arrestees who are or who will be jailed in Randolph County who are unable to pay the secured money bail amount required for their release" (Doc. # 5, at 1).

Apparently after the court denied Defendants' motions to dismiss (Doc. # 49), Judge Tinney, Mr. May, and Ms. Puckett began "working to develop bail procedures that, if adopted for Randolph County, would obviate the need for a preliminary

injunction." (Doc. # 53, at 1.) That work involved negotiations with Plaintiff's counsel. (Doc. # 59, at 2.) Those negotiations eventually broke down (*see* Doc. # 65, at 1–2), but they were not entirely without fruit.

The same day Judge Tinney, Mr. May, and Ms. Puckett filed their response to Plaintiff's motion for a preliminary injunction (Doc. # 67), Judge Tinney issued a new standing bond order (Doc. # 67-1, at 10–16). Under the new standing bond order, arrestees who are unable to post bond in the amount set according to a bond schedule (Doc. # 67-1, at 18–21) "shall be entitled to a judicial determination of the conditions of their release promptly after arrest, but in any event no later than 72 hours after arrest." (Doc. # 67-1, at 12.) Before that hearing, arrestees "shall complete an affidavit of substantial hardship" (Doc. # 67-1, at 12), the same form used to obtain appointed counsel (Doc. # 67-1, at 23–24).

At the hearing, the court "may take into account" the factors listed in Rule 7.2(a) of the Alabama Rules of Criminal Procedure. (Doc. # 67-1, at 12–14.) The court is required to "consider a defendant's ability to post a bond in determining the defendant's conditions of release" and "the defendant's affidavit of substantial hardship." (Doc. # 67-1, at 14.) The court may also "elicit testimony about the defendant's financial condition." (Doc. # 67-1, at 14.)

> After considering the defendant's ability to post a bond, as well as the other factors set out in Rule 7.2(a), the Court may release a defendant on his or her own recognize [sic], require the defendant to post an unsecured appearance bond, or require the posting of a secured

appearance bond if that is the least onerous condition that will reasonably assure the defendant's appearance or that will eliminate or minimize the risk of harm to others or to the public at large. The Court will not require a defendant to post a secure appearance bond that the defendant cannot afford to post, or a secure appearance bond in an amount less than that contained in the bond schedule that the defendant can afford to post, if there is a less onerous condition that would assure the defendant's appearance or minimize risk to the public. However, if the Court determines that there is no less onerous condition for securing the defendant's appearance or protecting the public, the Court may require a secure appearance bond in an amount less than, equal to, or greater than that contained in the bond schedule. The Court will make written finding [sic] as to why the posting of a bond is reasonably necessary to assure the defendant's presence at trial in such a case.

(Doc. # 67-1, at 14 (citations omitted).) If the hearing does not take place within seventy-two hours of arrest, the arrestee "will be released on an unsecured appearance bond . . . at the expiration of the 72-hour period." (Doc. # 67-1, at 14–15.) Those procedures apply both to individuals arrested pursuant to a warrant (Doc. # 67-1, at 16–17) and to those arrested without a warrant (Doc. # 67-1, at 12–16).

Defendants argue that the new standing bond order moots this case (Doc. # 67), but Plaintiff argues that it does not provide sufficient procedural safeguards. Plaintiff thus continues to seek a preliminary injunction.

## III. DISCUSSION

Plaintiff's requested preliminary injunction includes four components. The injunction would (1) require Defendants to hold "an individualized hearing with adequate procedural safeguards" for arrestees unable to pay secured money bail. (Doc. # 3, at 1.) Such a hearing would include: (2) "an inquiry into and findings

5

concerning [the arrestee's] ability to pay" (Doc. # 3, at 1); (3) "an inquiry into and findings concerning . . . the suitability of alternative non-financial conditions of release" (Doc. # 3, at 1); and (4) "a finding on the record that any conditions of release are the least restrictive conditions necessary to achieve public safety and court appearance." (Doc. # 3, at 1–2.)

The new standing bond order appears to cover each of the four components of Plaintiff's proposed injunction to at least some degree. Under the new standing bond order, (1) every arrestee unable to pay secured money bail is entitled to an individualized bond hearing within seventy-two hours of arrest. (Doc. # 67-1, at 12, 15–16.) At that hearing, the court will consider (2) the arrestee's financial condition and ability to post a bond, as well as (3) the possibility of alternative conditions of release (including personal recognizance bond and an unsecured appearance bond) and each of the factors listed in Rule 7.2(a) of the Alabama Rules of Criminal Procedure. (Doc. # 67-1, at 12–15, 15–16.) And in the event the court imposes a secured bond that the arrestee cannot pay, (4) the court will make written findings explaining why a secured bond is the least onerous condition required to achieve public safety and assure the arrestee will appear for later court proceedings. (Doc. # 67-1, at 14, 15–16.)

Because the new standing bond order arguably gives Plaintiff the relief she seeks, Defendants argue that this case is moot. (Doc. # 67, at 30–34.)

Unsurprisingly, Plaintiff disagrees. She argues both that the new standing bond order's procedures are still constitutionally infirm (Doc. # 75, at 8–20) and that the new standing bond order does not moot this case even if the new procedures pass constitutional muster (Doc. # 75, at 28–31).

Because mootness is a jurisdictional issue, the court will address Defendants' motion to dismiss on that basis before addressing Plaintiff's motion for a preliminary injunction. Both motions are due to be denied.

## A.   <u>The new standing bond order does not moot this case.</u>

If Plaintiff is correct that Randolph County's bond procedures under the new standing bond order run afoul of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, then the new standing bond order clearly does not moot the case. While there is not enough to find a likelihood that Plaintiff will succeed on those arguments, *infra* at pp. 13–26, neither is there enough to dismiss them out of hand. Most importantly, Plaintiff strongly disputes that seventy-two hours is the appropriate window for resolution of financial and criminological issues in the bond determination. She instead argues for a window of no longer than a few hours. Defendants have settled on seventy-two hours, but their reasoning has not been tested factually or legally. Plaintiff also argues for additional procedural safeguards, including court-appointed counsel; an opportunity to testify, present evidence, and cross examine witnesses; notice of the purpose of the bond hearing; and a clear-and-

convincing evidentiary standard. In short, there is more to be done on remedial issues, so this case is not moot.

But the new standing bond order does not moot this case even if the new procedures are constitutionally sufficient. Ordinarily, "voluntary cessation of allegedly illegal conduct . . . does not make [a] case moot." *Flanigan's Enters., Inc., of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1255 (11th Cir. 2017) (en banc) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)), *petition for cert. docketed sub nom. Davenport v. City of Sandy Springs*, No. 17-869 (Dec. 15, 2017). But a voluntary cessation can render a case moot if "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "The key inquiry in this mootness analysis . . . is whether the evidence leads . . . to a reasonable expectation that [Defendants] will reverse course" and reinstitute their challenged practices "should this Court grant [their] motion to dismiss." *Id.* at 1256. Plaintiff bears the burden of proof here, *see id.* (citing *Coral Springs St. Sys, Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004)), and she "must present more than '[m]ere speculation that [Defendants] may return to [their] previous ways.'" *Id.* (first alteration in original) (quoting *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005)).

In its en banc decision in *Flanigan's Enterprises, Inc., of Georgia v. City of Sandy Springs*, 868 F.3d 1248, the Eleventh Circuit provided "three broad factors to which courts should look for guidance in conducting" the mootness inquiry in this context. *Id.* at 1257. The first two factors weigh against a mootness finding, and the third factor does little to change the balance.

### 1. *The First* Flanigan's Enterprises *Factor*

The first factor is "whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate [a federal court's] jurisdiction." *Id.* (citing *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011)). The Eleventh Circuit has also phrased this inquiry as asking whether a mid-litigation change was "an attempt to avoid the issuance of an injunction." *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1312. Under this factor, the court "will examine the timing" of the new standing bond order, "the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it." *Flanigan's Enters.*, 868 F.3d at 1257.

The new standing bond order was issued on the same day Defendants responded to Plaintiff's motion for a preliminary injunction and moved to dismiss on the basis of mootness. The method used to enact those procedures was the unilateral issuance of the new standing bond order by Judge Tinney, a relatively easy step. And there do not appear to be any explanations independent of this litigation

that may have motivated the new standing bond order. It is also apparent from Defendants' filings preceding their response that those procedures were adopted to — in Defendants' own words — "obviate the need for a preliminary injunction." (Doc. # 53, at 1; *accord* Doc. # 61, at 1; Doc. # 63, at 1; *see also* Doc. # 65.)

Given all the circumstances, this factor weighs against a mootness finding. Defendants' arguments to the contrary (Doc. # 67, at 31–32) are simply unpersuasive.

### 2.     *The Second* **Flanigan's Enterprises** *Factor*

The second factor is "whether the government's decision to terminate the challenged conduct was 'unambiguous.'" *Flanigan's Enters.*, 868 F.3d at 1257 (citing *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1310). Under this factor, the court must "consider whether the actions that have been taken to allegedly moot the case reflect a rejection of the challenged conduct that is both permanent and complete." *Id.*

Plaintiff suggests that Defendants have not unambiguously abandoned their unconstitutional behavior because they "affirmatively disavow any wrongdoing and claim that their old and new procedures are lawful." (Doc. # 75, at 31.) According to Plaintiff, that "raise[s] serious concern that they will resume the unconstitutional practices if this litigation is resolved in their favor." (Doc. # 75, at 31.)

The *Flanigan's Enterprises* court rejected a similar argument, noting that it "provide[d] only weak evidence, if any," that the defendant's rejection of its challenged ordinance in that case was ambiguous and that the defendant would reenact the ordinance. 868 F.3d at 1262. But the defendant in *Flanigan's Enterprises* had "unanimously enacted a full and public repeal of the challenged provision; its counsel ha[d] — on two separate occasions — warranted its commitment to the repeal; and it ha[d] unanimously and publicly adopted a resolution affirming those representations." *Id.* "Th[ose] actions," the court held, "suggest precisely the type of unambiguous termination from which we are unable to draw a reasonable expectation that the City will reenact the challenged legislation." *Id.*

By contrast, the only actions Defendants have taken that suggest "unambiguous termination" of the conduct Plaintiff challenges are Judge Tinney's unilateral issuance of the new standing bond order during this litigation and his assertion in a sworn affidavit that Defendants have abandoned their prior practices. Against that backdrop, Defendants' refusal to admit any wrongdoing or concede that their prior practices were unconstitutional raises at least some concern that Defendants or their successors will revert to those prior practices after the conclusion of this litigation.

Moreover, there is little reason to think the new standing bond order is permanent. Defendants' only argument to that effect is that Judge Tinney said so. (Doc. # 67, at 33.) But as Plaintiff observes:

> [T]he new procedures of a single judicial official have no guarantee of permanence. [The new standing bond order] can be changed or withdrawn at the judge's whim. Just as it was entered the day that the preliminary injunction briefing was due, it could be revoked the day the case was dismissed. The inherent impermanence of the new procedures distinguishes this case from those where a legislative body formally enacts or repeals a law.

(Doc. # 75, at 30.) This factor thus also weighs against a mootness finding.

### 3. *The Third* **Flanigan's Enterprises** *Factor*

The third factor is "whether the government has consistently maintained its commitment to the new policy or legislative scheme." *Flanigan's Enters.*, 868 F.3d at 1257 (citing *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1310).

Defendants concede that "there is no track record for the Court to review" their commitment to the new standing bond order (Doc. # 67, at 33), but they ask the court to "find comfort in the fact that the standing order was published to the public, and in Judge Tinney's sworn statement that the repealed bail schedule and former practices will not be enforced in the future" (Doc. # 67, at 34). Defendants here reference a line in *Flanigan's Enterprises*:

> [A]lthough we are unable to adequately judge its commitment to the new scheme given the late stage at which it has been adopted, we are comforted by the City's persuasive and public commitment not to

reenact the repealed provision, as well as its demonstrated lack of commitment to enforcing the old scheme.

*Flanigan's Enters.*, 868 F.3d at 1262. Defendants' remedial steps — which consist entirely of Judge Tinney's unilateral actions and statements — pale in comparison to the steps taken by the defendant in *Flanigan's Enterprises*. *See id.* at 1260–62. And while the lack of a track record does not weigh against a finding of mootness in this case, it also does not weigh in favor of such a finding.

\* \* \*

In sum, the balance of the three *Flanigan's Enterprises* factors weighs against a finding of mootness, and the parties have not identified anything beyond those factors that should be considered. Plaintiff has thus established a sufficiently reasonable expectation — for the sake of the mootness question — that Defendants will revert to their earlier challenged conduct if their motion to dismiss is granted. Therefore, Defendants' motion to dismiss (Doc. # 67) is due to be denied.

**B.** **Plaintiff's motion for a preliminary injunction is due to be denied because she has not shown that the additional procedural safeguards she demands are constitutionally required.**

Although the new standing bond order does not warrant granting Defendants' motion to dismiss, it does warrant denying Plaintiff's motion for a preliminary injunction.

As the party seeking a preliminary injunction, Plaintiff bears the burden of demonstrating that (1) she has a substantial likelihood of success on the merits; (2)

irreparable injury will be suffered until the injunction issues; (3) the threatened harm to her or the putative class (or both) outweighs any damage the injunction might cause Defendants; and (4) the injunction would not be adverse to the public interest. *E.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). Because a preliminary injunction is an "extraordinary and drastic remedy," it should not be granted unless "the movant clearly establishes the burden of persuasion as to the four prerequisites." *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)). The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). Because any "facts in dispute are not material to the preliminary injunction sought," the court "need not hold an evidentiary hearing." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998).

Plaintiff seeks a preliminary injunction based only on the first two claims in her complaint. (Doc. # 4, at 2.) The violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment she alleges in those claims (Doc. # 1, at 17–19) would presumably be remedied by the procedures she seeks in her motion for a preliminary injunction. As mentioned above, those procedures arguably match the procedures established by the new standing bond order.

But Plaintiff argues that the Fourteenth Amendment requires additional procedures — or, to use the language from her motion, that the new standing bond order does not provide "adequate procedural safeguards" (Doc. # 3, at 1). Specifically, she argues that arrestees unable to pay a secured money bond are entitled to appointed counsel (Doc. # 75, at 16–17); "notice about the purpose of the" bond hearing (Doc. # 75, at 18); and "an opportunity to be heard[,] . . . to present evidence" (Doc. # 75, at 19 (quoting *ODonnell I*, 251 F. Supp. 3d 1052, 1145 (S.D. Tex. 2017)), and to cross examine witnesses (Doc. # 4, at 26). She further argues that the court must use a clear-and-convincing evidentiary standard when determining whether pretrial detention is necessary. (Doc. # 75, at 15–16.) Plaintiff also argues that seventy-two hours is too long to make arrestees wait for a bond hearing, although she has not clearly suggested an alternative time frame. (Doc. # 75, at 11–13, 19–20.)

In demanding these additional procedural safeguards, Plaintiff primarily relies upon *United States v. Salerno*, 481 U.S. 739 (1987), but that reliance is misplaced. Plaintiff also relies on *ODonnell I*, 251 F. Supp. 3d 1052, in which the U.S. District Court for the Southern District of Texas issued a preliminary injunction modifying a county's bond system, as well as the opinion the Fifth Circuit issued last month modifying that injunction in *ODonnell v. Harris County* (*ODonnell II*), 882 F.3d 528

(5th Cir. 2018).  Although those courts reached the result Plaintiff now seeks, their reasoning is not persuasive enough to compel that result here.

The court will discuss *Salerno* and the *ODonnell* decisions generally before addressing each of the additional procedural safeguards Plaintiff demands.

### 1.    Salerno

In *Salerno*, the U.S. Supreme Court rejected facial constitutional challenges to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 to 3150.  That act provides most of the procedural safeguards Plaintiff demands:

> Section 3142(f) provides the arrestee with a number of procedural safeguards.  He may request the presence of counsel at the detention hearing, he may testify and present witnesses in his behalf, as well as proffer evidence, and he may cross-examine other witnesses appearing at the hearing.  If the judicial officer finds that no conditions of pretrial release can reasonably assure the safety of other persons and the community, he must state his findings of fact in writing, and support his conclusion with "clear and convincing evidence."

*Salerno*, 481 U.S. at 742 (quoting 18 U.S.C. § 3142(f)) (citing 18 U.S.C. §§ 3142(f), (i)).  Plaintiff suggests that the *Salerno* Court held that those procedural protections are required for any pretrial detention hearing.  (Doc. # 4, at 23; Doc. # 75, at 29.)

But the Court did no such thing.  For one, the Court in *Salerno* addressed only "the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel."  481 U.S. at 755.  More importantly, the Court did not hold that the procedural safeguards provided by the

Bail Reform Act of 1984 are constitutionally required; rather, it held that they were constitutionally sufficient. *Id.* at 752. Indeed, the Court easily rejected the constitutional challenge to those procedural safeguards in a three-paragraph discussion that indicates that those procedures go beyond what the Constitution actually requires. *See id.* at 751–52 ("[W]e may dispose briefly of respondents' facial challenge to the procedures of the Bail Reform Act." *Id.* at 751.).

Contrary to Plaintiff's representations, the Court did not hold that those procedures "must attend" a pretrial detention order to satisfy due process. (Doc. # 4, at 23 (quoting *Salerno*, 481 U.S. at 755); *accord* Doc. # 75, at 29 (quoting *Salerno*, 481 U.S. at 755).) Because Plaintiff selectively quotes the words "must attend" without providing the context in which the *Salerno* Court used them, here is some of that context:

> In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. We hold that the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception. The Act authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel. *The numerous procedural safeguards detailed above must attend this adversary hearing.* We are unwilling to say that this congressional determination, based as it is upon that primary concern of every government — a concern for the safety and indeed the lives of its citizens — on its face violates either the Due Process Clause of the

Fifth Amendment or the Excessive Bail Clause of the Eighth Amendment.

*Salerno*, 481 U.S. at 755 (emphasis added). Based on the above-quoted paragraph and the rest of the *Salerno* opinion, the requirement referenced by the words "must attend" is better understood to be a requirement imposed by the Bail Reform Act of 1984, not one imposed by the Constitution. Nowhere in the *Salerno* opinion did the Court say that those procedures were constitutionally required. In fact, the Court described them as "extensive" and "more exacting than those we found sufficient in the juvenile context." *Id.* at 752. It further noted that those procedural safeguards "*far exceed* what we found necessary to effect limited postarrest detention." *Id.* (emphasis added). In short, the *Salerno* Court held that those procedural safeguards were constitutionally sufficient, *id.* ("We think these extensive safeguards suffice to repel a facial [due process] challenge."), but it did not hold that they were constitutionally required.

Plaintiff's misreading of *Salerno* serves as the primary basis for her arguments in support of her demand for additional procedural safeguards, and those arguments are fundamentally flawed to that extent. But Plaintiff did not rely exclusively on *Salerno*.

### 2.   **ODonnell I** *and* **ODonnell II**

Plaintiff also cited the Southern District of Texas's opinion in *ODonnell I* and the Fifth Circuit's opinion in *ODonnell II*, which affirmed *ODonnell I* in part. Of

course, this court is not bound by either *ODonnell I* or *ODonnell II*, so those opinions are relevant here only to the extent that they are persuasive.

The district court in *ODonnell I* found that, "in order to detain misdemeanor defendants unable to pay a secured financial condition of pretrial release," 251 F. Supp. 3d at 1145, the Fourteenth Amendment requires:

> (1) notice that the financial and other resource information . . . collect[ed] [from a misdemeanor arrestee] is for the purpose of determining a misdemeanor arrestee's eligibility for release or detention; (2) a hearing at which the arrestee has an opportunity to be heard and to present evidence; (3) an impartial decisionmaker; (4) a written statement by the factfinder as to the evidence relied on to find that a secured financial condition is the only reasonable way to assure the arrestee's appearance at hearings and law-abiding behavior before trial; and (5) timely proceedings within 24 hours of arrest.

*Id.* at 1153. The Fifth Circuit affirmed those findings after making two modifications. First, it held that written statements were not necessary (at least for the defendants in that litigation) because oral statements on the record would suffice. *ODonnell II*, 882 F.3d at 542. Second, it held that due process required a hearing within forty-eight hours as opposed to twenty-four hours. *Id.* at 542–43.

Turning back to the instant case, Plaintiff appears to concede that the new standing bond order clearly provides the third and fourth *ODonnell* safeguards, as it provides an impartial decision-maker (Doc. # 67-1, at 12) and written findings (Doc. # 67-1, at 14). Plaintiff asserts that each of the remaining *ODonnell* safeguards — notice, the opportunity to be heard and present evidence at the hearing, and a hearing

within forty-eight hours — are required by the Fourteenth Amendment. The other procedural safeguards Plaintiff demands — appointed counsel for the bond hearing and a clear-and-convincing standard of review — are noticeably absent from the *ODonnell* opinions.

### 3. *The Additional Procedural Safeguards Plaintiff Seeks*

Plaintiff bears the burden of establishing a substantial likelihood of success on the merits of her claims that the Due Process and Equal Protection Clauses of the Fourteenth Amendment require each of the additional procedural safeguards Plaintiff demands. Plaintiff's arguments concerning each of those procedural safeguards are addressed in turn.

#### a. Appointed Counsel

The first authority Plaintiff cites in support of her assertion that indigent arrestees are entitled to appointed counsel for their bond hearing is *Salerno*. (Doc. # 75, at 16.) But as discussed above, *Salerno* offers little if any support for that proposition.

Beyond that, Plaintiff essentially argues that counsel would be beneficial at a bond hearing (Doc. # 75, at 16–17 (citing Wayne R. LaFave, et al., 4 *Criminal Procedure* § 12.1(c) (4th Ed. 2016); Douglas L. Colbert et al., *Do Attorneys Really Matter?*, 23 Cardozo L. Rev. 1719, 1720, 1773 (2002))) and that the U.S. Supreme Court has held that indigent defendants have a right to appointed counsel in other

contexts (Doc. # 75, at 17 (citing *Scott v. Illinois*, 440 U.S. 367, 373–74 (1979); *Coleman v. Alabama*, 399 U.S. 1 (1970); *Douglas v. California*, 372 U.S. 353, 357–58 (1963); *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963))). Even assuming without deciding that counsel would be beneficial at a bond hearing, the cases Plaintiff cites were each based on the Sixth Amendment right to counsel as applied to the states by the Fourteenth Amendment's Due Process Clause, not the Due Process Clause more generally or the Equal Protection Clause.

Perhaps Plaintiff would have a colorable Sixth Amendment claim, but she has not brought one. Instead, she relied only on the Due Process and Equal Protection Clauses of the Fourteenth Amendment without acknowledging the Sixth Amendment. (Doc. # 1, at 17–19.) Plaintiff has not shown that those clauses would be an appropriate vehicle for her assertion of a right to appointed counsel. *Cf. Turner v. Rogers*, 564 U.S. 431, 452–53 (2011) (Thomas, J., dissenting) ("[I]f the Due Process Clause created a right to appointed counsel in all proceedings with the potential for detention, then the Sixth Amendment right to appointed counsel would be unnecessary. . . . The fact that one constitutional provision expressly provides a right to appointed counsel in specific circumstances indicates that the Constitution does not also *sub silentio* provide that right far more broadly in another, more general, provision." (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality

opinion); *id.* at 281 (Kennedy, J., concurring in the judgment))). She has thus failed to show a substantial likelihood of success on the merits on this point.

### b. Notice About the Purpose of the Bond Hearing

To support her assertion that indigent arrestees are entitled to notice about the purpose of a bond hearing — an assertion that does not appear in either her motion for preliminary injunction (Doc. # 3) or her supporting memorandum (Doc. # 4) — Plaintiff relies exclusively on *ODonnell I* and *ODonnell II*. (Doc. # 75, at 18; Doc. # 89, at 2, 5.) The district court in *ODonnell I* did not offer much discussion of the notice requirement it imposed. It seemed to import that requirement from the U.S. Supreme Court's opinion in *Turner v. Rogers*, 546 U.S. 431, which the district court described as "a helpful starting point for examining the plaintiffs' likelihood of succeeding on their due process claim." *ODonnell I*, 251 F. Supp. 3d at 1141. *Turner* also appeared to be an ending point for the *ODonnell I* court, as the district court declined to provide any explanation for the notice requirement it imposed other than that the U.S. Supreme Court imposed a similar requirement in *Turner*, *id.* at 1140–41, and that the Fifth Circuit imposed a notice requirement in a different context, *id.* at 1145 (citing *Meza v. Livingston*, 607 F.3d 392 (5th Cir. 2010). It also declined to explain why that Fifth Circuit case — or *Turner*, for that matter — was relevant in the pretrial-detention context.

The district court's reasoning for imposing a notice requirement apparently satisfied the Fifth Circuit, which affirmed the portion of the district court's injunction requiring such notice without providing any independent analysis. *ODonnell II*, 882 F.3d at 541–43, 546, 549.  In a similar vein, Plaintiff has not offered any argument in support of her demand for a notice requirement beyond citations to *ODonnell I* and *ODonnell II*.

Again, those opinions are relevant here only to the extent that they are persuasive.  Frankly, they are not persuasive on this issue.  Plaintiff has therefore failed to carry her burden with respect to the notice requirement she demands.

### c.    Opportunity to Be Heard, to Present Evidence, and to Cross Examine Witnesses

Even more so than her notice argument, Plaintiff's argument that arrestees are entitled to an opportunity to be heard, present evidence, and cross examine witnesses begins and ends with citations to *ODonnell I* and *ODonnell II*.  (Doc. # 75, at 18–19; Doc. # 89, at 2.)  Once again, neither *ODonnell I* nor *ODonnell II* offers a persuasive explanation for imposing such a requirement.  Plaintiff has therefore failed to carry her burden with respect to these procedural safeguards.

### d.    Clear-and-Convincing-Evidence Standard

Plaintiff's argument in support of requiring a clear-and-convincing-evidence standard fares no better.  She asserts that "*Salerno* and the due process principles upon which it relies require a clear and convincing evidentiary standard prior to

detention for any reason." (Doc. # 75, at 15.) That is not the case, as discussed above. She also selectively quotes phrases from *Salerno* out of context (Doc. # 75, at 15) and mischaracterizes Defendants' arguments in response to her motion for a preliminary injunction (Doc. # 75, at 14–15 (citing Doc. # 67, at 19–20)), two less-than-persuasive tactics.

Plaintiff has also cited *In re Humphrey*, 228 Cal. Rptr. 3d 513 (Cal. Ct. App. 2018), a recent California intermediate appellate court decision requiring a clear-and-convincing-evidence standard for bail hearings. (Doc. # 86.) But that court relied at least in part on California law, including a provision of the California Constitution that explicitly requires a clear-and-convincing-evidence standard for some bail determinations. *Humphrey*, 228 Cal. Rptr. at 535 (citing Cal. Const. art. I, § 12; *Van Atta v. Scott*, 613 P.2d 210 (Cal. 1980)). It also heavily relied on *Salerno*. And it is unclear to what extent its holdings were based on the Due Process and Equal Protection Clauses of the Fourteenth Amendment as opposed to the Due Process and Equal Protection Clauses of the California Constitution. *See id.* at 523 (noting that the petitioner brought claims "under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and article 1, section 7 of the California Constitution"). *Humphrey* thus is not sufficiently persuasive to establish a substantial likelihood of success on the merits of Plaintiff's assertion that a clear-and-convincing-evidence standard is required.

Plaintiff has therefore failed to carry her burden with respect to the applicable evidentiary standard.

### e.    A Maximum Delay of Less than Seventy-Two Hours

That leaves Plaintiff's argument that a maximum delay of seventy-two hours before a bond hearing is still too long.  It is unclear exactly what time frame Plaintiff seeks.  She says she "does not contest that due process can tolerate some period of detention" (Doc. # 75, at 12) and concedes that a "*de minimus* period" of detention — meaning no "longer than a few hours" — would be permissible (Doc. # 75, at 16 n.10).  But if that is truly the case, her argument proves too much.  Indeed, she describes "the constitutional prohibition" she asserts as "categorical" and argues that "[s]hortening the constitutional injury does not end it."  (Doc. # 75, at 11.)

In any event, Plaintiff has not shown a substantial likelihood of success on the merits of her claim that a maximum delay of seventy-two hours before a bond hearing is unconstitutional.  Indeed, the Bail Reform Act of 1984 — which, according to Plaintiff's arguments based on *Salerno*, provides only the bare minimum safeguards required by the Constitution — allows for at least a seventy-two-hour delay before a bail hearing.  18 U.S.C. § 3142(f).  And with respect to enforcing that requirement, the Bail Reform Act of 1984 provides less protection for arrestees than the new standing bond order:  The former does not require an arrestee to be released if a bail hearing is not held within the time limits it imposes, *United*

*States v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990), but the latter does (Doc. # 67-1, at 14–15). It is thus at least possible that the timing provisions of the new standing bond order provide greater protections than the Fourteenth Amendment actually requires.

\* \* \*

The new standing bond order arguably provides all of the relief Plaintiff seeks in her motion for a preliminary injunction. The devil may be in the details, but Plaintiff has not made the requisite showings to establish a substantial likelihood of success on the merits of her claims that the Fourteenth Amendment requires procedural safeguards beyond those provided by the new standing bond order. Her motion for a preliminary injunction is therefore due to be denied.

## IV. CONCLUSION

Accordingly, it is ORDERED as follows:

1.  Defendants' motion to dismiss for lack of subject-matter jurisdiction (Doc. # 67) is DENIED; and

2.  Plaintiff's motion for a preliminary injunction (Doc. # 3) is DENIED.

DONE this 21st day of March, 2018.

/s/ W. Keith Watkins<br>
CHIEF UNITED STATES DISTRICT JUDGE