IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| KANDACE KAY EDWARDS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CASE NO. 3:17-CV-321-WKW |
| | ) | [WO] |
| DAVID COFIELD, *et al.*, | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

In its March 21, 2018, Memorandum Opinion and Order (Doc. # 97), the court denied both Plaintiff's motion for a preliminary injunction (Doc. # 4) and Defendants' motion to dismiss for lack of subject-matter jurisdiction (Doc. # 67). Before the court is Plaintiff's Motion for Reconsideration (Doc. # 99) of the denial of her motion for a preliminary injunction. The Motion for Reconsideration is due to be denied.

## **I. STANDARD OF REVIEW**

A district court has "plenary power" over its interlocutory orders. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (citation omitted). When reviewing an interlocutory decision, "the district court is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b)." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217,

1223 n.2 (10th Cir. 2008). So a district court may reconsider an interlocutory ruling "for any reason it deems sufficient." *Canaday v. Household Retail Servs., Inc.*, 119 F. Supp. 2d 1258, 1260 (M.D. Ala. 2000).

Because the motion for reconsideration concerns the ruling on Plaintiff's motion for a preliminary injunction, the former is properly evaluated under the preliminary injunction standard. The Memorandum Opinion and Order outlined the preliminary injunction standard. (Doc. # 97, at 13–14.)

## II. DISCUSSION

**A.** **The court will not reconsider its denial of Plaintiff's motion for a preliminary injunction with respect to her first claim because rational-basis review is sufficient and because the new standing bond order survives rational-basis review.**

Plaintiff argues that the court erred when it did not apply "heightened scrutiny" to her Fourteenth Amendment claim in Count One. But under the Eleventh Circuit's recent opinion in *Walker v. City of Calhoun*, ___ F.3d ___, 2018 WL 4000252 (11th Cir. Aug. 22, 2018), the new standing bond order need only pass rational-basis review. The new standing bond order survives that level of scrutiny.

**1.** *Rational-basis review is the appropriate level of scrutiny.*

In Count One, Plaintiff challenges a wealth-based classification. According to Plaintiff, the new standing bond order divides arrestees into two classes. The first class — which, according to Plaintiff, is the class against which the new standing bond order discriminates — consists of arrestees detained until a bond hearing

2

because they are unable to post a secured money bond in the amount listed in the bond schedule. The second class consists of arrestees who are able to post a secured money bond in the amount listed in the bond schedule and can obtain their release upon posting.

Although wealth-based classifications are generally subject to rational-basis review, Plaintiff asserts that this wealth-based classification is subject to "heightened scrutiny" based on the U.S. Supreme Court's opinion in *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17 (1973). In *Rodriguez*, the Court observed that it had subjected wealth-based classifications to heightened scrutiny when "the class discriminated against" met two criteria: (1) "because of their impecunity they were completely unable to pay for some desired benefit"; and (2) "as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit." *Id.* at 20; *see id.* at 18–23.

Plaintiff's class of arrestees who cannot post a secured money bond meets the first *Rodriguez* criterion. By definition, those arrestees are "completely unable to pay" for any amount of pretrial release. *Id.* at 20. But as the Eleventh Circuit explained in Walker, indigent arrestees (such as Plaintiff) do not suffer an "absolute deprivation" of pretrial release. 2018 WL 4000252, at *10. "Rather, they must merely wait some appropriate amount of time to receive the same [pretrial release]

3

as the more affluent. . . . Such scheme does not trigger heightened scrutiny under the Supreme Court's equal protection jurisprudence." *Id.*

## 2. *The new standing bond order survives rational-basis review.*

Because Plaintiff's arguments were premised on the application of "heightened scrutiny," she has (understandably) failed to show that the new standing bond order's wealth-based classification fails under rational-basis review. She did cite one case that involved rational-basis review: *State v. Blake*, 642 So. 2d 959 (Ala. 1994) (per curiam). She summarized *Blake* as follows:

> In *State v. Blake*, the Alabama Supreme Court struck down a state statute that allowed for indigent arrestees to be held for 72 hours solely because they could not afford monetary payments to secure their release prior to their first appearance. The Court held that there was no rational basis for detaining an indigent defendant for 72 hours while releasing those defendants who could obtain release by cash bail, a bail bond, or property bond.

(Doc. # 4, at 11.) But there is a key difference between the statute at issue in *Blake* and the new standing bond order. The former required indigent defendants who could not "obtain release by cash bail, bail bond, or property bail" to "remain incarcerated for a *minimum* of three days, and perhaps longer, before being able to obtain judicial public bail." *Blake*, 642 So. 2d at 968 (emphasis added). Under the new standing bond order, by contrast, arrestees who are unable to obtain release by posting a secured money bond must be "released on an unsecured appearance bond" if they do not receive a bond hearing within seventy-two hours of arrest. (Doc. # 67-

4

1, at 14–15.)  The *Blake* court's analysis of a seventy-two-hour *minimum* has little (if any) bearing on the proper analysis of the new standing bond order's seventy-two-hour *maximum*.

Plaintiff's citations to *Blake* are as close as she gets to arguing that the new standing bond order fails under rational-basis review.  Defendants have also offered sufficient justifications for the new standing bond order for it to survive rational-basis review.  Therefore, Plaintiff has not demonstrated that she has a substantial likelihood of success on the merits of Count One.

B. **Plaintiff still has not shown a substantial likelihood of success on the merits of her due process claims.**

With respect to her due process claims in Count Two, Plaintiff's arguments in support of her Motion for Reconsideration are also unpersuasive.

Plaintiff is incorrect that strict scrutiny applies.  In arguing that it does, she once again misreads the U.S. Supreme Court's opinion in *United States v. Salerno*, 481 U.S. 739 (1987).  Read in isolation, Plaintiff's briefing would leave the reader with the erroneous understanding that *Salerno* is a part of the Court's fundamental rights jurisprudence.  She selectively quotes *Salerno* for the proposition that "it is a '"general rule" of substantive due process that the government may not detain a person prior to a judgement of guilt in a criminal trial' because 'the interest in liberty' is 'fundamental.'"  (Doc. # 105, at 7 (quoting *Salerno*, 481 U.S. at 749–50).)  The *Salerno* Court did concede that "general rule."  481 U.S. at 749.  But the Court also

5

noted that there are a "number of exceptions to the rule," and it emphasized "the well-established authority of the government, in special circumstances, to restrain individuals' liberty prior to or even without criminal trial and conviction." *Id.*

Plaintiff also cites *Salerno* for the proposition that "[i]nfringement of th[e] right to pretrial liberty is subject to strict scrutiny," describing *Salerno* as "noting" that the "Bail Reform Act is 'narrowly focuse[d]' to achieve the government's 'overwhelming' and 'compelling' interests." (Doc. # 105, at 8 (quoting *Salerno*, 481 U.S. at 750).) But the *Salerno* Court did not explicitly or implicitly hold that strict scrutiny applied. Instead, as the Eleventh Circuit explained in *Walker*, "the *Salerno* Court's analysis was much closer to a relatively lenient procedural due process analysis than it was any form of heightened scrutiny. Rather than asking if preventative detention of dangerous defendants served a compelling or important State interest and then demanding relatively narrow tailoring, the Court employed a general due process balancing test between the State's interest and the detainee's." 2018 WL 4000252, at *10; *see also id.* at *11 (stating that, "even if *Salerno* did embrace a form of heightened scrutiny, we do not believe it applies to this case because the City is not seeking to impose any form of preventative detention"). Therefore, Plaintiff's arguments that strict scrutiny applies are not persuasive.

Because strict scrutiny does not apply, Plaintiff (as the party seeking a preliminary injunction) has the burden of demonstrating a substantial likelihood of

success on the merits of her due process claims. As explained in the Memorandum Opinion and Order, Plaintiff has not met that burden. (Doc. # 97, at 13–26.)

According to Plaintiff, however, this court "did not engage in the legally required balancing analysis" detailed in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "to evaluate each of the requested procedures." (Doc. # 99-1, at 9.) The *Mathews* Court observed that

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Admittedly, the court did not explicitly apply the *Mathews* balancing test in its Memorandum Opinion and Order. But the court's reasoning can be rephrased in terms of the *Mathews* balancing test: Plaintiff did not show that the "probable value" of the "additional or substitute procedural safeguards" she requested would sufficiently decrease "the risk of an erroneous deprivation" of the interest in pretrial liberty posed by the new standing bond order's procedures in order to justify the additional "fiscal and administrative burdens" that the additional requirements would entail for Defendants. *Id.*; *see Walker*, 2018 WL 4000252, at *13–15 (conducting a procedural due process analysis). (*See* Doc. # 97, at 13–26.) Plaintiff's motion is thus due to be denied with respect to Count Two.

7

## III.  CONCLUSION

The arguments Plaintiff offers in support of her Motion for Reconsideration are unpersuasive.  It is therefore ORDERED that Plaintiff's Motion for Reconsideration (Doc. # 99) is DENIED.

On another note, it is further ORDERED that the motion to substitute party (Doc. # 109) is GRANTED.  The Clerk of the Court is DIRECTED to substitute Amy Newsome for Clay Tinney as Defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

DONE this 28th day of August, 2018.

                                            /s/ W. Keith Watkins
                             CHIEF UNITED STATES DISTRICT JUDGE