**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| KANDACE KAY EDWARDS, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID COFIELD, in his official capacity as Randolph County Sheriff,<br><br>CHRISTOPHER MAY, in his official capacity as Circuit Clerk,<br><br>JILL PUCKETT, in her official capacity as Magistrate of the Randolph County District Court, and<br><br>AMY NEWSOME, in her official capacity as the District Court Judge of the Randolph County District Court,<br><br>    Defendants. | Case No. 3:17-cv-321-WKW-TFM<br><br>Class Action |

## PLAINTIFF'S AMENDED COMPLAINT

### I.    PRELIMINARY STATEMENT

1.    Defendants Randolph County Sheriff David Cofield ("Cofield"), Circuit Court Clerk Christopher May ("May"), Magistrate Jill Puckett ("Puckett"), and District Court Judge Amy Newsome ("Newsome") are operating a two-tiered pretrial justice system.   Secured financial conditions of release are required for misdemeanor and felony offenses pursuant to a predetermined bail schedule that specifies a monetary amount based only on the charge.   A person arrested for a misdemeanor or felony offense who can afford the monetary amount is released from jail immediately upon payment.   Those arrestees who cannot afford the monetary amount may remain in jail for nearly four weeks before they are afforded a hearing to argue for

their release.  How quickly—or whether—a person is released from jail depends entirely on her access to money.

2.      Pursuant to this discriminatory scheme, individuals remain detained for varying lengths of time.  How long presumptively innocent arrestees remain in jail after arrest depends on whether they or their families are able to pay, to borrow sufficient resources, or to arrange for a third-party surety.  Others, like Ms. Edwards, who are too poor to pay and unable to find anyone to pay the secured money bond for them, remain in jail for the entire duration of their case.

3.      Ms. Edwards was arrested on May 17, 2017, and was incarcerated because she could not afford to pay the secured monetary amount required by the predetermined bail schedule.  If she could have paid the amount, she would have been released from jail immediately.  Defendants released Ms. Edwards on May 18, 2017, after she filed this lawsuit.

4.      On behalf of herself and all others similarly situated, Ms. Edwards seeks declaratory relief and injunctive relief.  Ms. Edwards also seeks a temporary restraining order on behalf of herself.  Ms. Edwards seeks an injunction against Sheriff Cofield from prospectively jailing arrestees unable to pay secured monetary bail without an individualized hearing with adequate procedural safeguards that includes an inquiry into and findings concerning their ability to pay, the suitability of alternative non-financial conditions of release, and a finding on the record that any conditions of release are the least restrictive conditions necessary to achieve public safety and court appearance.  She seeks declaratory relief against Defendants May, Puckett, and Newsome.

## II.      JURISDICTION AND VENUE

5.      This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, et seq., and the Fourteenth Amendment to the United States Constitution.  The Court has

jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

### III.    PARTIES

**A.    Plaintiffs**

7.     Plaintiff Kandace Kay Edwards is a resident of Roanoke, Alabama.

**B.    Defendant**

8.     Defendant David Cofield is the Randolph County Sheriff.  He is sued in his official capacity.

9.     Defendant Christopher May is the Circuit Court Clerk for Alabama's Fifth Judicial Circuit Court.  He is sued in his official capacity.

10.     Defendant Jill Puckett is the Magistrate for the Randolph County District Court. She is sued in her official capacity.

11.     Defendant Amy Newsome is the Randolph County District Court Judge.  She is sued in her official capacity.

### IV.    STATEMENT OF FACTS

**A.    Defendants' Money Bail Practices Detain People Based on Their Wealth Rather Than Their Suitability for Release.**

**i.    Defendants Unconstitutionally Detain People Unable to Pay Secured Money Bail Set Pursuant to the Predetermined Bail Schedule.**

12.     One out of every five people in Randolph County lives in poverty.[1]  One-third of the labor force is unemployed, and nearly half of the population over the age of sixteen did not

---

[1] U.S. Census Bureau, *Poverty Status in the Past 12 Months: 2011-2015 American Community Survey 5-Year Estimates*, *available at* https://goo.gl/uUZ3gb.

work at all in 2015, the last year for which data is available.[2]

13.   Although nearly half of the county residents do not have a job, the Sheriff requires any person arrested and charged with a misdemeanor or felony offense to pay a secured amount of money bail (i.e., cash, commercial surety, or property) to be released from jail following arrest.  The amount of money that an arrestee must pay is pre-determined by a bail schedule based on the charge.  *See* Doc. 6-5 (Randolph County Bail Schedule).

14.   Defendants do not consider a person's flight risk or danger to the community, whether a person can afford the predetermined amount of money, or whether any alternative non-financial conditions of release may mitigate any relevant risk before requiring the predetermined money bail amount.  Instead, immediate access to money alone determines whether a person remains in jail following arrest.  If a person can afford to pay the amount required, the individual is released from jail immediately.  If the person is unable to pay, she remains incarcerated.

15.   Prior to a first appearance in court, no official conducts an inquiry into the arrestee's ability to pay the amount required by the bail schedule, makes any findings concerning the arrestee's ability to pay, or considers forms of release other than secured money bail.  Although the bail schedule states that a bail amount may be increased or reduced "on a case by case basis," in practice Defendants do not deviate from the bail schedule.

16.   District Court Judge Clay Tinney[3] and Circuit Court Clerk Christopher May created the bail schedule that governs release from the Randolph County jail.  The bail schedule

---

[2] *Id.*

[3] District Court Judge Clay Tinney resigned as Randolph County District judge effective December 8, 2017.  *See* Doc. 84 at 1 n.1.  Defendant Judge Amy Newsome replaced Judge Tinney on the bench on December 15, 2017, and pursuant to Fed. R. Civ. P. 25(d) was automatically substituted as a defendant in this case.

is printed on Defendant May's letterhead and instructs anyone with questions to contact him. Defendant May and Defendant Newsome must approve any changes to the post-arrest procedures set forth in their bail schedule.

17.    Defendant Newsome is responsible for setting policies governing release conditions and conducts the initial appearance for any arrestees unable to pay the monetary amount required by the bail schedule.  Magistrate Jill Puckett enforces these policies and conducts initial appearances when Defendant Newsome is unavailable.

18.    Sheriff David Cofield is responsible for the operation of the Randolph County jail and the release and detention of arrestees.  *See* Ala. Code § 14-6-1.  As a matter of policy and practice, Defendant Cofield keeps arrestees in jail if they cannot pay the monetary amount required by the bail schedule and releases immediately those who can pay.  Defendant Cofield maintains this policy and practice even though he receives no notice that there has been an inquiry into a person's ability to pay the amount set, findings that the person can afford to meet the financial conditions of release, and consideration of alternative non-financial conditions of release.

### ii.    Defendant Cofield Detains Arrestees Who Cannot Pay the Predetermined Money Bail Amount While Releasing Those Who Can Pay.

19.    When a person is arrested in Randolph County, she is booked into the Randolph County Jail, which is operated by the Sheriff's Department.  After booking, arrestees are informed by Sheriff's Department employees that they are eligible for immediate release, but only if they pay a predetermined amount of money.  The Sheriff determines the required amount of money by referring to the bail schedule promulgated by Judge Tinney and Defendant May.  At no point does any Defendant or other person perform any inquiry into the arrestee's ability to pay the money bail amount required by the schedule.

20.     Arrestees who do not have other restrictions on their eligibility for release can post bail themselves, make a phone call to ask a friend or family to post bail on their behalf, or contact a bonding agent to assist in posting bail.  If an arrestee can afford to pay the predetermined bail, the Sheriff's Department accepts the money and releases her.

21.     A person with financial resources will be released almost immediately after posting bail, but the Sheriff's Department will continue to detain a person who cannot afford the preset, secured bail amount.  This policy and practice results in systematic wealth-based detention in Randolph County.

### iii. Defendants Puckett and Newsome Do Not Review the Predetermined Financial Conditions of Release for Up to Four Weeks.

22.     Any person who cannot afford the monetary amount required by the bail schedule is taken before Defendant Newsome or Puckett for an initial appearance.  Under Alabama law, a judge or magistrate is required to conduct the initial appearance within 48-hours following a warrantless arrest or 72-hours following a warrant arrest.  Ala. R. Crim. P. 4.3(a)(1)(iii), (b)(2)(i).

23.     The purposes of the initial appearance under state law are to (1) ascertain the defendant's true name and address, (2) inform the defendant of the charges against him, and (3) notify the defendant of the right to counsel.  Ala. R. Crim. P. 4.4.  A judicial officer is also required to determine a defendant's conditions of release.  *Id.*; Ala. R. Crim. P. 7.4 ("If a defendant has not been released from custody and is brought before a court for initial appearance, a determination of the conditions of release shall be made.").

24.     However, it is Defendants Newsome's and Puckett's general practice to refuse to determine an arrestee's conditions of release at the initial appearance.  Defendants instead usually defer this determination for up to four weeks, when a preliminary hearing is conducted in

a felony case for those arrestees who exercised their right to such a hearing. *See* Doc. 6-6 (Sample Order on Initial Appearance); *see also* Ala. R. Crim. P. 5.  In a misdemeanor case, Defendants generally defer any review of an arrestee's conditions of release for up to two weeks until Defendant Newsome conducts a status hearing and only if an arrestee first filed a motion for a bond reduction.  Because of these practices, the initial court appearance generally provides no opportunity for a person to raise ability to pay, to conduct a hearing on alternative conditions of release, or to raise any constitutional issues with ongoing post-arrest detention.  Defendants are unrepresented by counsel at the initial appearance.

25.    Defendants Newsome and Puckett generally do not allow arrestees to make arguments about their ability to pay or their suitability for release at the initial appearance. Pursuant to Defendants Newsome's and Puckett's policy and practice, arrestees are not permitted to challenge their financial conditions of release or to request non-monetary conditions of release.

26.    At the initial appearance, Defendants Newsome and Puckett do not make any findings that a person can afford the pre-set amount required or that secured money bail is the least restrictive condition of release available.  Defendants Newsome and Puckett also do not consider whether an arrestee may be safely released on affordable financial or non-financial release conditions, nor do they make any affirmative inquiry into or findings concerning arrestees' ability to pay the amount of secured money bail required.

27.    Defendants Newsome and Puckett generally will not consider an arrestee's suitability for release or ability to pay until a later preliminary hearing in a felony case or a bond reduction hearing in a misdemeanor case.  As a matter of policy and practice, preliminary hearings are held once every four weeks in felony cases and hearings on motions for a bond reduction in misdemeanor cases are held twice per month in Randolph County.  Thus, an

individual who cannot afford the predetermined secured money bail amount usually will be detained for up to four weeks without any opportunity for an individualized release hearing or to otherwise raise any issues concerning her ability to pay or her suitability for release under alternative conditions.

28.    By contrast, an arrestee who can pay the monetary amount required by the bail schedule is released immediately from jail.

29.    Defendants' reliance on predetermined secured money bail has resulted in unnecessary wealth-based detention that is devastating for the poorest people in Randolph County.  Many people in the Randolph County jail have not been convicted of a crime and are only in jail because they cannot afford to pay secured money bail.

30.    Because the grand jury sits—and trials are held—only twice per year in Randolph County, a person unable to afford monetary bail may spend longer in jail before trial than under the sentence they would receive if they pleaded guilty or were found guilty following trial.

**B.    Plaintiff Edwards Could Not Afford the Monetary Amount Required by the Bail Schedule.**

31.    At the time she filed her original Complaint, *see* Doc. 1, Ms. Edwards was a 29-year-old woman who lived in Roanoke, Alabama.  She is now 30 years old.

32.    Ms. Edwards was 7.5 months pregnant at the time of her arrest in Randolph County.  She is presently a mother of three children, all of whom are under the age of four.  Ms. Edwards served in the Army National Guard from 2006 to 2010 and was stationed in Gadsden, Alabama.

33.    On May 17, 2017, Ms. Edwards was arrested for forging a check in the amount of $75 and charged with possession of a forged instrument in the second degree, a class C felony.

34.     Ms. Edwards was taken to the Randolph County Jail and told that she would be released from jail only if she paid a $7,500 bond.  A corrections officer told her that she had a court date on June 6, 2017 and that she would remain incarcerated until that date unless she could afford to pay her bond.

35.     At the time of her arrest, Ms. Edwards was indigent and could not afford to buy her release from jail.  She had no assets and had recently lost her job at Huddle House because her pregnancy made it difficult for her to work.  Her only source of income was food stamps and WIC.  Ms. Edwards also suffers from serious mental illness and was relying on Medicaid to support her through her pregnancy.

36.     Ms. Edwards was evicted from her home in December 2016 after losing her job. Between that time and her arrest in May 2017, Ms. Edwards was homeless and had been staying between friends' homes.  Many of those homes did not have power or running water.

37.     The cell she was originally assigned to had six women, but there were only four beds.   The jail also did not have any shampoo or wash cloths because of severe jail overcrowding.

38.     She was concerned about her health because her pregnancy was high-risk.  While incarcerated, she slept on a mat on the floor of the jail.

39.     Defendants released Ms. Edwards from jail on May 18, 2017, after this lawsuit was filed.

**C.    Non-Financial Conditions of Release Alone or in Combination with Unsecured Money Bail Are As Effective As or More Effective than Secured Money Bail.**

40.     Detention on money bail increases the likelihood of conviction.  Controlling for other factors, a person who is detained pretrial is 13% more likely to be convicted and 21% more

likely to plead guilty than a person who is not detained.[4]

41.     Studies show that those detained pretrial face worse outcomes at trial and sentencing than those released pretrial, even when charged with the same offense.[5]  Controlling for other factors, those detained pretrial will be given longer jail sentences.[6]  Detained defendants are more likely to plead guilty just to shorten their jail time, even if they are innocent.[7]  They have a harder time preparing a defense, gathering evidence and witnesses, and meeting with their lawyers.  A person's ability to pay money bail thus has an irreparable impact on the outcome of a criminal case.

42.     Wealth-based pretrial detention also makes the community less safe.  First, wealth-based detention unnecessarily jails those who could be released safely into the community.  Several studies have shown that just two or three days in pretrial detention increases the likelihood of future crimes, as well as the future risk level of even low-risk defendants.[8]  In

---

[4] Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes* 18 (May 2, 2016) (finding that a person who is detained pretrial is 13% more likely to be convicted and 21% more likely to plead guilty than a person who is not detained), *available at* https://goo.gl/riaoKD; *see also* Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* 15, 19 (May 2, 2016), *available at* https://goo.gl/OW5OzL (finding a 12 percent increase in the likelihood of conviction using the same data).

[5] Christopher T. Lowenkamp *et al.*, *Investigating the Impact of Pretrial Detention on Sentencing Outcomes*, Laura and John Arnold Foundation 4 (November 2013), *available at* https://goo.gl/FLjVZP (those detained for the entire pretrial period are more likely to be sentenced to jail and prison—and receive longer sentences—than those who are released at some point before trial or case disposition).

[6] *Id.*

[7] Stevenson, *supra* note 1 at 18 ("Pretrial detention leads to an expected increase of 124 days in the maximum days of the incarceration sentence, a 42% increase over the mean."); *see also* Gupta, et. al, *supra* note 1, at 18–19 ("Criminal defendants assessed bail amounts appear frequently unable to produce the required bail amounts, and receive guilty outcomes as a result. Entered guilty pleas by defendants unwilling to wait months prior to trial and unable to finance bail likely contribute to this result.").

[8] *See* Department of Justice, National Institute of Corrections, *Fundamentals of Bail*, 15-16 (2014), *available at* https://goo.gl/jr7sMg ("[D]efendants rated low risk and detained pretrial

other words, detention based on poverty for just a few days *increases* recidivism. Second, wealth-based pretrial systems release individuals based only on their ability to pay and without any assessment of their risk of flight or dangerousness. Consequently, individuals who need monitoring or supervision to mitigate their risk of flight or dangerousness receive neither.

43.    Pretrial detention causes instability in employment, housing, and care for children and other dependent relatives. It hurts families, leads to unemployment, and can make people homeless. Even a couple of days in pretrial detention can cause a person to lose housing, be removed from a shelter list, be terminated from a job, be exposed to unsafe and unsanitary conditions at the jail, and may result in serious trauma to dependent children.

44.    The empirical evidence demonstrates that there is no significant relationship between requiring money bail as a condition of release and arrestees' rates of appearance in court.[9]

---

for longer than one day before their pretrial release are more likely to commit a new crime once they are released, demonstrating that length of time until pretrial release has a direct impact on public safety."); Christopher T. Lowenkamp *et al.*, *The Hidden Costs of Pretrial Detention*, Laura and John Arnold Foundation, 3 (November 2013), *available at* https://goo.gl/GQGNiY (studying 153,407 defendants and finding that "when held 2–3 days, low risk defendants are almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours"); Paul Heaton *et al.*, *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711, 768 (2017), *available at* https://goo.gl/Waj3ty ("While pretrial detention clearly exerts a protective effect in the short run, for misdemeanor defendants it may ultimately service to compromise public safety," and finding that in a representative group of 10,000 misdemeanor offenders, pretrial detention would cause an additional 600 misdemeanors and 400 felonies compared to if the same group had been released pretrial).

[9] *See, e.g.*, Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* 21 (May 2, 2016), *available at* https://goo.gl/OW5OzL ("Our results suggest that money bail has a negligible effect or, if anything, increases failures to appear."); Michael R. Jones, *Unsecured Bonds: The As Effective and Most Efficient Pretrial Release Option* 11 (October 2013), *available at* https://goo.gl/UENBKJ ("Whether released defendants are higher or lower risk or in-between, unsecured bonds offer the same likelihood of court appearance as do secured bonds").

45.     Other jurisdictions throughout the country do not keep people in jail based on their wealth. Instead of relying on money, these jurisdictions release arrestees with unsecured financial conditions, non-financial conditions, and pretrial supervision practices and procedures that can help increase court attendance and public safety without requiring detention.

46.     Other jurisdictions employ numerous less restrictive, non-monetary conditions of release to maximize public safety and court appearances. Such non-monetary conditions of release include, but are not limited to: unsecured bond, reporting obligations, phone and text message reminders of court dates, rides to court for those without transportation or a stable address, substance abuse treatment, mental health treatment, counseling, alcohol monitoring devices, or, in extreme cases of particular risk, electronic monitoring and home confinement.

47.     Jurisdictions that rely on pretrial services and non-monetary conditions of release do not sacrifice public safety or court attendance. For example, Washington, D.C. releases more than 94% of all defendants without financial conditions of release and no one is detained on secured money bail that they cannot afford.[10] Empirical evidence shows that nearly 90% of released defendants in Washington, D.C. make all court appearances, nearly 90% complete the pretrial release period without any new arrests, and 98-99% consistently avoid re-arrest for violent crime.[11]

---

[10] *See* D.C. Code § 23-1321; *see also* Pretrial Services Agency for the District of Columbia, *Release Rates for Pretrial Defendants within Washington, DC available at* https://goo.gl/VSDeDk ("In Washington, DC, we consistently find over 90% of defendants are released pretrial without using a financial bond").

[11] *See* Pretrial Services Agency for the District of Columbia, *Outcomes for Last Four Years*, *available at* https://www.psa.gov/?q=node/558; Pretrial Just. Inst., *The D.C. Pretrial Services Agency: Lessons from Five Decades of Innovation and Growth* 2 (2009), *available at* https://goo.gl/6wgPM8 ("The high non-financial release rate has been accomplished without sacrificing the safety of the public or the appearance of defendants in court. Agency data shows that 88% of released defendants make all court appearances, and 88% complete the pretrial release period without any new arrests.").

48.    The federal judiciary also eschews wealth-based detention, requiring any detention order to be based on a finding of dangerousness or flight risk, and the practice has not harmed court appearance rates or public safety.[12]

49.    Pretrial detention based solely on wealth is consistently more expensive than effective pretrial supervision programs.[13]  Without relying on a person's ability to afford cash bail, pretrial supervision programs can save taxpayer expense while maintaining high public safety and court appearance rates.

## V.    CLASS ACTION ALLEGATIONS

50.    Ms. Edwards proposes one class seeking declaratory and injunctive relief pursuant to Fed. R. Civ. P. 23(a) and (b)(2).  This Class is defined as: All arrestees who are or who will be jailed in Randolph County who are unable to pay the secured monetary bail amount required for their release.

51.    A class action is a superior means, and the only practicable means, by which Ms. Edwards and unknown Class members can challenge Defendants' unlawful use of wealth-based detention.

---

[12] *See* 18 U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition that results in the pretrial detention of the person."); *see also* Thomas H, Cohen, *Pretrial Release and Misconduct in Federal District Courts, 2008-2010*, Bureau of Justice Statistics Special Report 13 (Nov. 2012), *available at* https://goo.gl/hN99E7 (finding from 2008 to 2010, only 1% of federal defendants released pretrial failed to make court appearances and 4% were arrested for new offenses).

[13] *See, e.g.,* Pretrial Justice Institute, *Pretrial Justice: How Much Does It Cost?* (Jan. 11, 2017), *available at* https://goo.gl/0lLtLM ("It has been estimated that implementing validated, evidence-based risk assessment to guide pretrial release decisions could yield $78 billion in savings and benefits, nationally."); United States Court, *Supervision Costs Significantly Less than Incarceration in Federal System* (July 18, 2013), *available at* https://goo.gl/dJpDrn (In 2012, "[p]retrial detention for a defendant was nearly 10 times more expensive than the cost of supervision of a defendant by a pretrial services officer in the federal system").

52. Class action status is appropriate because Defendants have acted, or failed and/or refused to act, on grounds that apply generally to the proposed Class, such that final injunctive and declaratory relief is appropriate with respect to each Class member as a whole.

53. As set forth more fully below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the class counsel requirements of Rule 23(g).

**A.    Numerosity**

54. The precise size of the Class is unknown by Plaintiff because it is forward-looking, but it is substantial, given the hundreds of felony and misdemeanor cases adjudicated each year in the Randolph County District Court. Joinder of these unknown future members is impracticable.

55. Many of the class members are low-income individuals who will likely lack financial resources to bring an independent action or to be joined in this action. Joinder of every member of the class would be impracticable.

**B.    Commonality**

56. The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class. Ms. Edwards seeks relief from Defendants' money bail policies, practices, and procedures, which violate the rights of the Class members. Ms. Edwards also seeks relief mandating Defendants to change their policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

57. Among the most important, but not the only, common questions of fact are:

a. Whether the Randolph County District Court and Defendant Cofield use a predetermined secured money bail schedule created by Defendants May and Tinney;

b.  Whether Defendant Cofield releases arrestees from jail who pay the monetary amount required by the bail schedule and detains those who cannot;

c.  Whether Defendant Cofield detains all individuals who are unable to pay the monetary amount required by the bail schedule regardless of whether inquiry into their ability to pay has been made;

d.  Whether and when Defendants Tinney and Puckett conduct individualized release hearings and what procedural protections, if any, Defendants Tinney and Puckett provide to arrestees at those hearings; and

e.  What standard post-arrest procedures Defendants perform on misdemeanor arrestees; for example, whether Defendants use any alternate procedures for promptly releasing people determined otherwise eligible for release but who are unable to afford a monetary payment.

58.  Among the most important common question of law are:

a.  Whether requiring a financial condition of pretrial release without inquiry into and findings concerning a person's ability to pay, and without consideration of alternative conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection Clauses;

b.  Whether Defendants' actions in detaining arrestees solely based on their inability to pay a predetermined amount of money violate the Fourteenth Amendment's Due Process and Equal Protection Clauses;

c.  Whether Defendants' detention of poor arrestees using predetermined amounts of money without providing a sufficiently prompt release hearing violates the Fourteenth Amendment; and

15

d. Whether Defendants' detention of poor arrestees without conducting an individualized release hearing with adequate procedural safeguards violates the Sixth and Fourteenth Amendments.

## C. Typicality

59.    Ms. Edwards's claims are typical of the claims of the other members of the Class, and she has the same interests in this case as all other Class members that she represents. Each of them suffers injuries from the failure of Defendants to comply with the Constitution: they are each confined in jail because they could not afford to pay their secured monetary bond amount. The answer to whether Defendants' money bail practices are unconstitutional will determine the claims of Ms. Edwards and every other Class member.

60.    If Ms. Edwards succeeds in the claim that Defendants' policies and practices concerning wealth-based detention violate her constitutional rights, that ruling will likewise benefit every other member of the Class.

## D. Adequacy

61.    Ms. Edwards will fairly and adequately represent the interests of the proposed Class she seeks to represent.

62.    Ms. Edwards has no interests separate from or in conflict with those of the proposed Class she seeks to represent as a whole and seeks no relief other than the declaratory and injunctive relief, which is sought on behalf of the entire proposed Class she seeks to represent.

## E. Class Counsel

63.    Ms. Edwards is represented by attorneys from Civil Rights Corps, the American Civil Liberties Union, and the Southern Poverty Law Center who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of

Defendants' practices and the relevant constitutional and statutory law. Counsel has the resources, expertise, and experience to prosecute this action.

**F.      Rule 23(b)(2)**

64.      Class action status is appropriate because Defendants have acted in the same unconstitutional manner with respect to all class members: Defendants require all arrestees to pay for their release in an amount pre-determined by a bail schedule. Those who can pay are released and those who cannot pay are detained.

65.      The Class therefore seeks declaratory and injunctive relief that Defendants violate the Plaintiff's and Class members' rights under the Fourteenth Amendment by setting secured financial conditions of release without a prompt and individualized release hearing with adequate procedural protections that includes an inquiry into and findings concerning their ability to pay, or meaningful considerations of alternative conditions of release. Because the putative Class challenges Defendants' money bail practices as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the Class, Rule 23(b)(2) certification is appropriate and necessary.

## VI.      CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fourteenth Amendment to the Constitution**
**(Due Process and Equal Protection)**
***Plaintiff and the Proposed Class versus***
***Defendants May, Puckett, Newsome, and Cofield***

66.      Ms. Edwards incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

67.      The Fourteenth Amendment to the U.S. Constitution prohibits jailing a person solely because of her inability to make a monetary payment.

68.    Ms. Edwards and the Proposed Class have a fundamental interest in their pretrial liberty under state and federal law.

69.    Requiring a person arrested for a misdemeanor or felony offense to pay a monetary bail amount pre-determined by a bail schedule is not narrowly tailored to achieve the government's interests in securing a defendant's appearance in court or public safety.

70.    There are less restrictive means to reasonably assure the government's interests.

71.    Defendants violate Plaintiff's and the Proposed Class's fundamental rights under the Fourteenth Amendment by enforcing against them a post-arrest system of wealth-based detention in which they are kept in jail because they cannot afford a monetary amount of bail pre-determined by a bail schedule without inquiry into or findings concerning ability to pay, and without consideration of and findings concerning alternative non-monetary conditions of release.

### SECOND CLAIM FOR RELIEF
**Fourteenth Amendment to the Constitution**
**(Substantive and Procedural Due Process – Individualized Release Hearing)**
*Plaintiff and the Proposed Class versus*
*Defendants Puckett, Newsome, and Cofield*

72.    Ms. Edwards incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73.    The Fourteenth Amendment to the U.S. Constitution prohibits Defendants from depriving any person of life, liberty, or property without due process of law.

74.    Plaintiff and the Proposed Class have a fundamental interest in pretrial liberty.

75.    The Fourteenth Amendment to the U.S. Constitution requires that pretrial arrestees receive an individualized release hearing with adequate procedural safeguards to determine the least restrictive conditions on their pretrial liberty.

76.    Defendants do not provide counsel; give arrestees an opportunity to testify or present evidence; restrict detention to extremely serious offenses; or require a finding that no

affordable financial or non-financial condition of release will ensure appearance or public safety before jailing pretrial arrestees on monetary bail amounts that they cannot afford. Because Defendants create de facto detention orders by using predetermined monetary amounts, they also fail to apply any legal or evidentiary standards to determine whether a person should be detained prior to trial based on some immitigable risk.

77.    Defendants violate Ms. Edwards's and the Proposed Class's rights under the Fourteenth Amendment by jailing them without providing an individualized release hearing with the procedural protections described above.

### THIRD CLAIM FOR RELIEF
**Fourteenth Amendment to the Constitution**
**(Due Process – Prompt Release Hearing)**
***Plaintiff and the Proposed Class versus***
***Defendants Puckett, Newsome, and Cofield***

78.    Ms. Edwards incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

79.    The Fourteenth Amendment to the U.S. Constitution prohibits Defendants from depriving any person of life, liberty, or property without due process of law.

80.    Plaintiff and the Proposed Class have a fundamental interest in their pretrial liberty, which outweighs any governmental interest in pretrial detention.

81.    The Fourteenth Amendment requires a prompt release hearing following detention.

82.    Defendants violate Ms. Edwards's and the Proposed Class's fundamental rights to pretrial liberty and due process by jailing them without providing a sufficiently prompt release hearing.

**FOURTH CLAIM FOR RELIEF**
**Sixth Amendment to the Constitution**
**(Right to Counsel)**
*Plaintiff and the Proposed Class versus*
*Defendants Puckett, Newsome, and Cofield*

83.    Ms. Edwards incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84.    The Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the assistance of counsel at each critical stage of a criminal prosecution.

85.    An indigent defendant has an absolute right to court-appointed counsel under the Sixth Amendment.

86.    A critical stage is a proceeding between an individual and agents of the State, whether formal or informal, in which the accused requires aid in coping with legal problems or assistance in meeting his adversary.

87.    The initial appearance hearings in Randolph County are a critical stage of the pretrial criminal prosecution at which defendants are entitled to the assistance of counsel.  The deprivation of the arrestee's fundamental right to pretrial liberty has consequences that can prejudice the outcome of the defendant's criminal case.  Defendants who are detained pretrial are more likely to be convicted and more likely to plead guilty, receive longer prison sentences, and are less prepared at trial because of their inability to gather evidence, find witnesses, and meet with their lawyers.

88.    Counsel is therefore necessary to make the opportunity for pretrial release meaningful.  The initial appearance hearing is the first opportunity at which a defendant who cannot afford to post her secured bail bond may argue for her pretrial release, which is her fundamental right.  Without the assistance of counsel to help the defendant navigate the legal standards applicable to the pretrial detention decision, the opportunity to obtain pretrial release is

not meaningful. Furthermore, counsel guards against other procedural inadequacies, such as failure of the court to provide the defendant with notice of the factors relevant to pretrial release.

89.     Defendants violate Ms. Edwards' and the Proposed Class's fundamental Sixth Amendment right to counsel by failing to provide assistance of counsel at the initial appearance hearing, at which a criminal defendant may be jailed based on an inability to meet a financial condition of release.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a.     That the Court assume jurisdiction over this action;

b.     Certification of a class under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Ms. Edwards;

c.     A declaration that Defendants May, Puckett, and Newsome violate the Plaintiff's and Class members' rights under the Fourteenth Amendment by setting secured financial conditions of release without inquiry into or findings concerning their ability to pay, or meaningful consideration of alternative non-financial conditions of release;

d.     A declaration that Defendants Puckett and Newsome violate Ms. Edwards's and Class members' due process and Sixth Amendment rights by jailing them without conducting an individualized release hearing with adequate procedural safeguards;

e.     A declaration that Defendants Puckett and Newsome violate Ms. Edwards's and Class members' due process rights by jailing them without conducting a sufficiently prompt release hearing;

f.   An order and judgment preliminarily and permanently enjoining Defendant Cofield from prospectively detaining arrestees for failing to pay the monetary amount required by the bail schedule without a prompt individualized release hearing with adequate procedural safeguards that includes counsel, an inquiry into and findings concerning their ability to pay, the suitability of alternative non-financial conditions of release, and a finding on the record that any conditions of release are the least restrictive conditions necessary to achieve public safety and court appearance;

g.   An award of prevailing party costs, including attorney fees; and

h.   Such other relief as the Court deems just and appropriate.


Dated this October 26, 2018.            Respectfully submitted,

s/ Samuel Brooke
Samuel Brooke
*On behalf of Attorneys for Plaintiff*

Samuel Brooke (ASB-1172-L60B)
Micah West (ASB-1842-J82F)
Alexandra Jordan (ASB-4624-X00X)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL  36104
P:  (334) 956-8200
F:  (334) 956-8481
E: samuel.brooke@splcenter.org
E: micah.west@splcenter.org
E: alexandra.jordan@splcenter.org

Alec Karakatsanis (DC Bar No. 999294)*
Katherine Hubbard (Cal. Bar No. 302729)*
CIVIL RIGHTS CORPS
910 17th Street NW, Suite 500
Washington, DC  20006
P: (202) 930-3835
E: alec@civilrightscorps.org
E: katherine@civilrightscorps.org

Randall C. Marshall (ASB-3023-A56M)
Brock Boone (ASB-2864-L11E)
ACLU FOUNDATION OF ALABAMA, INC.
P.O. Box 6179
Montgomery, AL  36106-0179
P: (334) 420-1741
E: rmarshall@aclualabama.org
E: bboone@aclualabama.org

Brandon Buskey (ASB-2753-A50B)
Andrea Woods (Wash. Bar No. 48265)*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
CRIMINAL LAW REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
P: (212) 549-2654
E: bbuskey@aclu.org

*admitted pro hac vice
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing was filed through the Court's CM/ECF filing system, and by virtue of this filing notice will be sent electronically to all counsel of record, including:

Jamie H. Kidd
Kendrick E. Webb
WEBB & ELEY, P.C.
P.O. Box 240909
Montgomery, AL 36124
jkidd@webbeley.com; kwebb@webbeley.com
*Counsel for Defendant Cofield*

Laura E. Howell
Brad A. Chynoweth
Benjamin H. Albritton
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130-0152
lhowell@ago.state.al.us; bchynoweth@ago.state.al.us; balbritton@ago.state.al.us
*Counsel for Defs. Puckett, May, and Newsome*

Dorman Walker
John W. Naramore
BALCH & BINGHAM LLP
P.O. Box 78
Montgomery, AL 36101
dwalker@balch.com; jnaramore@balch.com
*Counsel for Defs. Puckett, May, and Newsome*

on this 26th day of October, 2018.

s/ Samuel Brooke
Samuel Brooke