IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KANDACE KAY EDWARDS,      )
on behalf of herself and all others   )
similarly situated,           )
                          )
      Plaintiffs,         )
                          )
v.                      )     CASE NO. 3:17-CV-321-WKW
                          )           [WO]
DAVID COFIELD, *et al.*,      )
                          )
      Defendants.        )

## MEMORANDUM OPINION AND ORDER

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [due process] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "The fundamental tradition in this country is that one charged with a crime is not, in ordinary circumstances, imprisoned until after a judgment of guilt." *Bandy v. United States*, 81 S. Ct. 197, 197 (1960). Yet, "[t]his traditional right to freedom . . . has to be squared with the possibility that the defendant may flee or hide himself." *Id.* The tension between arrestees' personal liberty and the risk of flight is at the core of this lawsuit, as it challenges Randolph County, Alabama's bail system for allegedly unconstitutionally punishing the indigent by denying them the same opportunity for pretrial release afforded to those with financial means.

As the sole representative for a putative class, Plaintiff Kandace Kay Edwards brought this action on May 18, 2017, alleging that Randolph County operated an unconstitutional, wealth-based bail system.  Under this system, arrestees with financial resources could secure their immediate release by posting a secured bond according to a fixed schedule, while those who were indigent were left to languish in jail, sometimes waiting nearly four weeks for a hearing to argue for their release. Ms. Edwards alleged that she became a victim of this bail system when, after her arrest, she was unable to afford the required bond due to her indigency.  She filed this lawsuit against those responsible for implementing the bail system in Randolph County, specifically the sheriff, as well as the district judge, magistrate, and circuit clerk, and subsequently obtained class certification.

Ms. Edwards's arrest occurred nearly eight years ago, and much has changed since then.  Two key external developments are particularly relevant.  First, Randolph County's bail system was revised in September 2017, after this litigation began, and Defendants contend that the current system differs significantly from the one in place at the time of Ms. Edwards's arrest.  Second, the Eleventh Circuit issued its decision in *Schultz v. Alabama*, 42 F.4th 1298 (11th Cir. 2022), *cert. denied sub nom. Hester v. Gentry*, 143 S. Ct. 2610 (2023). [1]  Based on these external

---

[1] For much of this action's life, it was, at the behest of the parties, stayed pending resolution of *Schultz*, given the similarity of claims in the two lawsuits.

developments, Defendants filed motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. # 190, 191.) Those motions are pending and are ripe for resolution.

Responding to the motions, Ms. Edwards, on her own and on behalf of the now certified class, contends that neither the purported change in Randolph County's bail system nor any recent caselaw, including *Schultz*, renders the action due for wholesale dismissal. She argues that Defendants' pending motions to dismiss should be denied because the allegations satisfy pleading and justiciability standards. She urges that this action, which already has endured significant delay and remains devoid of evidence, should proceed to discovery for the development of the record. However, given the posture of this case and the binding decision in *Schultz*, Defendants' motions to dismiss (Docs. # 190, 191) must be granted.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question), although jurisdictional issues of standing and mootness will be addressed in the discussion below. The parties do not contest personal jurisdiction or venue.

## II.  BACKGROUND

In this protracted lawsuit, a good place to start is at the beginning. More than seven years ago, on May 17, 2017, Plaintiff Kandace Kay Edwards, who was nearly eight months pregnant at the time, was arrested for forging a $75.00 check. She was

charged with a Class C felony offense and taken to the Randolph County Jail.  Upon her arrival at the jail, she was told that she would be released only if she paid a $7,500 secured appearance bond.  The bond amount was determined according to Randolph County's bond schedule, which was structured based on the nature of the offense.  (Doc. # 1 at 5; Doc. # 4-5.) She also was told that she would remain incarcerated until her court date on June 6, 2017, if she could not post the bond. (Doc. # 1 at 8–9.)

Ms. Edwards was given a choice: the $7,500 bond and freedom, or nearly three weeks in jail.  But it was no choice at all.  Ms. Edwards did not have the cash, property, or other financial resources to secure her release.  Despite serving years in the Army National Guard, she was pregnant, homeless, and indigent.  Pushed into this government-mandated Hobson's choice, Ms. Edwards spent the night in jail. She slept on a mat on the floor in a cell that had four beds and housed six women. (Doc. # 1 at 8–9.)

The day after her arrest, Ms. Edwards initiated this action with a three-count complaint, alleging that Randolph County's bail system violated the equal protection and due process guarantees of the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983.  Count One—a Fourteenth Amendment due process and equal protection claim—alleged a wealth-based bail system that violated indigent arrestees' purported fundamental right to pretrial liberty and that was "not narrowly tailored to

achieve the government's interest in securing a defendant's appearance in court or public safety." (Doc. # 1 at 17.) Count Two—a Fourteenth Amendment substantive and procedural due process claim—alleged the denial of an "individualized release hearing with adequate procedural safeguards." (Doc. # 1 at 18.) Count Three—a Fourteenth Amendment due process claim—alleged violations of a "fundamental right[] to pretrial liberty" and procedural due process by denying Plaintiffs a "prompt release hearing." (Doc. # 1 at 19.) Alleging official-capacity claims for declaratory and injunctive relief, Ms. Edwards sued David Cofield, the Randolph County Sheriff; Christopher May, the Circuit Clerk for Randolph County; Jill Puckett, the Magistrate of the Randolph County District Court; and Clay Tinney, the then-presiding District Judge of the Randolph County District Court.[2]

The Complaint alleged that District Judge Tinney and Circuit Clerk May established the bond schedule that governed release from the Randolph County Jail.[3] District Judge Tinney also determined the policies governing release conditions and conducted initial appearances for indigent arrestees who were unable to secure

---

[2] References to the "judicial defendants" are to the district judge, magistrate, and circuit clerk.

[3] The Complaint references the bond schedule (*see* Doc. # 1 ¶ 12), which is included as an exhibit in the record (Doc. # 4-5) and is integral to the Complaint's allegations. The contents of the bond schedule are not in dispute. Its consideration is permissible under the incorporation-by-reference doctrine, and no party has contended otherwise. *See Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023) (holding that the incorporation-by-reference doctrine permits a court "to consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment").

release.  Magistrate Puckett enforced the policies and conducted initial appearances in District Judge Tinney's absence.  (Doc. # 1 at 5.)  Sheriff Cofield was responsible for the operation of the Randolph County jail and the release and detention of arrestees.  (*Id.*)

The bail system operated as follows.  Sheriff Cofield's employees informed arrestees upon booking whether they were eligible for immediate release and, if they were, that they must post the predetermined amount of security set by Randolph County's bond schedule.  Upon posting the fixed amount of security, they were released.  However, if arrestees could not secure release, they were incarcerated until an appearance before a Randolph County judge.  As alleged, while indigent arrestees who could not secure release typically were timely brought before a judicial officer for an initial appearance, the district judge's and magistrate's "general practice [was] to refuse to determine an arrestee's conditions of release at the initial appearance." (Doc # 1 at 7.)  They generally precluded arrestees from "mak[ing] arguments about their ability to pay or their suitability for release at the initial appearance."  (*Id.*)  Per Defendants' initial-appearance practice, "arrestees [were] not permitted to challenge their financial conditions of release or to request non-monetary conditions of release."  (*Id.*)  Rather, that determination was deferred until a "preliminary hearing" in a felony case or a "bond reduction hearing" in a misdemeanor case.  (*Id*. at 7–8.)

Ms. Edwards alleged that a felony hearing occurred within four weeks of the initial appearance, but only if the arrestee requested it, while a misdemeanor hearing occurred within two weeks, but only if the arrestee filed a bond reduction motion. (Doc. # 1 at 7.)  More specifically, as a matter of practice in Randolph County, preliminary hearings "[were] held once every four weeks in felony cases and hearings on motions for a bond reduction in misdemeanor cases [were] held twice per month in Randolph County." (*Id.* at 8.)

Ms. Edwards alleged that Defendants' "reliance on predetermined secured money bail resulted in unnecessary wealth-based detention that is devastating for the poorest people in Randolph County."  According to Ms. Edwards, "[m]any people in the Randolph County jail . . . are only in jail because they cannot afford to pay secured money bail."  (*Id.*)  And because trials are held only twice per year in Randolph County, "a person unable to afford monetary bail may spend longer in jail before trial than under the sentence they would receive if they pleaded guilty or were found guilty following trial." (*Id.*)

In short, Ms. Edwards alleged that Defendants detained anyone pretrial— regardless of the charged crime or risk to the community or financial status—who was unable to post predetermined secured money bail.  Once detained, and for up to four weeks thereafter, Defendants allegedly did not give indigent detainees any meaningful opportunity to be heard about alternative release conditions.

7

The Complaint also incorporated allegations about the twenty-percent poverty level in Randolph County, along with a review of literature and data on the collateral consequences of wealth-based pretrial detention. Those consequences include a higher likelihood of innocent individuals pleading guilty, increased risk of future criminal behavior and recidivism, the release of potentially dangerous individuals into the community, rising homelessness and unemployment, and escalating costs to taxpayers footing the bill for detention. (Doc. # 1 at 4, 9–13.)

Contemporaneously with the filing of the Complaint, Ms. Edwards filed a motion for a temporary restraining order (TRO), for a preliminary injunction, and for class certification. (Docs. # 1, 2, 3, 5.) The same day, the court granted the TRO motion, finding that Ms. Edwards had met the necessary elements for such relief, including a substantial likelihood that Randolph County's bail practices violated the Fourteenth Amendment. As a result, the court enjoined Defendants "from continuing to jail Plaintiff based solely on her inability to pay a secured monetary amount as a condition of release." (Doc. # 9 at 4 (footnote omitted).) On May 18, 2017, Ms. Edwards was released, having spent one night in jail. (*See* Doc. # 129, ¶ 39.)

Two rounds of motions to dismiss followed the filing of the Complaint. The first round—consisting of a motion to dismiss filed by the sheriff and a motion to dismiss filed by the judicial defendants—was denied in July 2017. (Docs. # 30, 46,

49.)  Prior to the second round, the Randolph County District Court implemented a new bail system in September 2017.  The new bail system was memorialized in a "Standing Order Regarding Pre-Trial Appearance, Establishment of Bonds in Advance of Initial Appearance, and Individualized Determinations of the Necessity and Ability to Post Bond" [hereinafter "2017 Standing Bail Order"].  (Doc. # 67-1 at 10–21.)  The 2017 Standing Bail Order was filed in the Circuit Court of Randolph County on September 8, 2017 (*id.*), approximately seven weeks after the denial of Defendants' first motions to dismiss (Doc. # 49).

The 2017 Standing Bail Order precipitated the judicial defendants' filing of a motion to dismiss for lack of subject matter jurisdiction.  The judicial defendants asserted that the 2017 Standing Bail Order replaced Randolph County's prior bail system and that the new bail system was nothing like the one described in the Complaint.  (Doc. # 67.)  For example, in addition to lowering the secured bond amounts for most offenses, the 2017 Standing Bail Order guaranteed to every person arrested in Randolph County who could not afford to post the secured bond amount a bond hearing within seventy-two hours of arrest.  (Doc. # 67-1 at 12; *see also* Doc. # 97 at 2.)  It further guaranteed that, if the hearing did not occur within that seventy-two-hour period, the arrestee "w[ould] be released on an unsecured appearance bond. . . ."  (Doc. # 67-1 at 14–15.)  The judicial defendants argued that, as a result of the 2017 Standing Bail Order, this action now was moot.  (Doc. # 67.)

In early 2018, the court denied this motion to dismiss, as well as Ms. Edwards's motion for a preliminary injunction. (Doc. # 97.) Ms. Edwards filed a motion for reconsideration. (Doc. # 99.) That too was denied. (Doc. # 116.)

In September 2018, the court granted Ms. Edwards's motion for class certification. (Docs. # 5, 119.) Ms. Edwards was named class representative for the certified class comprising "all state-court arrestees who are or will be jailed in Randolph County who are unable to pay the secured money bail amount required for their release." (Doc. # 119.) The class was not limited to residents of Randolph County.

Four days later, Ms. Edwards filed a motion to amend the complaint in which she remained the sole representative of the class. (Doc. # 129.) The proposed Amended Complaint's allegations paralleled those in the initial Complaint, focusing on the circumstances surrounding Ms. Edwards's detention and the bail system in place when she was arrested and detained. (*See* Doc. # 129 at 4, 8, 9.) However, Ms. Edwards sought to add a claim that the Sixth Amendment's right-to-counsel provision applies to the initial appearance in Randolph County but that indigent arrestees "are unrepresented by counsel at the initial appearance."[4] (Doc. # 129; *see also* Doc. # 194 at 11 n.7 (conceding that "Ms. Edwards's amended complaint is

---

[4] Ms. Edwards's proposed Amended Complaint presented a standalone Sixth Amendment right-to-counsel claim, in contrast to the right-to-counsel allegations merged into the original Complaint's claims alleging due process and equal protection violations.

identical to the original complaint, *see* Doc. 1, except that it added a Sixth Amendment claim").) She alleged that the initial appearance is "the first opportunity at which a defendant who cannot afford to post her secured bail bond may argue for her pretrial release" and that pretrial release is a "fundamental right." (Doc. # 129 at 20, ¶ 88.) The Amended Complaint also noted Amy Newsome's substitution for Clay Tinney as the presiding district judge. (*See, e.g.*, Doc. # 129 at 4 n.4.) The motion to amend the complaint was granted, and the amended, and now operative, complaint was filed on October 26, 2018.

On November 14, 2018, Defendant Cofield filed an unopposed motion to stay the case pending the Eleventh Circuit's anticipated decision in "a virtually identical case concerning Alabama's bail bond system [in Cullman County] . . . being prosecuted in the United States District Court for the Northern District of Alabama." (Doc. # 135 at 1; Doc. # 142 at 2.) The court granted the motion and stayed the case "in its entirety" pending the Eleventh Circuit's decision. (Doc. # 150 at 3.)

Nearly four years later, the Eleventh Circuit's decision arrived. *See Schultz v. Alabama*, 42 F.4th 1298 (11th Cir. 2022), *cert. denied sub nom. Hester v. Gentry*, 143 S. Ct. 2610 (2023). After the Supreme Court of the United States denied the petition for writ of certiorari in *Schultz*, the stay was lifted on July 7, 2023, with a directive that the parties file a report on how to proceed in light of *Schultz* and the multi-year holding pattern. (Doc. # 180.) In their report, the parties agreed that

Defendants should have an opportunity to file dispositive motions. (Doc. # 181.) Thereafter, Defendants filed the pending motions to dismiss (Docs. # 190, 191), which have been fully briefed.

## III. DISCUSSION

The Amended Complaint alleges official-capacity claims under 42 U.S.C. § 1983 for the following constitutional claims challenging Randolph County's bail system: (1) a Fourteenth Amendment due process and equal protection claim alleging a wealth-based bail system (Count One); (2) a Fourteenth Amendment substantive and procedural due process claim alleging the denial of an "individualized release hearing with adequate procedural safeguards" (Count Two); (3) a Fourteenth Amendment claim alleging violations of a "fundamental right[] to pretrial liberty" and procedural due process by denying Plaintiffs a "prompt release hearing" (Count Three); and (4) a Sixth Amendment claim premised on the denial of appointed counsel for indigent defendants at the initial appearance (Count Four).[5] (Doc. # 129 at 17–21; Doc. # 194 at 12.) Sheriff Cofield, District Judge Tinney, and Magistrate Puckett are named in all four counts; Circuit Clerk Mays is named only in Count One. None of the claims in the Amended Complaint is explicitly tied to

---

[5] Ms. Edwards's motion for class certification was granted as to the claims in the original Complaint. (Docs. # 5, 119.) Ms. Edwards did not file a separate motion to certify a class as to the Amended Complaint's new Sixth Amendment claim. While the Amended Complaint, which includes class allegations, has been permitted, class certification on this new count has not. The issue of whether the Sixth Amendment claim is suitable for class certification need not be resolved in light of today's ruling.

the 2017 Standing Bail Order or the former bond schedule. As Ms. Edwards has pointed out in her briefing, she "[does] not challenge the face of" the 2017 Standing Bail Order or "its application to the Class"; rather, she argues that the complaint, as amended, "challenges Defendants' actual practices." (Doc. # 194 at 25.) However, despite Ms. Edwards's position and as will be explained, the claims' as-applied allegations attacking alleged actual practices cannot be sustained in light of the 2017 Standing Bail Order.

The discussion will proceed in three parts. Part A explains why Defendants' 2017 Standing Bail Order (Doc. # 67-1), which arrived after the onset of this litigation, will be considered and how that affects the standard of review. Part A concludes with a summary of the 2017 Standing Bail Order.

Part B addresses standing, mootness, and general justiciability in light of the Eleventh Circuit's opinion in *Schultz*. This part will explain why *Schultz* jurisdictionally limits the actions in this case *only* to those that challenge the face, *i.e.*, the language of, the 2017 Standing Bail Order. The upshot of this analysis is that Ms. Edwards and the class are jurisdictionally barred (1) from seeking relief that enjoins Defendants from returning to the bail system that existed prior to the 2017 Standing Bail Order and (2) from bringing any claim against the bail system outside the procedures laid out on the face of the 2017 Standing Bail Order.

Finally, Part C addresses the merits of the facial challenges to the 2017 Standing Bail Order.  In light of *Schultz*, all claims are dead on arrival and will be dismissed.

## A.    <u>The 2017 Standing Bail Order</u>

Typically, motions to dismiss are reviewed based on the allegations in the operative complaint, which are taken as true.  But this case is not typical.  A sea change in the posture of this case occurred when Defendants, several months after this litigation began, filed the 2017 Standing Bail Order, which purports to have replaced the bail system under which Ms. Edwards was detained.  This part explains (1) why Defendants' externally filed 2017 Standing Bail Order must be considered, (2) why that consideration does not convert the motions to dismiss to motions for summary judgment, and (3) what the 2017 Standing Bail Order says.

### 1. Consideration of the 2017 Standing Bail Order

The initial issue is whether to consider the 2017 Standing Bail Order at this preliminary stage.  Defendants say that the court has no choice:  It must consider it in resolving the motions to dismiss.  Plaintiffs say that the court should decline to consider Defendants' external evidence without affording Plaintiffs the opportunity

to test that evidence through factual development.[6]  Upon review, the 2017 Standing Bail Order (Doc. # 67-1) will be taken into consideration.

Defendants filed the 2017 Standing Bail Order when they were opposing the then-pending motion for preliminary injunction.  By its own terms, the 2017 Standing Bail Order "supersedes any previous policies or procedures that were in place regarding the posting of bail and any such procedures shall no longer be enforced."  (Doc. # 67-1 at 10.)  It was signed and executed on September 8, 2017, by Judge Tinney and the same date, was entered into the record of the Circuit Court of Randolph County, Alabama, by Clerk May.  (Doc. # 67-1 at 10, 16.)  To the court's knowledge, and the parties have not argued otherwise, no other judicial orders—standing or otherwise—pertaining to the Randolph County bail system have been entered since the promulgation of the 2017 Standing Bail Order.

At any stage of a case, Federal Rule of Evidence 201 permits courts to take judicial notice of facts that are "not subject to reasonable dispute" because those facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b), (c).  The factual existence of, and language used in, relevant court documents may be judicially noticed.  *See McGuire v. Marshall*, 50 F.4th 986, 994 n.8 (11th Cir. 2022).  Of course, the truth of a matter

---

[6] Because the motion for class certification has been granted—at least as to Counts One, Two, and Three—references in the discussion to "Plaintiffs" includes the class representative (Ms. Edwards), as well as the class.

asserted in a court document cannot be judicially noticed, but the fact that a court document asserted that matter can be judicially noticed. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

The court will take judicial notice of the 2017 Standing Bail Order. It is a signed judicial order. Neither its existence nor the face of the language used in it is subject to reasonable dispute. The 2017 Standing Bail Order exists, and it says what it says. Plaintiffs do not dispute those facts. Instead, Plaintiffs contend that factual development will show that Randolph County's actual bail practices do not conform with the 2017 Standing Bail Order and that this order does not otherwise replace or meaningfully change the bail system that existed in Randolph County prior to its enactment. They contend that they are entitled to discovery to flesh out these as-applied challenges to Defendants' actual practices that they contend depart from the 2017 Standing Bail Order.

Part B of the discussion will explain why binding precedent dictates that this action be viewed solely through the lens of facial challenges to the language of the 2017 Standing Bail Order, irrespective of other evidence and factual development. *See Schultz*, 42 F.4th at 1334. But the court will address the parties' dispute over how consideration of the 2017 Standing Bail Order should impact review of the pending motions.

## 2. *Standard of Review*

As stated above, judicial notice is taken of Defendants' 2017 Standing Bail Order, which was adopted after the initiation of this action. Plaintiffs contend that consideration of the 2017 Standing Bail Order requires the court to convert the pending Rule 12(b)(6) motions to motions for summary judgment, open discovery, and thereafter evaluate the challenges to the 2017 Standing Bail Order under Rule 56 of the Federal Rules of Civil Procedure. (Doc. # 194 at 22.) The court will not do so.

Generally, when considering a motion to dismiss, the district court must limit its consideration to the pleadings and any exhibits attached to them. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss generally must be converted into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984).

However, there are two exceptions to this conversion rule: "(1) the incorporation-by-reference doctrine and (2) judicial notice." *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023). "Both exceptions permit district courts to consider materials outside a complaint at the motion-to-dismiss stage" under the Rule 12(b)(6) standard. *Id.*; *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its

entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss," including "matters of which a court may take judicial notice.").

Because judicial notice is being taken of the existence of, and language used in, the 2017 Standing Bail Order, consideration of those judicially noticed facts does not require the court to convert the pending motions to dismiss to motions for summary judgment. *Baker*, 67 F.4th at 1276. Rather, the facts are properly considered under the typical Rule 12(b)(6) motion-to-dismiss standard of review. Under this standard, the plaintiff must allege sufficient factual allegations, accepted as true, to plausibly state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Now, exactly what the face of the 2017 Standing Bail Order provides vis-à-vis the bail system in Randolph County must be examined.

### 3. The 2017 Standing Bail Order's Language

The 2017 Standing Bail Order provides that arrestees in Randolph County who are unable to post bond in the amount set according to a bond schedule (Doc. # 67–1 at 18–21) "shall be entitled to a judicial determination of the conditions of their release promptly after arrest, but in any event no later than 72 hours after arrest." (Doc. # 67–1 at 12, 15–16.) Before that hearing, arrestees "shall complete

an affidavit of substantial hardship" (Doc. # 67–1 at 12), the same form used to obtain appointed counsel, (Doc. # 67–1 at 23–24).

The 2017 Standing Bail Order provides that, at the bail hearing, the court also "may conduct an initial appearance as required by Rule 4.4" of the Federal Rules of Criminal Procedure and "may take into account" the factors listed in Rule 7.2(a) of the Alabama Rules of Criminal Procedure. (Doc. # 67–1 at 12–14.) The court is required to "consider a defendant's ability to post a bond in determining the defendant's conditions of release" and "the defendant's affidavit of substantial hardship" and may "elicit testimony about the defendant's financial condition." (Doc. # 67–1 at 14.) As the 2017 Standing Bail Order further provides,

> [a]fter considering the defendant's ability to post a bond, as well as the other factors set out in Rule 7.2(a), the Court may release a defendant on his or her own recognize [sic], require the defendant to post an unsecured appearance bond, or require the posting of a secured appearance bond if that is the least onerous condition that will reasonably assure the defendant's appearance or that will eliminate or minimize the risk of harm to others or to the public at large. The Court will not require a defendant to post a secure appearance bond that the defendant cannot afford to post, or a secure appearance bond in an amount less than that contained in the bond schedule that the defendant can afford to post, if there is a less onerous condition that would assure the defendant's appearance or minimize risk to the public. However, if the Court determines that there is no less onerous condition for securing the defendant's appearance or protecting the public, the Court may require a secure appearance bond in an amount less than, equal to, or greater than that contained in the bond schedule. The Court will make written finding [sic] as to why the posting of a bond is reasonably necessary to assure the defendant's presence at trial in such a case.

(Doc. # 67–1, at 14 (citations omitted).)  Finally, in the "unlikely event" the bail hearing does not take place within seventy-two hours of arrest, the arrestee "will be released on an unsecured appearance bond . . . at the expiration of the 72–hour period." (Doc. # 67–1, at 14–15.)

The 2017 Standing Bail Order, however, does not address whether indigent arrestees will have the option for appointed counsel at the seventy-two-hour bail hearing.  It also does not mention whether arrestees have the right to bring documentary evidence, present witnesses, or confront and cross-examine adverse witnesses at the bail hearing.

### B.    The Jurisdictional Impact of *Schultz*: Standing and Mootness

Before delving into the merits of Plaintiffs' claims based upon consideration of the 2017 Standing Bail Order, the "first task is to properly construe the nature of [Plaintiffs'] challenge to the bail system." *Schultz*, 42 F.4th at 1318.  While this seems straightforward,[7] the parties disagree as to the structural vantage point from which to view the case.  This disagreement arises because the 2017 Standing Bail Order purports to have replaced the prior bail system under which the sole class representative, Ms. Edwards, was detained.  (Doc. # 67-1 at 16.)  Ms. Edwards

---

[7] A plaintiff generally is the "master of the complaint," and courts look to the language of the complaint to determine the nature of the claims "select[ed]." *United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997).  That procedure has been disrupted here by two events: Defendants' mid-litigation implementation of the 2017 Standing Bail Order and the Eleventh Circuit's binding opinion in *Schultz*.

contends that the class members may bring as-applied claims, even if Ms. Edwards cannot, while Defendants take the opposite stance. The answer lies in a comparative analysis of *Schultz*, beginning with the jurisdictional doctrines of standing and mootness.

To demonstrate standing, "a plaintiff must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Schultz*, 42 F.4th at 1319 (citation and internal quotation marks omitted). "[S]tanding is determined as of the time at which the plaintiff's complaint is filed." *Id.* (citations omitted). The *Schultz* court defined the relationship between standing and mootness as follows: "Where a plaintiff establishes standing at the time he filed his complaint but when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the question becomes whether the case is moot." *Id.* at 1319–20 (brackets, citation, and internal quotation marks omitted); *see also Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004) ("Mootness can occur due to a change in circumstances, or . . . a change in the law."). As explained by the Supreme Court, "the doctrine of mootness can be described as *the doctrine of standing set in a time frame*: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v.*

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotations omitted) (emphasis added).

Recall this case was previously stayed pending resolution of the appeal in *Schultz* so as to "avoid the risk of the court reaching a decision that the Eleventh Circuit later rejects," given that the *Schultz* claims, like the claims in this case, challenged the constitutionality of a bail detention program in an Alabama county. (Doc. # 150 at 3.)  The Eleventh Circuit issued a split decision in *Schultz* on July 29, 2022.  *Schultz*, 42 F.4th at 1298.

Although *Schultz* dealt with Cullman County's bail system rather than Randolph County's, the procedural histories of the two cases share some important similarities.  Both cases dealt with constitutional challenges to a bail scheme that was in effect at the time of the initial pleadings.  In both, a named plaintiff was detained under the challenged bail scheme.  Subsequently, in each case, the defendants allegedly altered their bail procedures mid-litigation by implementing a new standing bail order, which the defendants argued replaced the prior bail system.  In both cases, the defendants asserted that the mid-litigation change to the county's bail procedures affected standing, mootness, and general justiciability.  Factual differences are inevitable from case to case; however, in a precedential system, binding cases establish legal principles that apply to materially similar factual scenarios.  *See Wallace v. Kern*, 520 F.2d 400, 406 (2d Cir. 1975) (noting that "it is

elementary that what the Court said must be viewed in the light of the factual and legal setting the Court encountered").  Thus, it is crucial to analyze carefully what *Schultz* stands for as a matter of law within the context of its specific facts.

In *Schultz*, the Eleventh Circuit explained that the named plaintiff (who was the putative class representative) was detained upon his arrest under a bail system that changed after he filed his complaint and while the case was pending in the district court.  42 F.4th at 1306, 1319.  Notwithstanding Cullman County's post-litigation implementation of a new bail system that was not applied to the plaintiff, the Eleventh Circuit held that the plaintiff had standing.  He had suffered an "injury in fact"—"his detention on a bond that he could not pay due to his indigent status." *Id.* at 1320.  The injury "was fairly traceable to the challenged conduct of the Defendants and would have likely been redressed by a favorable judicial decision— a court ruling that Cullman County's *former* bail policies were unconstitutional and injunctive relief against those policies." *Id.* (emphasis added).  The contentious issue was whether Cullman County's new standing bail order rendered the plaintiff's claims "moot or prevent[ed] him from raising any challenge to the new Standing Bail Order policies." *Id.*  *Schultz* determined that, "as a result of the Standing Bail Order," the named plaintiff's claims challenging the now "defunct" bail scheme were moot but that facial challenges to the "new" bail scheme were not moot unless there was "no reasonable expectation that the challenged practice w[ould] resume

23

after the lawsuit [was] dismissed." *Id.* at 1321 (quoting *Walker v. City of Calhoun*, 901 F.3d 1245, 1270 (11th Cir. 2018) (explaining the voluntary cessation mootness doctrine)). Here, as in *Schultz*, the court found a sufficiently reasonable expectation that the challenged practice would resume if the lawsuit were dismissed. (Doc. # 97 at 6–13 (Mem. Op. & Order).) Because of that finding, per *Schultz's* binding directive, Ms. Edwards's facial challenges to the Standing Bail Order are *not* mooted.[8]

In other words, in light of *Schultz's* holdings, the jurisdictional approach to this case changes in two ways. The first change concerns "how to construe the nature of [Plaintiffs'] challenge to the bail system." *Schultz*, 42 F.4th at 1318. That is, *Schultz* dictates what types of claims remain in light of Defendants' 2017 Standing Bail Order. And, intertwined with the first, the second change centers on mootness. After carefully reviewing the panel's binding majority opinion in *Schultz*, the court finds that *Schultz* held, as a matter of law, (1) that constitutional challenges to a bail detention program—regardless of the nature of those challenges—are limited to facial constitutional challenges to the operative Standing Bail Order *if* that order was promulgated *after* the initiation of suit and the plaintiff was *not* detained pursuant to

---

[8] The dissent sharply criticized the majority's application of mootness and the voluntary cessation doctrine, *see Schultz*, 42 F.4th at 1339–42; however, that criticism does not curtail the binding nature of the majority's opinion.

that new order.  *See id.* at 1320 (explaining that, because the defendants filed a new "Standing Bail Order" that rendered the previously challenged bail system "defunct," the court only had "jurisdiction to hear [the plaintiff's] facial challenge to the [new] Standing Bail Order") (citing *Pugh v. Rainwater*, 572 F.2d 1053, 1058–59 (5th Cir. 1978) (en banc) and *Walker*, 901 F.3d at 1267 n.13).

Under *Schultz*, the court is required to jurisdictionally limit Ms. Edwards's claims to facial constitutional challenges against Defendants' 2017 Standing Bail Order.  Defendants do not argue that Ms. Edwards's facial constitutional challenges to the 2017 Standing Bail Order are moot.  Nor could they in light of *Schultz*.  Thus, as in *Schultz*, this "lawsuit will succeed only if [Randolph's] County's new [bail] scheme is facially unconstitutional."  42 F.4th at 1319 (alterations added).  And *Schultz* explained that, to succeed on his facial challenge, the plaintiff had to show that "'no set of circumstances exists under which the [bail scheme] would be valid.'" *Id.* (alterations in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), or in other words, that the bail scheme "is unconstitutional in all of its applications."  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008).  A facial challenge, as the Supreme Court has recognized, "is . . . the most difficult challenge to mount successfully," as the fact it "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . ."  *Salerno*, 481 U.S. at 745.

While *Schultz* resolves the parameters of Ms. Edwards's claims as to the 2017 Standing Bail Order, Plaintiffs contend that this is not the end of the standing and mootness analyses for the class members. They point out there is a significant, procedural distinction between this case and *Schultz* because here there is a certified class while the class in *Schultz* was putative: "In *Schultz*, the Eleventh Circuit addressed its jurisdiction to adjudicate the claims presented by a motion for preliminary injunction of one individual who had been released before Cullman County changed its bail procedures. By contrast, this case involves a motion to dismiss [the claims of] a certified class." (Doc. # 199-1 at 4 (internal citation omitted; alterations added; emphasis omitted).) Plaintiffs argue that, based on this procedural distinction, the certified class has standing to bring as-applied challenges to Defendants' current bail practices, even if Ms. Edwards does not. (*Id.*)

This procedural distinction between *Schultz* and this case does not confer standing *on the class* to bring as-applied challenges to the 2017 Standing Bail Order. In *Griffin v. Dugger*, the Eleventh Circuit explained that in a class action, a named plaintiff must have individual standing to raise the claim in a representative capacity on behalf of absent class members: "[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." 823 F.2d 1476, 1483 (11th Cir. 1987)); *accord Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (characterizing this standing

requirement as "well-settled"); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (explaining that "[i]t is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.").

Here, the named class representative is Ms. Edwards and only Ms. Edwards. As the allegations crystalize, Ms. Edwards did not suffer an injury under the 2017 Standing Bail Order. She was detained upon her arrest under a standing bail order that no longer exists. Under *Schultz*, Ms. Edwards does not have standing to bring an as-applied challenge to the 2017 Standing Bail Order but instead is jurisdictionally restricted to facial challenges to the 2017 Standing Bail Order. *See Schultz*, 42 F.4th at 1322 & n.5. Consequently, the standing of the class members, who step into her shoes, is similarly limited.

Ms. Edwards and the class also argue that "under well-established Supreme Court precedent, the Class has standing to challenge Defendants' current bail practices, even if Ms. Edwards does not." (Doc. # 199-1 at 4; Doc. # 194 at 18–20.) For this argument, the plaintiffs cite *Sosna v. Iowa*, 419 U.S. 393 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991). In *Sosna*, the named plaintiff

brought a constitutional challenge to Iowa's one-year, residency requirement for filing for divorce. The named plaintiff sought and obtained class certification; however, by the time her action reached the Supreme Court of the United States, she had resided in the state for more than a year, and, thus, the durational residency requirement no longer prevented her from filing for divorce in Iowa. The plaintiff, as the class representative, had standing when she filed the complaint, but an issue arose as to whether her change in status mooted the certified class's claims. Addressing mootness on its own inquiry, the Supreme Court concluded that the class "acquired a legal status separate from the interest asserted by" the named plaintiff. *Sosna*, 419 U.S. at 399. It held: "Although the controversy is no longer alive as to [the class representative of the certified class], it remains very much alive for the class of persons she has been certified to represent." *Id.* at 401. "[N]ew residents of Iowa are aggrieved by an allegedly unconstitutional statute enforced by state officials." *Id. County of Riverside*, like *Sosna*, stands for the general principle that "by obtaining class certification," the named plaintiffs "preserved the merits of the controversy," even though their personal stake in the matter no longer existed (*e.g.*, because they were released from custody). *See County of* Riverside, 500 U.S. at 51.

*Sosna* is distinguishable because it did not address mootness in the context of a class action in which there was a post-suit, intervening change in the law—such as a new statute or policy—that would have prevented the named plaintiff from

suffering a cognizable injury under the new law.  In *Sosna*, only the status of the class representative changed; the challenged law did not.  Here, Ms. Edwards does not have a live controversy to challenge the 2017 Standing Bail Order as applied to her because she was not detained under the new order.  That bail order did not exist when she was arrested and detained on a bond that she claims she could not pay due to her indigent status.  The class steps into the shoes of the class representative and has standing to bring only those claims that belonged to Ms. Edwards.  And *Schultz* makes clear that Ms. Edwards never had a live controversy to bring an as-applied challenge to the 2017 Standing Bail Order—neither when the action was filed or when the amendment to the complaint was permitted—and that her standing to challenge the 2017 Standing Bail Order extends only to facial challenges.[9]

Finally, Plaintiffs disagree that *Schultz* requires the court to limit itself jurisdictionally to the face of Randolph County's 2017 Standing Bail Order.  Plaintiffs argue that *Schultz* rationalized its holding because of the "limited factual record" in that case.  (Doc. # 194 at 10.)  While Plaintiffs are correct that the *Schultz* majority did provide this "limited record" justification for its holding, *see, e.g.*, 42 F.4th at 1319, 1322 n.5, it does not change the legal rule pronounced by *Schultz*, or

---

[9] The most recent analysis of *Sosna* in this case occurred on July 14, 2017, when it was evaluated in relation to the application of the "inherently transitory" exception to mootness.  (*See* Doc. # 49 (Mem. Op. & Order) (denying Defendants' motions to dismiss).)  This Memorandum Opinion and Order was issued seven weeks prior to the effective date of the 2017 Standing Bail Order.  (Doc. # 67-1 at 10–21.)

that rule's application here.  First, the "limited factual record" rationalization was an alternative, secondary explanation for *Schultz*'s rule.  Second, even if a limited factual record is a necessary condition under *Schultz* to construe Ms. Edwards's claims as facial challenges to the externally filed 2017 Standing Bail Order, that condition is obviously met in this case because here there is no factual record.  And, in any event, *Schultz* could not have meant that a "limited factual record" is necessary to eliminate non-Standing-Bail-Order challenges in *Schultz*-like circumstances because there was an extensive factual record in that case.  Indeed, the *Schultz* dissent explains the factual findings of the district court at length and condemns the majority's "wholesale jettisoning" of those findings from the case.  42 F.4th at 1339 (Rosenbaum, J., dissenting in part).  *Schultz* stands for the proposition that when there is a "new" Standing Bail Order that purports to be the real bail policy of a county, then the district court must approach the case singularly from the new Standing Bail Order's explicit language without probing into any other policies, patterns, practices, or procedures that are alleged and from which a developed record may or may not confirm.  *See id.* at 1338 (criticizing the *Schultz*'s majority holding that plaintiffs' "challenge was necessarily only a facial challenge to the Standing Bail Order," despite the complaint having another challenge and the "district court's treatment of that challenge").  At bottom, Plaintiffs would have the *Schultz* dissent be the *Schultz* majority.

Accordingly, the following claims are subject to dismissal: all as-applied and facial challenges against Randolph County's bail system that existed prior to September 8, 2017 (when the 2017 Standing Bail Order was executed); all as-applied challenges, either as applied to Ms. Edwards or the class, against the 2017 Standing Bail Order; and any and all pattern, practice, policy, or procedure claims to the bail system that do not directly target the facial terms of the new 2017 Standing Bail Order.

Under *Schultz*, not only does the court have to judicially notice the 2017 Standing Bail Order, *see* Section III.A, but the court also must "construe" Plaintiffs' claims to be anchored only to the face of that Standing Bail Order. *See Schultz*, 42 F.4th at 1318–22. That means that the *only* claims left in this case are those that facially challenge the language and terms of the 2017 Standing Bail Order. *Id.* at 1322 n.5 (holding, in nearly identical circumstances, that the court is "limited to considering only [the plaintiff's] *facial* challenge to the Standing Bail Order" (emphasis in original)); *see also* (Doc. # 191 at 2 (correctly arguing under *Schultz* that "Edwards and Class Members Only Have Standing to Challenge the Facial Constitutionality of the Current Standing Bail Order").) All Plaintiffs' claims that do *not* facially challenge the 2017 Standing Bail Order must be jurisdictionally dismissed without taking evidence.

The application of *Schultz*'s jurisdictional procedure dictates much of the court's remaining analysis, notwithstanding that the Amended Complaint does not solely target the 2017 Standing Bail Order. The Amended Complaint, as well as Plaintiffs' briefing, has consistently asserted that Randolph County's bail system is unconstitutional as implemented through patterns, practices, and various interlocking policies. The Amended Complaint does not suggest that a standing bail order—particularly one promulgated mid-litigation with the defendants' assurances that it represents the definitive bail policy—should be treated like an amended statute that automatically replaces the previous system.

Nonetheless, *Schultz* requires that a county's new standing bail order be the anchor for challenges to a county's bail system irrespective of any evidence as to the validity, veracity, and implementation of such an order. As the dissent in *Schultz* points out, if a new, mid-litigation standing bail order necessarily moots all challenges to the initially challenged scheme, then it does not matter whether a county actually "conform[s]" to the new standing bail order or that there are other procedures and policies that "are not true to the Standing Bail Order." *Schultz*, 42 F.4th at 1338 (Rosenbaum, J., dissenting in part).

Ultimately, *Schultz*'s framework requires the court—despite the operative complaint's allegations to the contrary concerning the county's practices and in the complete absence of evidence—to be jurisdictionally limited to a facial analysis of

Randolph County's externally filed Standing Bail Order. Therefore, the 2017 Standing Bail Order is not just compelling evidence of Randolph County's bail procedure, its language becomes the only avenue of attack.

## C.    **The Merits**[10]

The end result of the jurisdictional analysis is that only facial claims, as interpreted through the language of the 2017 Standing Bail Order, are permissible. Although extracting facial claims from the allegations in the Amended Complaint is

---

[10] But for *Schultz*'s directive to analyze the claims as facial challenges to the operative 2017 Standing Bail Order, the court would be inclined to revisit the application of the voluntary-cessation doctrine. That potential order would moot most of the nearly eight-year-old claims under a finding that the proper vehicle to pursue claims that Randolph County's bail practices suffer from constitutional deficiencies today is a new lawsuit objecting to post-2017 Standing Bail Order proceedings by an individual who was subject to those proceedings. *See Booth v. Galveston Cty.*, No. 3:18-cv-00104, 2023 WL 435227 *2–3 (S.D. Tex. July 5, 2023). Or the court could permit challenges to the pre-Standing Bail Order system that seek an injunction preventing Defendants from returning to that system. As the dissent in *Schultz* explains, in circumstances like this, courts typically have two options: (1) not applying the voluntary-cessation doctrine and therefore mooting the entire case, or (2) applying the voluntary-cessation doctrine and considering the bail scheme as it existed prior to the Standing Bail Order and how that scheme continued after the Standing Bail Order. *Schultz*, 42 F.4th at 1340 (Rosenbaum, J., dissenting in part). But *Schultz* mandates a new third path, which the dissent calls "unauthorized." *Id.* That path uses the voluntary-cessation doctrine to moot all claims to the bail scheme that existed prior to the 2017 Standing Bail Order and convert the claims to facial challenges to the 2017 Standing Bail Order. This is the path the court is bound to follow given the shared identity of the material facts of this case and *Schultz*. *But see Fed. Bureau of Investigation v. Fikre,* 601 U.S. 234, 239 (2024) (reiterating that the voluntary-cessation doctrine allows an original challenge to be pursued despite a mid-litigation policy change that may otherwise have mooted that challenge). Additionally, Plaintiffs' request, which is raised in a footnote in a brief filed in October 2023, to substitute a new named class representative in Ms. Edwards's place comes more than six years after the implementation of the 2017 Standing Bail Order and more than five years after certification of the class. (Doc. # 194 at 17–18 n.7.) However, Ms. Edwards has never been qualified to represent a class bringing as-applied challenges to the 2017 Standing Bail Order, and the request, at this late date, is no more than a "back-door attempt to begin the action anew, and need not be granted." *Lidie v. State of Cal.*, 478 F.2d 552, 555 (9th Cir. 1973). The request is untimely and prejudicial.

a bit like trying to fit a square peg into a round hole, the following claims are nonetheless presented: (1) a Fourteenth Amendment due process and equal protection claim alleging that the 2017 Standing Bail Order imposes a wealth-based bail system; (2) a Fourteenth Amendment due process claim alleging that the 2017 Standing Bail Order infringes upon substantive and procedural due process rights by denying indigent arrestees an individualized release hearing with adequate procedural safeguards, including counsel and an opportunity to present evidence; (3) a Fourteenth Amendment due process claim that the 2017 Standing Bail Order's seventy-two-hour requirement for holding an individualized release hearing is not sufficiently prompt; and (4) a claim that the 2017 Standing Bail Order, which does not explicitly make appointed counsel available to indigent arrestees at the initial appearance when the judicial bail determination is made, violates the right to counsel guaranteed by the Sixth Amendment. (*See generally* Am. Compl., Doc. # 129 at 17–21, as viewed through the lens of the 2017 Standing Bail Order).

Plaintiffs concede that *Schultz* generally dealt with the same types of claims alleged here. However, Plaintiffs say that *Schultz* does not foreclose the claims in this case (1) because the procedural-due-process claim regarding prompt release hearings and the Sixth Amendment right-to-counsel claim were not analyzed by *Schultz*, and (2) because *Schultz* was limited to Cullman County's bail system, which is not identical to Randolph County's bail system. (Doc. # 181 at 2–3.) Meanwhile,

Defendants argue that "*Schultz* resolves most (if not all) of the claims presented in this case." (Doc. # 181 at 5.) For the reasons to follow, no claim survives.

After carefully reviewing the panel's binding majority opinion in *Schultz*, the court finds that it held the following, as a matter of law. First, detaining indigent arrestees for seventy-two hours until a bail hearing survives rational basis review under the Equal Protection Clause. *See Schultz*, 42 F.4th at 1328 (applying rational basis review and holding that "[h]ere, we simply must determine whether the seventy-two-hour [bail hearing] deadline before us is facially unconstitutional, and we are satisfied that it is not"). Second, "[p]retrial detainees have no fundamental right to pretrial release." *Id.* at 1332. Third, Cullman County's Standing Bail Order did not violate substantive or procedural due process. *See id.* at 1335 ("In short, pretrial detainees in Cullman County are not deprived of due process at their bail determinations."). Plaintiffs are correct that *Schultz* did not address a standalone Sixth Amendment claim, but *Schultz* did recognize the Sixth Amendment's precepts, which will be discussed below.

1. *Substantive Due Process Claims Under the Fourteenth Amendment*

Plaintiffs' briefing includes a concession as to the substantive due process claims under the Fourteenth Amendment. *Schultz* held that "[p]retrial detainees have no fundamental right to pretrial release" because "[i]f they did, bail itself would be

35

unconstitutional." 42 F.4th at 1332. As a result of *Schultz*'s holding, Plaintiffs concede they "cannot state a plausible claim that Defendants' practices violate substantive due process." (Doc. # 194 at 25 n.11; *see also* Doc. # 181 at 4.) *Schultz* also controls Plaintiffs' substantive-due-process claims against the face of the 2017 Standing Bail Order. Just as Plaintiffs concede an as-applied claim (which, as discussed, is not cognizable in this action), they also cannot state a facial claim against the 2017 Standing Bail Order. Consequently, the substantive due process claims will be dismissed.

### 2. *Equal Protection Claims Under the Fourteenth Amendment*

Some fleshing out of Plaintiffs' equal protection allegations is necessary to expose their flaws. Plaintiffs allege that Defendants violate the Equal Protection Clause of the Fourteenth Amendment by "enforcing against them a post-arrest system of wealth-based detention in which they are kept in jail because they cannot afford bail pre-determined by a bail schedule without inquiry into or findings concerning ability to pay, and without consideration of and findings concerning alternative non-monetary conditions of release." (Doc. # 129 at 18.) Specifically, Plaintiffs allege that indigent pretrial detainees in Randolph County are held "for up to four weeks" without a bail hearing or any other opportunity to be heard about their conditions of release. (Doc. # 129 at 6.) Relying on a strict scrutiny analysis, Plaintiffs allege that "[r]equiring a person arrested for a misdemeanor or felony

offense to pay a monetary bail amount pre-determined by a bail schedule is not narrowly tailored to achieve the government's interests in securing a defendant's appearance in court or public safety."  (Doc. # 129 at 18.)

There are at least two flaws to this claim.  First, this claim adopts heightened scrutiny; however, "[h]eightened scrutiny . . . is reserved for state laws that burden fundamental rights or draw lines between suspect classes." *Schultz*, 42 F.4th at 1322. The standard here is rational basis review, and "states maintain not only a legitimate but a compelling interest in assuring the presence at trial of persons charged with crime." *Id.* at 1330 (citation and internal quotation marks omitted).  Randolph County's 2017 Standing Bail Order, like Cullman County's, "is rationally related to that interest—requiring defendants to post surety will result in more of those defendants appearing for trial." *Id.*

Second, the allegations are not facial-challenge allegations.  If Plaintiffs could establish that the 2017 Standing Bail Order facially required or allowed Defendant to detain people for up to four weeks without providing a bail hearing because they could not post adequate security or otherwise satisfy the bond schedule, it would be relatively straightforward to conclude that Plaintiffs had stated a valid wealth-based detention claim under the Equal Protection Clause.  Indeed, Defendants generally do not dispute that pretrial detention for four weeks without a hearing is unconstitutional.  But Plaintiffs' claims are jurisdictionally limited to challenging

the face of the 2017 Standing Bail Order.  And the face of the 2017 Standing Bail Order provides that, for criminal defendants unable to post the bond in the amount contained in the bond schedule, "such defendants shall be entitled to a judicial determination of the conditions of their release promptly after arrest, but in any event no later than 72 hours after arrest."  (Doc. # 67-1 at 12, 15–16.)  And, if that hearing is not held within seventy-two hours after arrest, arrestees are guaranteed release on an unsecured appearance bond.  (Doc. # 67-1 at 14–15.)

Therefore, as it relates to Plaintiffs' equal protection claim against the face of the 2017 Standing Bail Order, *Schultz* is directly on point.  Count One's equal protection claim will be dismissed.

### 3. Procedural Due Process Under the Fourteenth Amendment

The Amended Complaint lodges two procedural-due-process claims.  First, Count Two alleges that Randolph County's bail system fails to comport with procedural due process because it does not provide detainees with an individualized release hearing that has "adequate procedural safeguards."  (Doc. # 129 at 18.) Second, Count Three alleges Defendants violate procedural due process by not affording arrestees a "prompt release hearing following detention."  (Doc. # 129 at 19.)

*Schultz* held that a standing bail order satisfies the procedural due process guaranteed by the Fourteenth Amendment when pretrial detainees are:

> [P]rovided a hearing before an impartial judge, notice of that hearing, and there is no evidence that they are being denied an opportunity to be heard at the hearing.  Furthermore, the judge's bail determination may be modified upon a showing of good cause, and the judge must make written findings of fact specifying which factors he considered in setting the amount of bail.

*Schultz*, 42 F.4th at 1335.[11]

Here, the 2017 Standing Bail Order guarantees a bail hearing before an impartial judge no more than seventy-two hours after arrest.  It provides that, before that hearing, arrestees "shall complete an affidavit of substantial hardship" (Doc. # 67–1 at 12), the same form used to obtain appointed counsel, (Doc. # 67–1 at 23–24).  At the bail hearing, the court "may take into account" the fourteen factors listed in Rule 7.2(a) of the Alabama Rules of Criminal Procedure.  (Doc. # 67–1 at 12–14.)  The court is required to "consider a defendant's ability to post a bond in determining the defendant's conditions of release" and "the defendant's affidavit of substantial hardship."  (Doc. # 67–1 at 14.)  The court also may "elicit testimony about the defendant's financial condition."  (*Id.*)  Ultimately, if the court determines "that there is no less onerous condition for securing the defendant's appearance or

---

[11] This holding appears to conflict with *Schultz*'s jurisdictional analysis.  The holding concludes that a lack of "evidence" showing that pretrial detainees "are being denied an opportunity to be heard at the [bail] hearing" is relevant to determining whether procedural due process is satisfied in a facial challenge to Cullman County's Standing Bail Order.  *Schultz*, 42 F.4th at 1335.  But under *Schultz*'s jurisdictional logic, practice and custom evidence is irrelevant.  *Schultz* limited the case to a "facial challenge to the Standing Bail Order," disregarding the factual record outside of the facts that "[plaintiff] was detained under the pre-Standing Bail Order, and the Standing Bail Order was issued after [plaintiff] was released."  *Id.* at 1320–22 & n.5.  A stray reference to evidence does not torpedo the facial ship.

protecting the public," it may "require a secure appearance bond in an amount less than, equal to, or greater than that contained in the bond schedule," and that determination will be supported by "a written finding as to why the posting of a bond is reasonably necessary to assure the defendant's presence at trial in such a case." (*Id.*)

Accordingly, the constitutionally sufficient procedural safeguards afforded in *Schultz* are largely identical to the procedures provided by the 2017 Standing Bail Order in this case. The primary difference Plaintiffs highlight is in regard to providing notice of the hearing to arrestees. In *Schultz*, notice was provided to arrestees via a "release questionnaire" that stated that the purpose of the form was to determine "conditions of pretrial release." 42 F.4th at 1309. But here, no such paper notice is required by the 2017 Standing Bail Order. While the 2017 Standing Bail Order requires arrestees to complete and sign an affidavit of substantial hardship that must be considered at the bail hearing, that affidavit does not explicitly notify arrestees of the existence of the mandatory seventy-two-hour bail hearing.

Nonetheless, given the overlapping similarity between the procedural protections provided by the standing bail order in *Schultz* and the Standing Bail Order here, the court finds that the 2017 Standing Bail Order provides adequate procedural safeguards to satisfy procedural due process, notwithstanding that the 2017 Standing Bail Order does not guarantee paper notice of the hearing. The

absence of mandatory paper notice on the face of the 2017 Standing Bail Order is not a defect sufficient to render that order facially unconstitutional under the Due Process Clause when it provides all the other procedural safeguards found in *Schultz*, while not otherwise prohibiting paper or oral notice of the bail hearing to be given to arrestees.  For this reason, Count Two fails to state an "adequate procedural safeguards" claim.

Additionally, the 2017 Standing Bail Order requires a bail hearing no later than seventy-two hours after arrest, which *Schultz* found satisfied the Equal Protection Clause, and the court finds that this timeframe likewise is sufficiently prompt to similarly please procedural due process.  *See Schultz*, 42 F.4th at 1328. The tripartite test used for procedural-due-process claims is met by the Standing Bail Order's seventy-two-hour-hearing deadline.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Thus, Count Three's "prompt release hearing," procedural-due-process claim also fails to state a claim.  Both procedural-due-process claims in Counts Two and Three will be dismissed.

### 4. *The Right to Counsel Under the Sixth Amendment*

Finally, the discussion of the Sixth Amendment claim starts by examining what the allegations actually say—and what they should have said.  Count Four alleges that Defendants violate the "fundamental Sixth Amendment right to counsel by failing to provide assistance of counsel at the initial appearance hearing, at which

a criminal defendant may be jailed based on an inability to meet a financial condition of release."  (Doc. # 129 at 21.)  Plaintiffs contend that *Schultz* places no restrictions on their claim because it did not address an independent Sixth Amendment right-to-counsel claim, but this argument is flawed.  First, under *Schultz*'s ruling, Plaintiffs' Sixth Amendment claim must be analyzed as a facial challenge, applying the same framework as the other claims.  Ms. Edwards was not arrested or imprisoned under Randolph County's current bail system, and she was released without the necessity of an initial appearance months before the 2017 Standing Bail Order went into effect. Any challenge to the initial appearance she would have had, had she not been released, would have been under the now-defunct bail system.  As *Schultz* makes clear, this factual situation prevents her from pursuing an as-applied Sixth Amendment claim.  *See Schultz*, 42 F.4th at 1318–19 ("It is clear . . . that Hester was neither arrested nor imprisoned under Cullman County's current operative bail system.  And by the time of the hearing on the preliminary injunction, Hester had been released.  As such, Hester cannot trace his injury to the current operative bail system, and thus may not challenge it on an as-applied basis.").  Therefore, a properly framed claim is a facial challenge as to whether the 2017 Standing Bail Order, which neither expressly prohibits nor authorizes appointed counsel to indigent arrestees at an initial appearance when a judicial bail determination is made, infringes upon the right to counsel guaranteed by the Sixth Amendment. Second,

42

*Schultz* did examine Sixth Amendment concerns within the context of the plaintiff's Fourteenth Amendment procedural due process claim, and that examination cannot be overlooked.

In essence, Plaintiffs' Sixth Amendment arguments are not tethered to the facial structure of the 2017 Standing Bail Order, and it is irrelevant for the present analysis that the parties' robust arguments highlight conflicting decisions on whether an initial appearance incorporating a bail hearing is a critical stage.[12]    Even

---

[12] The parties' briefing centers around the importance of an initial appearance where there is a judicial determination of the conditions of release and whether such an appearance constitutes a "critical stage" of the criminal process such that the Sixth Amendment requires the right to request appointed counsel at that hearing—not just the appointment of counsel who will meet with an arrestee after pre-trial release conditions are set. *Rothgery v. Gillespie Cnty, Tex.*, 554 U.S. 191, 211–12 (2008). Plaintiffs argue that there is no binding precedent that forecloses the claim that Randolph County's initial appearance is a "critical stage" of the prosecution, particularly because it could include a bail hearing that "may lead to pretrial detention." (Doc. # 194 at 36.) They contend that a bail determination is a critical stage because individuals detained as a result may lose their freedom for extended periods, despite the presumption of innocence. In support of the argument that a bail determination can undermine the fairness of the trial process, Plaintiffs point to their allegations that cite studies demonstrating the prejudicial effects of detention, including higher conviction rates, increased likelihood of pleading guilty, longer sentences, and less preparation for trial due to limited access to evidence, witnesses, and legal counsel. Moreover, they argue, and allege, that without counsel to assist in navigating the legal standards for pretrial release, the opportunity to challenge detention is not meaningful, thus violating the Sixth Amendment's guarantee of the right to counsel. (Doc. # 194 at 38–39 (citing Doc. # 129 at 87)); (Doc. # 129 at 20.)

There is non-binding authority on both sides of this issue. Plaintiffs cite cases that suggest a bail hearing can be a "critical stage" requiring the presence of counsel. For instance, in *Betschart v. Oregon*, 103 F.4th 607, 623 (9th Cir. 2024), the Ninth Circuit held, in a split opinion, that the bail hearing was a critical stage of the prosecution under the Sixth Amendment, in part because it was adversarial—evidence was presented, facts were mitigated, alternatives to incarceration were proposed, and the defendant had the opportunity to address the court. Some district courts have reached similar conclusions. *See Torres v. Collins*, No. 2:20-CV-0026, 2023 WL 6166523, at *12 (E.D. Tenn. Sept. 21, 2023) ("The Court finds that a bail hearing is a 'critical stage' of the criminal prosecution against an arrestee, requiring the presence of counsel."); *Farella v. Anglin*, No. 5:22-CV-5121, 2023 WL 5005384, at *16 (W.D. Ark. Aug. 5, 2023) (finding a pretrial detention

assuming, for the sake of argument, that Plaintiffs' legal position on this issue is correct, they still cannot succeed on a facial challenge to the 2017 Standing Bail Order.

To move forward on a facial challenge, Plaintiffs must demonstrate that "'no set of circumstances exists under which the [2017 Standing Bail Order] would be valid,'" *Schultz*, 42 F.4th at 1319 (alterations in original) (quoting *Salerno*, 481 U.S. at 745), or, in other words, that the 2017 Standing Bail Order "is unconstitutional in all of its applications," *Washington State Grange*, 552 U.S. at 449. The Supreme Court recently has confirmed that, because facial challenges often are based on

---

determination was plausibly a critical stage of prosecution); *Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 738 (S.D. Tex. 2019) ("There can really be no question that an initial bail hearing should be considered a critical stage of trial."); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. 2018) ("There is no question" that a bail hearing is a critical stage.).

On the opposing side, Defendants argue that there is Eleventh Circuit case law indicating that an initial appearance, including the determination of bail, is not necessarily a critical stage of the prosecution. In *United States v. Mendoza-Cecelia*, 963 F.2d 1467 (11th Cir. 1992), *abrogated on other grounds*, *Coleman v. Singletary*, 30 F.3d 1420 (11th Cir. 1994), the Eleventh Circuit held that the initial appearance under Rule 5 of the Federal Rules of Criminal Procedure where the defendant's bail was set was not a critical stage, as it was "largely administrative." *Id.* at 1473. The court explained that the purpose of the initial appearance was not to adjudicate guilt but to inform the defendants of the charges, advise them of their rights, and address bail. Although the court must consider the strength of the evidence against the defendant as one of several factors in determining bail, the bail hearing is not a trial on the merits and does not involve adjudicating the defendant's guilt. The defendant is not obligated to disclose the facts of his or her case when seeking bail. *Id.* at 1473–74. A similar conclusion was reached in *Stewart v. Cain*, 189 F.3d 468 (5th Cir. 1999) (per curiam), where the Fifth Circuit held that the defendant "d[id] not have a federal constitutional claim because his initial appearance was not a preliminary hearing signaling the onset of adversarial judicial proceedings and triggering his Sixth Amendment right to counsel." (citations omitted)).

speculation about a law's scope and future enforcement, it has "made facial challenges hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).

In *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), the Supreme Court explained that, when considering whether a law might operate unconstitutionally under some circumstances for purposes of a facial challenge, the Court "consider[s] only applications . . . in which it actually authorizes or prohibits conduct." *Id.* at 418. The "proper focus of the constitutional inquiry is the group for whom the law is a restriction . . . ." *Id.* And, as the Eleventh Circuit has recognized, "for all arguments but First Amendment ones, the 'fact that a statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid' because federal courts 'have not recognized an overbreadth doctrine outside the limited context of the First Amendment.'" *United States v. Pugh*, 90 F.4th 1318, 1325 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 236 (2024) (quoting *Salerno*, 481 U.S. at 745) (brackets in original omitted). Plaintiffs cannot meet this demanding burden.

The 2017 Standing Bail Order says little about the initial appearance, but what it does not say says enough for purposes of resolving Plaintiffs' facial challenge. The 2017 Standing Bail Order provides that, at the bail hearing, the court also "may conduct an initial appearance as required by Rule 4.4." (Doc. # 67–1 at 11–12.) The 2017 Standing Bail Order does not explicitly mandate the appointment of counsel at a combined bail hearing/initial appearance, and granted such an appointment may

45

not even be contemplated.  However, the 2017 Standing Bail Order's lack of an express provision requiring the option for appointment of counsel for the indigent at an initial appearance does not make it unconstitutional on its face.  There is no provision in the 2017 Standing Bail Order that prevents the appointment of counsel at the initial appearance.  In the context of a facial challenge, Plaintiffs have failed to show that the 2017 Standing Bail Order operates in a way that prevents a court from appointing counsel for indigent defendants during an initial appearance that includes a bail hearing.  It imposes no restrictions on such appointments. Accordingly, even if it is assumed that, in Randolph County, the Sixth Amendment mandates appointed counsel for the indigent at an initial appearance that incorporates a bail hearing, the absence of an explicit mandate in the 2017 Standing Bail Order for appointed counsel for indigent defendants does not render the order facially invalid, as it does not prohibit such an appointment.

Finally, there is additional—and compelling—support in *Schultz* for finding that the Sixth Amendment facial claim does not survive Rule 12(b)(6) review.  The *Schultz* court explained that the absence of counsel at the bail hearing did not undermine its holding that the procedural safeguards in place for bail hearings in Cullman County met constitutional due process standards for pretrial detention.  *See* 42 F.4th at 1332.  The Eleventh Circuit found that these safeguards were sufficiently similar to those endorsed in *Salerno*, 481 U.S. at 751, which upheld the federal Bail

46

Reform Act against a facial challenge under the Fifth Amendment's Due Process Clause.  Recognizing that the Bail Reform Act provides detainees a statutory right to counsel at detention hearings, 18 U.S.C. § 3142(g), the *Schultz* court concluded that procedural due process was nonetheless satisfied without there being counsel at the bail hearing in question.  This conclusion was based on Alabama law, which provides mechanisms for modifying conditions of release with the assistance of counsel.  Specifically, under Alabama law, indigent arrestees dissatisfied with a bail decision have the right to file a motion to reduce the bond, "which may be granted upon a mere showing of 'good cause,'" *Schultz*, 42 F.4th at 1334 (quoting Ala. R. Crim. P. 7.4(b)), and indigent arrestees are "entitled to the aid of counsel in the filing of that motion," *id.*

A long line of precedent establishes key principles of procedural due process.  One such principle is that "[t]he most minimal requirement of procedural due process is that an accused at a critical stage of a criminal proceeding must be assured the right to counsel."  *Johnson v. United States*, 344 F.2d 401, 411 (5th Cir. 1965) (citations omitted).  In light of this, although *Schultz* did not directly address the absence of appointed counsel for indigent defendants at the bail hearing under the Sixth Amendment, its conclusion that procedural due process was satisfied without counsel strongly suggests that the bail hearing in question was not considered a critical stage for Sixth Amendment purposes.  This court is constrained by *Schultz*,

and to reach a different conclusion—that the initial appearance, when combined with a bail hearing, is a critical stage for Sixth Amendment purposes—would effectively undermine *Schultz*'s precedent on procedural due process. The court is not prepared to make that leap given the strikingly similar set of facts in *Schultz*.

For these dual reasons, the Sixth Amendment claim will be dismissed.

## IV. CONCLUSION

All Plaintiffs' claims against Randolph County's bail system that existed prior to the 2017 Standing Bail Order are mooted under *Schultz* and must be dismissed. Additionally, Plaintiffs' equal protection, procedural-due-process, substantive-due-process, and right-to-counsel claims against the face of Randolph County's 2017 Standing Bail Order fail to state a claim upon which relief can be granted under Rule 12(b)(6) and must be dismissed. Accordingly, it is ORDERED as follows:

(1) Defendants' motions to dismiss (Docs. # 190, 191) are GRANTED;

(2) Plaintiffs' motion for oral argument (Doc. # 199) is DENIED as moot;

(3) Plaintiffs' motion to file a sur-reply (Doc. # 199) is GRANTED, and the sur-reply (Doc. # 199-1) has been considered; and

(4) All claims are DISMISSED.

Because there are no remaining claims, final judgment will be entered.

DONE this 14th day of February, 2025.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE